## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

WALGREEN CO.
200 Wilmot Road
Deerfield, IL  60015,

ECKERD CORPORATION
50 Service Road
Warwick, RI  02886,

MAXI DRUG, INC. d/b/a
BROOKS PHARMACY
50 Service Road
Warwick, RI  02886,

THE KROGER CO.
1014 Vine Street
Cincinnati, OH  45202,

ALBERTSON'S, INC.
250 East Park Center Blvd.
Boise, ID  83706,

SAFEWAY, INC.,
5918 Stoneridge Mall Road
Pleasanton, CA  94588,

and

HY-VEE, INC.
5820 Westtown Parkway
W. Des Moines, IA,

                           Plaintiffs,

          v.

WARNER CHILCOTT HOLDINGS
COMPANY III, LTD.,

WARNER CHILCOTT CORPORATION,

WARNER CHILCOTT (US) INC.,

WARNER CHILCOTT COMPANY, INC.,

Civil Action No. 1:06-CV-00494-CKK

Judge Colleen Kollar-Kotelly

**JURY TRIAL DEMANDED**

and

BARR PHARMACEUTICALS, INC.,

Defendants.

## DEFENDANT WARNER CHILCOTT'S
## ANSWER TO COMPLAINT

Defendants Warner Chilcott Holdings Company III, Ltd., Warner Chilcott

Corporation, Warner Chilcott (US) Inc., and Warner Chilcott Company, Inc. (collectively,

"Warner Chilcott") answer the allegations of Walgreen Co., Eckerd Corporation, Maxi Drug,

Inc., d/b/a Brooks Pharmacy, The Kroger Co., Albertson's, Inc., Safeway, Inc., and Hy-Vee, Inc.

(collectively, "Plaintiffs") in their Complaint ("Complaint") as follows:

## PLAINTIFFS' ALLEGATION

1.      This is a civil antitrust action seeking treble damages and other relief
arising out of an unlawful horizontal agreement between Warner Chilcott and Barr, two
competing sellers of an oral contraceptive marketed by Warner Chilcott under the brand name
Ovcon 35 ("Ovcon"). Barr is the only company approved by the United States Food and Drug
Administration ("FDA") to sell a generic version of Ovcon in competition with Warner Chilcott
in the United States. Defendants have unlawfully conspired to prevent and suppress that
competition. Defendants' unlawful conspiracy has deprived Plaintiffs and other Ovcon
purchasers of the benefits of generic competition from approximately April 2004 to the present.

## ANSWER

Warner Chilcott states that Paragraph 1 of the Complaint is a description of

Plaintiffs' claims to which no response is required.  To the extent a response is required, Warner

Chilcott denies the allegations contained in the first sentence of Paragraph 1 of the Complaint,

except admits that Ovcon 35 ("Ovcon") is an oral contraceptive product sold by Warner Chilcott.

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of

each and every allegation contained in the second sentence of Paragraph 1 of the Complaint.

2

Warner Chilcott denies each and every allegation contained in the third and fourth sentences of Paragraph 1 of the Complaint.  Warner Chilcott denies that it has engaged in any unlawful activity, and further denies that Plaintiffs are entitled to any relief whatsoever.


## PLAINTIFFS' ALLEGATION

2.      Plaintiff Walgreen Co. ("Walgreen") is an Illinois corporation having its principal place of business in Deerfield, Illinois. Walgreen owns and operates retail stores in several states at which it dispenses prescription drugs to the public. Walgreen brings this action in its own behalf and as the assignee of a pharmaceutical wholesaler, AmerisourceBergen Corporation, which purchased Ovcon directly from Warner during the relevant period for resale to Walgreen and which has assigned its antitrust claims arising from those purchases to Walgreen.

## ANSWER

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 2 of the Complaint.


## PLAINTIFFS' ALLEGATION

3.      Plaintiff Eckerd Corporation ("Eckerd") is a Delaware corporation having its principal place of business in Warrick, Rhode Island. Eckerd owns and operates retail stores in several states at which it dispenses prescription drugs to the public. Eckerd brings this action in its own behalf and as the assignee of a pharmaceutical wholesaler, McKesson Corporation ("McKesson"), which purchased Ovcon directly from Warner during the relevant period for resale to Eckerd and which has assigned its antitrust claims arising from those purchases to Eckerd.

