IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WALGREEN CO. et al.,

    Plaintiffs,

v.                                                 Civil Action No. 06-CV-494 (CKK)

WARNER CHILCOTT HOLDINGS COMPANY
III, LTD., et al.,

    Defendants.
_____/

## WALGREEN PLAINTIFFS' MEMORANDUM IN
## OPPOSITION TO BARR'S MOTION TO COMPEL

The motion to compel filed by Defendant Barr Pharmaceuticals, Inc. ("Barr") is both fundamentally confused and contrary to settled antitrust case law. Plaintiffs in the *Walgreen* case are seeking damages in the form of overcharges—the difference in price between branded Ovcon 35 and the less expensive generic version of Ovcon 35 that Barr would have launched had it not been paid $20 million not to do so. Complaint ¶ 54. This calculation requires three numbers: (1) the price that Plaintiffs actually paid for branded Ovcon; (2) the lower price Plaintiffs would have paid for generic Ovcon; and (3) the percentage of Plaintiff's Ovcon purchases that would have been replaced with the cheaper generic had it been available (i.e., the generic substitution rate). The first of these numbers is an actual number and is being provided in discovery; the second and third numbers will have to be estimated and, since there is still no generic version of Ovcon on the market (because of Defendants' illegal agreement), they will have to be estimated using information other than sales of generic Ovcon.

The discovery Barr is seeking has nothing to do with any of these three numbers. What Barr is seeking are the prices and volumes of Plaintiffs' sales to <u>their</u> customers—e.g., Walgreen's sale of Ovcon 35 to Mrs. Smith at the Walgreen store located at Clark and Monroe in Chicago. This information is utterly irrelevant to Plaintiffs' damage claim. While it has some relevance to the claims being asserted by consumers and third-party payors (Plaintiffs' customers), burden and privacy considerations substantially outweigh this minimal relevance. Accordingly, Barr's motion should be denied.

I.   PLAINTIFFS' SALES DATA ARE IRRELEVANT.

Under long-settled antitrust law, Plaintiffs' sales of Ovcon 35 are irrelevant to their damage claims. Indeed, <u>whether</u> Plaintiffs resold the Ovcon 35 they purchased from Defendants is irrelevant to Plaintiffs' claims. Under settled antitrust law, Plaintiffs' injury was complete at the moment the drug was purchased.

These propositions were settled in 1968, when the Supreme Court decided *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968). In *Hanover Shoe*, the Court held that an antitrust plaintiff who proves that the price it paid for goods or services was artificially inflated by an antitrust violation is entitled to recover the difference in price <u>even if the plaintiff has suffered no actual injury</u>. In such cases, the plaintiff has "proved injury and the amount of its damages" when it shows that the defendant has extracted a higher price from the plaintiff than the plaintiff would have paid absent the violation. *Id.* at 494. *See also Kansas v. Utilicorp United, Inc.*, 497 U.S. 199, 206 (1990) (in *Hanover Shoe*, the defendant sought to prove that the plaintiff had suffered no actual injury because it recovered the higher prices from its own customers, and the Court "rejected the defense").

2

The holding of *Hanover Shoe* was reaffirmed nine years later in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977):

> [A] direct purchaser suing for treble damages under § 4 of the Clayton Act is injured within the meaning of § 4 by the full amount of the overcharge paid . . . and . . . the antitrust defendant <u>is not permitted to introduce evidence that indirect purchasers were in fact injured by the illegal overcharge</u>.

*Id.* at 724-25 (emphasis supplied).

The legal irrelevance of downstream pricing and sales data to the merits of Plaintiffs' claims also makes this information irrelevant for purposes of discovery, for such information is simply not "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Thus, while federal antitrust defendants frequently attempt to take discovery regarding the plaintiff's downstream sales and prices, the federal courts uniformly reject such attempts. *See, e.g., In re Vitamins Antitrust Litigation*, 198 F.R.D. 296, 301 (D.D.C. 2000) ("no court has ever allowed production of individualized downstream data," even in cases where antitrust claims of direct and indirect purchasers are consolidated); *In re Wirebound Boxes Antitrust Litigation*, 131 F.R.D. 578, 578 (D. Minn. 1990) ("plaintiff's financial information is not relevant to any outstanding issue in this litigation"); *In re Carbon Dioxide Industry Antitrust Litigation*, MDL 940, slip op. at 4 (M.D. Fla. Nov. 19, 1993) ("Defendants are not entitled to information about Plaintiffs' costs and profits"); *In re Folding Carton Antitrust Litigation*, MDL 250, slip op. at 7-8 (N.D. Ill. May 5, 1978) ("Whether purchasers absorbed, passed-on, or made a profit on the overcharges . . . is irrelevant, and investigations into such matters are proscribed by *Illinois Brick*").