## ANSWER

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 3 of the Complaint.

**PLAINTIFFS' ALLEGATION**

        4.     Plaintiff Maxi Drug, Inc. d/b/a Brooks Pharmacy ("Brooks") is a Delaware corporation having its principal place of business in Warrick, Rhode Island. Brooks owns and operates retail stores in several states at which it dispenses prescription drugs to the public. Brooks brings this action in its own behalf and as the assignee of McKesson, which purchased Ovcon directly from Warner during the relevant period for resale to Brooks and which has assigned its antitrust claims arising from those purchases to Brooks.

**ANSWER**

        Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 4 of the Complaint.

**PLAINTIFFS' ALLEGATION**

        5.     Plaintiff The Kroger Co. ("Kroger") is an Ohio corporation having its principal place of business in Cincinnati, Ohio. Kroger owns and operates retail stores in several states at which it dispenses prescription drugs to the public. During the relevant period, Kroger purchased Ovcon directly from Warner.

**ANSWER**

        Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 5 of the Complaint, except admits that

Plaintiff Kroger purchased Ovcon from Warner Chilcott.

**PLAINTIFFS' ALLEGATION**

        6.     Plaintiff Albertson's, Inc. ("Albertson's") is a Delaware corporation having its principal place of business in Boise, Idaho. Albertson's owns and operates retail stores in several states at which it dispenses prescription drugs to the public. Albertson's brings this action in its own behalf and as the assignee of McKesson, which purchased Ovcon directly from Warner during the relevant period for resale to Albertson's and which has assigned its antitrust claims arising from those purchases to Albertson's.

**ANSWER**

        Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 6 of the Complaint.

**PLAINTIFFS' ALLEGATION**

7.      Plaintiff Safeway, Inc. ("Safeway") is a Delaware corporation having its principal place of business in Pleasanton, California. Safeway owns and operates retail stores in several states at which it dispenses prescription drugs to the public. Safeway brings this action in its own behalf and as the assignee of McKesson, which purchased Ovcon directly from Warner during the relevant period for resale to Safeway and which has assigned its antitrust claims arising from those purchases to Safeway.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 7 of the Complaint.

**PLAINTIFFS' ALLEGATION**

8.      Plaintiff Hy-Vee, Inc. ("Hy-Vee") is an Iowa corporation having its principal place of business in West Des Moines, Iowa. Hy-Vee owns and operates retail stores in several states at which it dispenses prescription drugs to the public. Hy-Vee brings this action in its own behalf and as the assignee of McKesson, which purchased Ovcon directly from Warner during the relevant period for resale to Hy-Vee and which has assigned its antitrust claims arising from those purchases to Hy-Vee.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 8 of the Complaint.

**PLAINTIFFS' ALLEGATION**

9.      Defendant Warner Chilcott Holdings Company III, Ltd. is a privately owned for-profit company organized and existing under the laws of Bermuda, with its principal place of business in Rockaway, New Jersey. Warner Chilcott Holdings Company III, Ltd., through its direct and indirect subsidiaries, is engaged in the discovery, development, manufacture and distribution of pharmaceutical products in the United States, including Ovcon.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 9 of the Complaint,

except admits that Warner Chilcott Holdings Company III, Ltd. is a privately-owned, for-profit

enterprise organized, existing, and doing business under and by virtue of the laws of Bermuda,

with its registered office located at Canon's Court, 22 Victoria Street, Hamilton HM12 Bermuda.

Warner Chilcott further admits that Warner Chilcott Holdings Company III, Ltd.'s subsidiaries

are engaged in the discovery, development, manufacturing, and distribution of pharmaceutical

products in the United States, including Ovcon.