Under *Hanover Shoe* and *Illinois Brick*, whether Plaintiffs resold the Ovcon 35 they purchased and, if so, for what price, are irrelevant as a matter of law.

3

## II. DEFENDANTS' PROPOSED JUSTIFICATIONS FOR THE DISCOVERY ARE MERITLESS.

Faced with this uniform adverse authority, Defendants propose three alternative justifications for engaging in downstream discovery: (a) the information is relevant to demand; (b) the information is needed to determine whether the "cost-plus" exception to *Hanover Shoe* applies; and (c) the information is relevant to the state-law claims asserted by Plaintiffs' customers. Each of these proposed justifications should be rejected.

### A. *Downstream discovery is irrelevant to demand.*

At pages 7-8 of Barr's motion, Barr argues that Plaintiffs' actual pricing of branded Ovcon is relevant to whether Plaintiffs would have purchased generic Ovcon rather than branded Ovcon if they had been allowed to do so. The connection, according to Barr, is that "<u>wholesalers like plaintiffs</u> make significantly greater profits on brand name drugs than on generic drugs." Barr mot. at 7-8 (emphasis supplied).

This is a remarkable assertion. Barr is one of the largest generic drug manufacturers in the United States. Plaintiffs in this case are some of its largest customers. Barr knows perfectly well that Plaintiffs in the *Walgreen* case—Walgreen, Eckerd, Kroger, Brooks, Albertson's, Safeway and Hy-Vee—are not wholesalers. These companies are retailers. They dispense drugs to patients. While several of these Plaintiffs are proceeding under an assignment from their wholesaler, Barr already has sales and pricing data regarding sales transactions that are downstream <u>from the wholesaler</u>—namely, the wholesaler's sales to Plaintiffs. What Barr is seeking is sales and pricing data regarding sales transactions that are downstream <u>from the retailer</u>—Walgreen's sales to Mrs. Smith. Contrary to Barr's assertion, it is common knowledge in the pharmaceutical industry that

4

retailers like Plaintiffs make substantially higher profits from the sale of generic drugs than from the sale of branded drugs (and Plaintiffs' witnesses have so testified). Thus, Plaintiffs have every possible incentive to buy generic drugs rather than branded drugs when they become available. Of course, Barr, as a generic manufacturer, knows this.

In any event, the information Barr is seeking would not answer the question of whether a particular group of customers makes higher profits from the sale of branded drugs than from the sale of generic drugs. The information Barr is seeking will show Barr only the profits those customers make from the sale of branded Ovcon. There is no generic Ovcon on the market and therefore no data on the profits made by either wholesalers or retailers from such sales.

B.  *Retail pharmacies do not have "cost-plus" contracts with their customers.*

Barr also argues that, even if *Hanover Shoe* applies, it has a right to take discovery to determine whether the so-called cost-plus exception to *Hanover Shoe* applies. According to Barr, "it is common for wholesalers such as plaintiffs to sell their product at a fixed markup over their purchase price." Barr mot. at 9 (emphasis supplied). While selling "at a fixed markup" has literally nothing to do with the stringent requirements of the cost-plus exception,[1] there is no need to explore the details of that exception here. As Barr knows, Plaintiffs in this case are retailers, not wholesalers. Even Barr would not suggest that Walgreen has a "cost-plus" contract with Mrs. Smith. Hence, Barr does not need information about Walgreen's retail pricing and sales in order to determine whether it can establish a "pass on" defense to Walgreen's damage claim.

---

[1]  In fact, an exception for intermediaries who sell "at a fixed markup" over cost was expressly rejected by the Supreme Court in *Illinois Brick*: "Respondents here argue, not without support from some lower courts, that pass-on theories should be permitted for . . . contractors that add a fixed percentage markup to the cost of their materials . . . [¶] We reject these attempts to carve out exceptions to the *Hanover Shoe* rule for particular types of markets." 431 U.S. at 743-44.