**PLAINTIFFS' ALLEGATION**

10.    Defendant Warner Chilcott Corporation is an indirect wholly owned subsidiary of Warner Chilcott Holdings Company III, Ltd. and is the direct parent of Warner Chilcott (U.S.) Inc. Warner Chilcott Corporation is a Delaware corporation with its principal place of business in Rockaway, New Jersey.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 10 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

11.    Defendant Warner Chilcott (US) Inc. is a wholly owned subsidiary of Warner Chilcott Corporation. Warner Chilcott (US) Inc. is a Delaware corporation with its principal place of business in Rockaway, New Jersey.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 11 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

12.    Defendant Warner Chilcott Company, Inc. is a wholly owned subsidiary of Warner Chilcott Holdings Company III, Ltd. Warner Chilcott Company, Inc. is organized and exists under the laws of the Commonwealth of Puerto Rico.

**ANSWER**

       Warner Chilcott admits the allegations contained in Paragraph 12 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

       13.    The defendants identified in paragraphs 9 through 12 above will be
referred to collectively as "Warner Chilcott."

**ANSWER**

       Warner Chilcott states that no response is required to Paragraph 13 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

       14.    Defendant Barr Pharmaceuticals, Inc. ("Barr") is a Delaware corporation
with its principal place of business in Pomona, New York. Barr is engaged in the business of
developing, manufacturing, marketing and distributing generic pharmaceutical products,
including generic oral contraceptives.

**ANSWER**

       Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 14 of the Complaint.

**PLAINTIFFS' ALLEGATION**

       15.    This action arises under section 1 of the Sherman Act, 15 U.S.C. § 1, and
sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26. The Court has subject-matter
jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337(a).

**ANSWER**

       Warner Chilcott states that the first sentence of Paragraph 15 of the Complaint is a

description of Plaintiffs' claims to which no response is required.  To the extent a response is

required, Warner Chilcott denies each and every allegation contained in the first sentence of

Paragraph 15 of the Complaint.  The second sentence of Paragraph 15 of the Complaint contains

legal conclusions to which no response is required.  To the extent a response is required, Warner

Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and

every allegation contained in the second sentence of Paragraph 15 of the Complaint.


**PLAINTIFFS' ALLEGATION**

      16.    Venue is proper in this Court pursuant to section 12 of the Clayton Act, 15 U.S.C. § 22, because each Defendant is an inhabitant of this District or is found or transacts business there.

**ANSWER**

      Paragraph 16 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the

Complaint, except admits that Ovcon is sold in the District of Columbia.


**PLAINTIFFS' ALLEGATION**

      17.    The pharmaceutical products at issue in this case are sold in interstate commerce, and the unlawful activities alleged in this Complaint have occurred in, and have had a substantial effect upon, interstate commerce.

**ANSWER**

      Paragraph 17 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott admits that Ovcon is sold in the

United States, but denies that Warner Chilcott has engaged in any unlawful activity whatsoever.

**PLAINTIFFS' ALLEGATION**

18.    Under the federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, approval by the FDA is required before a new drug may be sold in interstate commerce. Premarket approval for a new drug must be sought by filing a new drug application with the FDA, under either section 355(b) or section 355(j) of the Act, demonstrating that the drug is safe and effective for its intended use.

**ANSWER**

Paragraph 18 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the

Complaint, except admits that the Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, and the

Food and Drug Administration ("FDA") each have procedures concerning pharmaceuticals sold

in the United States.

**PLAINTIFFS' ALLEGATION**

19.    In 1984, Congress amended the Food, Drug and Cosmetic Act by enacting the Drug Price Competition and Patent Term Restoration Act, commonly known as the Hatch-Waxman Amendments or the Hatch-Waxman Act. Hatch-Waxman simplified the regulatory hurdles for prospective generic drug manufacturers by eliminating the need for generic companies to file lengthy and costly New Drug Applications ("NDAs") in order to obtain FDA approval. Instead, such companies are permitted to file Abbreviated New Drug Applications ("ANDAs") and to rely on the safety and effectiveness data already supplied to the FDA by the brand-name manufacturer. Hatch-Waxman also added a number of patent-related provisions to the statutory scheme. Congress's principal purpose in enacting the Hatch-Waxman Amendments was "to bring generic drugs onto the market as rapidly as possible." *Mova Pharmaceuticals Corp. v. Shalala*, 140 F.3d 1060, 1068 (D.C. Cir. 1998).