5

      C.     *Plaintiffs' sales data has only minimal relevance to the claims of indirect purchasers, and this relevance is outweighed by the burden and invasion of privacy required to produce them.*

Finally, Barr argues that Plaintiffs' sales and pricing data are relevant to the state-law antitrust claims asserted by the indirect purchaser Plaintiffs, who are Plaintiffs' customers. While Plaintiffs do not dispute that the retail prices paid for branded Ovcon during the damage period are relevant to the state-law claims of the consumers and third-party payors who paid those prices,[2] Barr's motion should nevertheless be denied because the relevance is minimal and is outweighed by the burden and invasion of patient privacy that would be involved in responding to Barr's request. *See In re Vitamins Antitrust Litigation*, 198 F.R.D. at 302 (finding that individualized downstream data, while marginally relevant to determining consumer demand for vitamins, need not be produced because its relevance was far outweighed by the burden of producing it).

First, the *Walgreen* Plaintiffs represent only about one fifth of the retail sales of branded drugs in the United States. (They may represent an even lower share of sales in those states that are relevant to the antitrust claims asserted in the indirect-purchaser cases; Barr has made no effort to provide this information to the Court.[3]) Even if Plaintiffs were asked to produce data on every sale of branded Ovcon to every one of their customers, this data would represent only about one fifth of the total retail sales of the drug to consumers. Accordingly, this data could not be used by itself to construct a damage model in the indirect purchaser cases, and another method would have

---

[2]     We understand that certain indirect purchaser Plaintiffs are asserting an unjust enrichment claim. The monetary recovery associated with such a claim will be based on the illegal profits earned by Defendants as a result of keeping generic Ovcon off the market rather than the overcharges paid by consumers and third-party payors as a result of that same conduct.

[3]     Barr's discovery requests are not limited to transactions in the states with *Illinois Brick* repealer statutes, which is additional reason to deny its motion.

to be found. Since Plaintiffs' downstream data would not solve the problem that Barr wants to use it to solve, the relevance of this data is extremely limited.

Second, the data Barr is seeking will show only one of the three numbers needed to calculate the indirect purchasers' overcharge claim—the retail prices actually paid by consumers and their payors for branded Ovcon. It will not show the retail prices that consumers (and their payors) <u>would have paid</u> for generic Ovcon had it been available, and it will not show how many purchases of branded Ovcon <u>would have been</u> purchases of generic Ovcon if it had been available. As in the direct purchaser cases, those numbers will have to be modeled using other sources. For this reason as well, the relevance of Plaintiffs' downstream data is limited.

Third, Plaintiffs are prohibited by federal law from producing data that identifies individual patients or consumers. Thus, all patient-identifying information would have to be removed. Putting all other issues aside, the result of Barr's discovery request would be an enormous data set showing that x Ovcon 35 pills were sold to an unidentified consumer on a particular day by pharmacy y, and that the pharmacy received z dollars for the prescription. Without patient information, this data would not allow Barr (or anyone else) to determine the damages due to any particular member of the consumer or third-party payor classes. While it could be used (along with a substantial amount of additional information) to determine the <u>aggregate</u> overcharge damages due to both the consumer and third-party classes together, aggregate damages can be determined much more easily using market-wide data collected by third-party information vendors (such as IMS Health).

Finally, it would be enormously burdensome and expensive for Plaintiffs to gather and produce the requested information. Plaintiffs collectively operate more than 10,000 pharmacies

7

across the United States. For the most part, the information Barr is seeking is not maintained on "live" data systems, but rather on archived systems, and in many cases it is not maintained on a central system but rather on a regional or store-level system. The sales transactions on these systems are not organized by drug, so a program has to be written to extract the Ovcon sales from all other prescription sales. This program has to be applied to all of the data files covering the relevant time period. This is an enormously expensive and time-consuming process. Plaintiffs have attached as Exhibit 1 an affidavit executed by a Kroger employee that illustrates the burden of retrieving and producing retail sales data on a particular drug.

V. CONCLUSION

For the reasons stated above, Barr's motion to compel should be denied.[4]

Respectfully submitted,

/s/ Robert D. W. Landon III
Richard Alan Arnold
Scott E. Perwin
Lauren Ravkind
Robert D.W. Landon III
KENNY NACHWALTER, P.A.
1100 Miami Center
201 S. Biscayne Boulevard
Miami, Florida 33131-4327
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
Attorneys for Plaintiffs

267683.1

---

[4] Plaintiffs also adopt and incorporate by reference the opposing memorandum filed in the *Meijer* case.