**ANSWER**

Paragraph 19 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies knowledge or information

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 19

of the Complaint, except admits that the Drug Price Competition and Patent Term Restoration

Act of 1984 ("Hatch-Waxman Act"), Pub. L. No. 98-417, 98 Stat. 1585 (1984), has provisions

concerning generic pharmaceuticals.

**PLAINTIFFS' ALLEGATION**

20.     Generic drugs are drugs which the FDA has found to be bioequivalent to
particular brand name drugs. When the FDA finds that a generic drug is both bioequivalent and
equivalent in all other respects to a brand-name drug, it assigns the generic drug an "AB" rating.
Retail pharmacies are permitted (and in some states required) to dispense an AB-rated generic
drug in place of the corresponding brand-name drug unless the physician expressly dictates
otherwise.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 20 of the Complaint, except admits that the

FDA has procedures concerning generic pharmaceuticals.

**PLAINTIFFS' ALLEGATION**

21.     The first generic competitor to enter a market typically does so at a price
at least 30% lower than the price of the equivalent brand-name drug and quickly takes a
substantial amount of market share away from the brand-name manufacturer. As additional
generic competitors come to market, the price of the generics continues to fall, and their
combined market share continues to grow. In some cases, generic competitors sell products
equivalent to brand-name prescription drugs for as little as 10% of the price of the brand-name
drug, and have captured as much as 90% of the brand-name drug's pre-generic sales.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 21 of the Complaint.

**PLAINTIFFS' ALLEGATION**

22.     The price competition engendered by generic drug manufacturers benefits
all purchasers of the drug, who are able to buy the same chemical substance at much lower

prices. Retail pharmacies, such as those owned and operated by Plaintiffs, substitute generic drugs for brand-name drugs wherever possible in order to lower their own costs and those of their customers.

**ANSWER**

Warner Chilcott denies each and every allegation contained in the first sentence of Paragraph 22 of the Complaint.  Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in the second sentence of Paragraph 22 of the Complaint.

**PLAINTIFFS' ALLEGATION**

23.    Ovcon was originally approved by the FDA in 1976, and is not subject to patent protection. Warner Chilcott acquired Ovcon from Bristol-Myers Squibb Company on January 26, 2000. As part of the acquisition, Bristol-Myers Squibb agreed to supply, and has supplied, Ovcon to Warner Chilcott.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 23 of the Complaint, except denies that Bristol-Myers Squibb Company ("BMS") has ever adequately supplied Ovcon to Warner Chilcott, and further denies that BMS has continued to supply Ovcon to Warner Chilcott.

**PLAINTIFFS' ALLEGATION**

24.    Ovcon's net sales have more than doubled since 2000, even as Ovcon's price has risen.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 24 of the Complaint, except admits that Ovcon's net sales have more than doubled since 2000, and further admits that Ovcon's price has risen.

11

**PLAINTIFFS' ALLEGATION**

       25.     Ovcon is, and has been, one of Warner Chilcott's highest revenue producing products.

**ANSWER**

       Warner Chilcott denies the allegations contained in Paragraph 25 of the Complaint, except admits that Ovcon has been one of Warner Chilcott's highest revenue producing products.

**PLAINTIFFS' ALLEGATION**

       26.     Warner Chilcott sells Ovcon at a price substantially above its cost.

**ANSWER**

       Warner Chilcott denies the allegations contained in Paragraph 26 of the Complaint, except admits that Warner Chilcott sells Ovcon at a price above its cost.

**PLAINTIFFS' ALLEGATION**

       27.     Ovcon is highly profitable for Warner Chilcott. For the twelve months ending September 30, 2004, Warner Chilcott's net sales of Ovcon were approximately $71.5 million. For that same time period, Warner Chilcott's gross margin on net sales of all its products was approximately 89%.

**ANSWER**

       Warner Chilcott denies the allegations contained in the first sentence of Paragraph 27 of the Complaint, except admits that Warner Chilcott earns a profit its Ovcon sales.  Warner Chilcott admits the allegations contained in the second and third sentences of Paragraph 27 of the Complaint.

**PLAINTIFFS' ALLEGATION**

28.    In September 2001, Barr filed an ANDA with the FDA for approval to manufacture and sell an AB-rated generic version of Ovcon in the United States.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 28 of the Complaint.

**PLAINTIFFS' ALLEGATION**

29.    In January 2003, Barr publicly announced its intention to market generic Ovcon by the end of that year.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 29 of the Complaint.

**PLAINTIFFS' ALLEGATION**

30.    Barr planned to price generic Ovcon at approximately 30 percent less than the price that Warner Chilcott charges for branded Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 30 of the Complaint.

**PLAINTIFFS' ALLEGATION**

31.    Barr projected that its generic Ovcon would capture approximately 50 percent of Warner Chilcott's unit sales of branded Ovcon within the first year of introduction.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 31 of the Complaint.

**PLAINTIFFS' ALLEGATION**

32.    Warner Chilcott expected that Barr would price its generic Ovcon at approximately 30 percent less than the price that Warner Chilcott charges for branded Ovcon.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 32 of the Complaint.

**PLAINTIFFS' ALLEGATION**

33.    Warner Chilcott projected that generic Ovcon would capture at least 50 percent of Ovcon's new prescriptions within the first year of introduction.  Warner Chilcott calculated that, as a result of these lost prescriptions, its net revenues from the sale of branded Ovcon would decline by at last $100 million over a three year period.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 33 of the Complaint.

**PLAINTIFFS' ALLEGATION**

34.    Warner Chilcott had planned to protect its Ovcon revenues from generic competition by introducing a chewable form of the product (Ovcon Chewable) before generic Ovcon entry occurred. Warner Chilcott's strategy was to convert its Ovcon customers to Ovcon Chewable and to stop selling Ovcon. Prescriptions for Ovcon Chewable could not be filled at the pharmacy with generic Ovcon, because generic Ovcon would not be AB-rated to Ovcon Chewable.

**ANSWER**

Warner Chilcott denies the allegations contained in the first and second sentences of Paragraph 34 of the Complaint, except admits that Warner Chilcott has developed a new, innovative, patented product, Ovcon Chewable.  Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in the third sentence of Paragraph 34 of the Complaint.

**PLAINTIFFS' ALLEGATION**

35.     By mid-2003, however, Warner Chilcott's "switch" strategy was in jeopardy. Entry of generic Ovcon appeared imminent, and Ovcon Chewable had not yet obtained FDA approval.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 35 of the Complaint, except admits that Ovcon Chewable obtained FDA approval in November 2003.

**PLAINTIFFS' ALLEGATION**

36.     In May 2003, Warner Chilcott's chief financial officer warned the company's Board of Directors that generic Ovcon entry was the "biggest risk to the company."

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 36 of the Complaint.

**PLAINTIFFS' ALLEGATION**

37.     In August 2003, Warner Chilcott and Barr discussed a possible business arrangement under which Barr would agree to refrain from competing in the United States with its generic Ovcon product.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 37 of the

Complaint.


**PLAINTIFFS' ALLEGATION**

38.    On September 10, 2003, Warner Chilcott and Barr executed a letter of intent. Under the parties' agreement as described in the letter of intent, Warner Chilcott would pay Barr $20 million and Barr would not enter the market and compete in the United States for five years with its generic Ovcon product once Barr received final FDA approval. Instead of entering and competing, Barr would agree to be available as a second supplier of Ovcon to Warner Chilcott if Warner Chilcott so requested.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 38 of the

Complaint, except admits that on September 10, 2003, Warner Chilcott and Barr executed a

letter of intent.  Warner Chilcott respectfully refers the Court to the letter of intent for the terms

thereof.


**PLAINTIFFS' ALLEGATION**

39.    On March 24, 2004, Defendants signed their Final Agreement implementing the letter of intent. Warner Chilcott paid Barr $1 million upon signing the Final Agreement.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 39 of the

Complaint, except admits that on March 24, 2004 Warner Chilcott and Barr executed an option

agreement implementing the terms of the letter of intent, and further admits that Warner Chilcott

paid Barr $1 million in consideration for the option.  Warner Chilcott respectfully refers the

Court to the option agreement for the terms thereof.

**PLAINTIFFS' ALLEGATION**

40.     Under the Final Agreement, within 45 days after the FDA approved Barr's generic Ovcon ANDA, Warner Chilcott could elect to pay the remaining $19 million to secure Barr's agreement to refrain from marketing generic Ovcon in the United States, either by itself or through a licensee, for five years. The Final Agreement referred to this arrangement as Warner Chilcott's option to an exclusive license to Barr's ANDA for generic Ovcon.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 40 of the

Complaint, except admits that it entered into an option agreement with Barr.  Warner Chilcott

respectfully refers the Court to the option agreement for the terms thereof.

**PLAINTIFFS' ALLEGATION**

41.     In addition, the Final Agreement gave Warner Chilcott the ability to purchase Ovcon supply from Barr, pursuant to specified payment terms. The ability to purchase supply from Barr would arise, however, only after Barr received final FDA approval for its generic Ovcon. Both Warner Chilcott and Barr understood that if, upon receiving FDA approval, Barr went ahead and entered the market with its generic Ovcon product, Warner Chilcott's Ovcon supply needs would immediately be drastically reduced.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 41 of the

Complaint, except admits that it entered into a supply agreement with Barr, and further admits

that Barr could not supply Warner Chilcott with Ovcon prior to receiving FDA approval.

Warner Chilcott respectfully refers the Court to the agreement for the terms thereof.

**PLAINTIFFS' ALLEGATION**

42.     On April 22, 2004, the FDA approved Barr's ANDA to produce and market generic Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 42 of the Complaint.

**PLAINTIFFS' ALLEGATION**

43.    Upon receiving final FDA approval for its generic Ovcon ANDA, Barr had the capability to market generic Ovcon in the United States and, but for the illegal agreement, would have done so.

**ANSWER**

Warner Chilcott denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43 of the Complaint, except denies that Barr had the capability to market a generic Ovcon upon receiving final FDA approval.  Warner Chilcott further denies that it entered into any illegal agreement.

**PLAINTIFFS' ALLEGATION**

44.    On April 23, 2004, Barr publicly announced its intention to market generic Ovcon if Warner Chilcott chose not to exercise its exclusive license option.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 44 of the Complaint, except admits that Barr publicly contemplated marketing a generic Ovcon if Warner Chilcott did not exercise its option, subject to certain risks and uncertainties associated with making generic Ovcon commercially available.

**PLAINTIFFS' ALLEGATION**

45.    On May 6, 2004, Warner Chilcott exercised the exclusive license option under the Final Agreement by paying Barr $19 million.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 45 of the

Complaint, except admits that on May 6, 2004 Warner Chilcott exercised the option, and further

admits that Warner Chilcott paid Barr $19 million upon the exercise of the option. Warner

Chilcott respectfully refers the Court to the option agreement for the terms thereof.

**PLAINTIFFS' ALLEGATION**

46.    Under the terms of the Final Agreement, Barr cannot sell generic Ovcon in the United States for five years, or until approximately May 2009. Absent its illegal agreement not to compete with Warner Chilcott, Barr would have started selling generic Ovcon shortly after receiving final FDA approval in April 2004.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 46 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

47.    Entry of Barr's generic Ovcon into the United States would have quickly and significantly reduced the sales of Warner Chilcott's branded Ovcon and led to a significant reduction in the average price Plaintiffs and other purchasers paid for Ovcon products. By paying Barr not to compete, Warner Chilcott was able to avoid the loss of its monopoly profits and to maintain inflated, supracompetitive prices for the drug.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in the first sentence of Paragraph 47 of the Complaint,

except denies that entry of a Barr generic would have led to a significant reduction in the average

price purchasers paid for Ovcon products. Warner Chilcott denies each and every allegation

contained in the second sentence of Paragraph 47 of the Complaint.

**PLAINTIFFS' ALLEGATION**

48.     Barr has abided by its agreement not to sell generic Ovcon in the United States.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 48 of the Complaint.


**PLAINTIFFS' ALLEGATION**

49.     As of the date of this complaint, Barr remains the only company that has received FDA approval to market a generic version of Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 49 of the Complaint.


**PLAINTIFFS' ALLEGATION**

50.     Since approximately September 10, 2003, when Defendants executed their letter of intent, Defendants have engaged in a continuing horizontal agreement, combination or conspiracy, the purpose and effect of which have been to allocate to Warner Chilcott the market for the sale of Ovcon and its generic equivalents in the United States and to eliminate competition between Warner Chilcott and Barr in the sale of Ovcon and its generic equivalents in the United States.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 50 of the Complaint.


**PLAINTIFFS' ALLEGATION**

51.     Defendants' illegal agreement is a conspiracy in restraint of trade and a *per se* violation of section 1 of the Sherman Act.

**ANSWER**

Paragraph 51 contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 51 of the Complaint.  Warner Chilcott further denies that it has engaged in any illegal activity whatsoever.

**PLAINTIFFS' ALLEGATION**

52.     In the alternative, Defendants' agreement has had a substantially adverse effect on competition in the relevant market—the sale of Ovcon and its genetic equivalents in the United States-and is illegal under the Rule of Reason.

**ANSWER**

Paragraph 52 contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 52 of the Complaint.  Warner Chilcott further denies that it has engaged in any illegal activity whatsoever.

**PLAINTIFFS' ALLEGATION**

53.     But for Defendants' illegal agreement, Barr would have entered the market with generic Ovcon in or about April 2004. Barr's entry would have allowed Plaintiffs and other purchasers to substitute lower-priced generic Ovcon for higher-priced branded Ovcon for a substantial portion of their Ovcon purchases.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 53 of the Complaint.

## PLAINTIFFS' ALLEGATION

54.    Plaintiffs (or their assignors) have been injured in their business and property by reason of Defendants' unlawful conspiracy in restraint of trade. Plaintiffs' injury consists of paying higher prices for Ovcon and its generic equivalents than would have been paid in the absence of Defendants' illegal conduct. Plaintiffs' injury is injury of the type the antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

## ANSWER

Paragraph 54 contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 54 of the Complaint.  Warner Chilcott further denies that it has engaged in any illegal conduct whatsoever.

## PLAINTIFFS' ALLEGATION

55.    Defendants' violations threaten continuing loss and injury to Plaintiffs unless enjoined by this Court.

## ANSWER

Paragraph 55 contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 55 of the Complaint.  Warner Chilcott further denies that it has violated any laws whatsoever.

## PLAINTIFFS' PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants and for the following relief:

A.    A judgment for three times the damages actually sustained by Plaintiffs, as determined by a jury;

B.    A declaration that Defendants have violated the antitrust laws in the ways described above;

       C.      Permanent injunctive relief which enjoins Defendants from continuing their illegal conduct, and requires them to take affirmative steps to dissipate the effects of their prior violations;

       D.      The costs of this suit, including a reasonable attorneys' fee; and

       E.      Such other and further relief as the Court deems just and proper.

**ANSWER**

**WHEREFORE**, Warner Chilcott denies that Plaintiffs are entitled to any relief whatsoever and respectfully requests judgment for Warner Chilcott along with costs and attorneys' fees, as may be allowed by law, and such further relief as the Court deems appropriate. Furthermore, Warner Chilcott denies every allegation contained in the Complaint not specifically herein admitted.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

**ANSWER**

Warner Chilcott hereby demands a trial by jury on all claims so triable.

## AFFIRMATIVE DEFENSES

Warner Chilcott states the following affirmative defenses without assuming the burden of proof of such defenses that would otherwise rest on Plaintiffs.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

The Complaint fails to state a claim against Warner Chilcott on which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Laches)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

## THIRD AFFIRMATIVE DEFENSE
### (Estoppel)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel.

## FOURTH AFFIRMATIVE DEFENSE
### (Waiver)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver.

## FIFTH AFFIRMATIVE DEFENSE
### (Justification)

Plaintiffs' claims are barred, in whole or in part, because any conduct engaged in by Warner Chilcott was reasonable, based upon independent, legitimate business and economic justifications, without the purpose or effect of injuring competition.

## SIXTH AFFIRMATIVE DEFENSE
### (Preservation of Business)

Plaintiffs' claims are barred, in whole or in part, because any conduct engaged in by Warner Chilcott was reasonable in relation to the development and preservation of its business.

## SEVENTH AFFIRMATIVE DEFENSE
### (No Injury to Competition)

Plaintiffs' claims are barred, in whole or in part, because none of Warner

Chilcott's actions have injured competition in any relevant market.

## EIGHTH AFFIRMATIVE DEFENSE
### (Pro-Competitive Effects)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott's

alleged actions have pro-competitive effects that benefit competition as a whole in any relevant

market.  Warner Chilcott's alleged actions increased competition and are in furtherance of trade.

## NINTH AFFIRMATIVE DEFENSE
### (No Consumer Harm)

Plaintiffs' claims are barred, in whole or in part, because none of Warner

Chilcott's alleged actions have harmed consumers.

## TENTH AFFIRMATIVE DEFENSE
### (No Harm to Plaintiffs)

Plaintiffs' claims are barred, in whole or in part, because none of Warner

Chilcott's alleged actions have harmed Plaintiffs.

## ELEVENTH AFFIRMATIVE DEFENSE
### (No Knowledge or Intent)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott had no knowledge, intention or belief that its actions might illegally restrain trade.  Further, Warner Chilcott could not have known that its actions might illegally restrain trade.

## TWELFTH AFFIRMATIVE DEFENSE
### (No Willful or Flagrant Act)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott did not engage in any willful, flagrant or unconscionable act.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Good Faith Reliance)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott relied in good faith on the actions of the Federal Trade Commission.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (No Notice)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott had no notice that its actions, if any, were illegal.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (No Concealment)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott did not conceal any of its actions.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Failure to Identify Appropriate Markets)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not properly alleged either a relevant product market or a relevant geographic market.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (No Market Power)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott has and had no market power.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### (Causation)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott's actions were not the proximate cause in fact of Plaintiffs' alleged damages.

## NINETEENTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

To the extent that Plaintiffs have failed to mitigate, minimize or avoid any loss or damage referred to in the Complaint, any recovery must be reduced by that amount.

## TWENTIETH AFFIRMATIVE DEFENSE
### (Lawful Conduct)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott has acted at all times in conformity with all applicable laws, statutes, ordinances and decrees with respect to the Plaintiffs.

## TWENTY-FIRST AFFIRMATIVE DEFENSE
### (Lack of Antitrust Injury)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not suffered antitrust injury.

## TWENTY-SECOND AFFIRMATIVE DEFENSE
### (No Pattern or Practice)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott did not engage in any pattern or practice of illegal activity.

## TWENTY-THIRD AFFIRMATIVE DEFENSE
### (No Standing)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs do not have standing.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
### (Reservation of Additional Defenses)

Warner Chilcott reserves the right to assert additional affirmative defenses as discovery proceeds.

## JURY DEMAND

Warner Chilcott hereby demands a trial by jury on all claims so triable.

## WARNER CHILCOTT'S PRAYER FOR RELIEF

**WHEREFORE**, Warner Chilcott prays as follows:

1.    That the Court enter judgment for Warner Chilcott on all counts;

2.    That the Court award Warner Chilcott reasonable costs and expenses including, but not limited to, attorneys' fees and costs of suit, and such other and further relief as may be appropriate.

May 22, 2006                              Respectfully submitted,

                                                  /s/ Peter C. Thomas
                                          By:  _____
                                                  Peter C. Thomas, D.C. Bar # 495928
                                                  SIMPSON THACHER & BARTLETT LLP
                                                  555 11th Street, N.W., 7th Floor
                                                  Washington, D.C.  20004
                                                  (202) 220-7700

                                                  Charles E. Koob, *pro hac vice*
                                                  SIMPSON THACHER & BARTLETT LLP
                                                  425 Lexington Avenue
                                                  New York, New York 10017
                                                  (212) 455-2000

                                                  *Counsel for Warner Chilcott Defendants*