# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> WARNER CHILCOTT HOLDINGS ) <br> COMPANY III, LTD., *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No.   1:05-CV-2179-CKK |
| STATE OF COLORADO, et al., ) <br> ) <br> Plaintiffs ) <br> ) <br> v. ) <br> ) <br> WARNER CHILCOTT HOLDINGS ) <br> COMPANY III, LTD., *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No.   1:05-CV-2182-CKK |

**PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSIONS TO DEFENDANT
BARR PHARMACEUTICALS, INC.**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, plaintiffs, by and through their attorneys, hereby request that defendant Barr Pharmaceuticals, Inc., respond to the following requests for admissions in accordance with the definitions and instructions set forth below.

## DEFINITIONS

1. "Barr," "You," "Yours," or "the Company" refers to Barr Pharmaceuticals, Inc., as well as its current and former parents, subsidiaries, affiliates, predecessors, and successors; and all directors, officers, employees, consultants, agents, and representatives of the foregoing.

2. "ANDA" refers to an Abbreviated New Drug Application, as defined at 21 U.S.C. § 355(j), *et seq*.

3. "API" refers to an active pharmaceutical ingredient.

4. "Branded Contraceptive" refers to any oral contraceptive or combined hormonal contraceptive that the FDA has approved for introduction into interstate commerce under any application requiring submission of safety and effectiveness information.

5. "Consumer" refers to any Person for whom a Finished Drug Product is prescribed by a licensed physician or other health care provider.

6. "FDA" refers to the United States Food and Drug Administration.

7. "Finished Drug Product" refers to a drug in the form in which it is ultimately dispensed to a Consumer.

8. "Finished Product Supply Agreement" refers to the Finished Product Supply Agreement between Barr Laboratories, Inc., and Galen (Chemicals) Limited, dated as of March 24, 2004.

9. "FTC" refers to the Federal Trade Commission.

10. "Generic Contraceptive" refers to any oral contraceptive or combined hormonal contraceptive which is either: (i) a Finished Drug Product that the FDA has approved for introduction into interstate commerce under any application requiring a determination of

bioequivalence to any Branded Contraceptive, or (ii) any Finished Drug Product introduced into interstate commerce under a license (or other assignment) from an owner or holder of an application approved by the FDA by which the licensee markets a Finished Drug Product under such approved application.

11. "Generic Ovcon" refers to 0.4mg norethindrone/0.35mg ethinyl estradiol oral tablets, described in, and the sale of which is and will be permitted by, ANDAs 76-198 and 76-238.

12. "Option and License Agreement" refers to the Option and License Agreement between Barr Laboratories, Inc., and Galen (Chemicals) Limited, dated as of March 24, 2004.

13. "Person" refers to natural persons, firms, partnerships, associations, joint ventures, corporations, sole proprietorships, and governmental entities, divisions, departments and agencies.

14. "Placebo Tablet" refers to a tablet that does not contain an API.

15. "Warner Chilcott" means defendant Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., and Warner Chilcott Company, Inc., Galen (Chemicals) Ltd.; as well as their current and former parents, subsidiaries, affiliates, predecessors, and successors; and all directors, officers, employees, consultants, agents, and representatives of the foregoing.

## INSTRUCTIONS

Your answer to each request to admit shall specifically admit or deny the matter or set forth in detail the reasons why you cannot truthfully admit or deny the matter. When in good faith you must qualify an answer or deny only a part of the matter of which an admission is requested, you should specify so much of it as is true and qualify or deny the remainder. You

should not give lack of information or knowledge as a reason for failure to admit or deny unless you affirmatively state that you have made reasonable inquiry and that the information known or readily obtainable is insufficient to enable you to admit or deny. If an objection is made, the reasons therefore should be stated. Pursuant to Rule 36 of the Federal Rules of Civil Procedure, you may not object on the ground that you believe that a matter of which an admission has been requested presents a genuine issue for trial. Unless otherwise indicated, this Request seeks information concerning the time period 1995 through the present.

**REQUESTS FOR ADMISSIONS**

1. Admit that the FDA approved Barr's ANDA to manufacture and market Aranelle, a generic version of Tri-Norinyl, on September 29, 2004.

2. Admit that Barr launched Aranelle within one month of receiving FDA approval to do so.

3. Admit that the FDA approved Barr's ANDA to manufacture and market Aviane 28, a generic version of Alesse, on April 30, 2001.

4. Admit that Barr launched Aviane 28 within one month of receiving FDA approval to do so.

5. Admit that the FDA approved Barr's ANDA to manufacture and market Camila, a generic version of Nor-QD, on October 21, 2002.

6. Admit that Barr launched Camila within one month of receiving FDA approval to do so.

7. Admit that the FDA approved Barr's ANDA to manufacture and market Errin, a generic version of Ortho Micronor, on October 21, 2002.

8. Admit that Barr launched Errin within one month of receiving FDA approval to do so.

9. Admit that the FDA approved Barr's ANDA to manufacture and market Junel 1/20, a generic version of Loestrin 1/20, on May 30, 2003

10. Admit that Barr launched Junel 1/20 within one month of receiving FDA approval to do so.

11. Admit that the FDA approved Barr's ANDA to manufacture and market Junel 1.5/30, a generic version of Loestrin 1.5/30, on May 30, 2003.

12. Admit that Barr launched Junel 1.5/30 within one month of receiving FDA approval to do so.

13. Admit that the FDA approved Barr's ANDA to manufacture and market Junel Fe 1/20, a generic version of Loestrin Fe 1/20, on September 18, 2003.

14. Admit that Barr launched Junel Fe 1/20 within one month of receiving FDA approval to do so.

15. Admit that the FDA approved Barr's ANDA to manufacture and market Junel Fe 1.5/30, a generic version of Loestrin Fe 1.5/30, on September 18, 2003.

16. Admit that Barr launched Junel Fe 1.5/30 within one month of receiving FDA approval to do so.

17. Admit that the FDA approved Barr's ANDA to manufacture and market Kariva, a generic version of Mircette, on April 5, 2002.

18. Admit that Barr launched Kariva within one month of receiving FDA approval to do so.

19. Admit that the FDA approved Barr's ANDA to manufacture and market Kelnor 1/35, a generic version of Demulen, on May 23, 2005.

20. Admit that Barr launched Kelnor 1/35 within one month of receiving FDA approval to do so.

21. Admit that the FDA approved Barr's ANDA to manufacture and market Lessina, a generic version of Levlite, on March 20, 2002.

22. Admit that Barr launched Lessina within one month of receiving FDA approval to do so.

23. Admit that the FDA approved Barr's ANDA to manufacture and market Nortrel 0.5/35, a generic version of Modicon, on March 13, 2001.

24. Admit that Barr launched Nortrel 0.5/35 within one month of receiving FDA approval to do so.

25. Admit that the FDA approved Barr's ANDA to manufacture and market Nortrel 1/35 (21 day), a generic version of Ortho-Novum (21 day), on March 13, 2001.

26. Admit that Barr launched Nortrel 1/35 (21 day) within one month of receiving FDA approval to do so.

27. Admit that the FDA approved Barr's ANDA to manufacture and market Nortrel 1/35 (28 day), a generic version of Ortho-Novum (28 day), on March 13, 2001.

28. Admit that Barr launched Nortrel 1/35 (28 day) within one month of receiving FDA approval to do so.

29. Admit that the FDA approved Barr's ANDA to manufacture and market Portia, a generic version of Nordette, on May 23, 2002.

30. Admit that Barr launched Portia within one month of receiving FDA approval to do so.

31. Admit that the FDA approved Barr's ANDA to manufacture and market Sprintec, a generic version of Ortho-Cyclen, on September 25, 2002.

32. Admit that Barr launched Sprintec within one month of receiving FDA approval to do so.

33. Admit that the FDA approved Barr's ANDA to manufacture and market Velivet, a generic version of Cyclessa, on February 24, 2004.

34. Admit that Barr launched Velivet within one month of receiving FDA approval to do so.

35. Admit that Apri 28 tablets containing an API are the same shape as Apri 28 Placebo

Tablets.

36. Admit that Apri 28 tablets containing an API are approximately the same size as Apri 28 Placebo Tablets.

37. Admit that Apri 28 tablets containing an API are the same size as Apri 28 Placebo Tablets.

38. Admit that Aranelle tablets containing an API are the same shape as Aranelle Placebo Tablets.

39. Admit that Aranelle tablets containing an API are approximately the same size as Aranelle Placebo Tablets.

40. Admit that Aranelle tablets containing an API are the same size as Aranelle Placebo Tablets.

41. Admit that Aviane 28 tablets containing an API are the same shape as Aviane 28 Placebo Tablets.

42. Admit that Aviane 28 tablets containing an API are approximately the same size as Aviane 28 Placebo Tablets.

43. Admit that Aviane 28 tablets containing an API are the same size as Aviane 28 Placebo Tablets.

44. Admit that Cryselle tablets containing an API are the same shape as Cryselle Placebo Tablets.

45. Admit that Cryselle tablets containing an API are approximately the same size as Cryselle Placebo Tablets.

46. Admit that Cryselle tablets containing an API are the same size as Cryselle Placebo Tablets.

47. Admit that Enpresse 28 tablets containing an API are the same shape as Enpresse 28 Placebo Tablets.

48. Admit that Enpresse 28 tablets containing an API are approximately the same size as Enpresse 28 Placebo Tablets.

49. Admit that Enpresse 28 tablets containing an API are the same size as Enpresse 28 Placebo Tablets.

50. Admit that Junel Fe 1/20 tablets containing an API are the same shape as Junel Fe 1/20 Placebo Tablets.

51. Admit that Junel Fe 1/20 tablets containing an API are approximately the same size as Junel Fe 1/20 Placebo Tablets.

52. Admit that Junel Fe 1/20 tablets containing an API are the same size as Junel Fe 1/20 Placebo Tablets.

53. Admit that Junel Fe 1.5/30 tablets containing an API are the same shape as Junel Fe 1.5/30 Placebo Tablets.

54. Admit that Junel Fe 1.5/30 tablets containing an API are approximately the same size as Junel Fe 1.5/30 Placebo Tablets.

55. Admit that Junel Fe 1.5/30 tablets containing an API are the same size as Junel Fe 1.5/30 Placebo Tablets.

56. Admit that Kariva 28 tablets containing an API are the same shape as Kariva 28 Placebo Tablets.

57. Admit that Kariva 28 tablets containing an API are approximately the same size as Kariva 28 Placebo Tablets.

58. Admit that Kariva 28 tablets containing an API are the same size as Kariva 28 Placebo

Tablets.

59. Admit that Kelnor 1/35 tablets containing an API are the same shape as Kelnor 1/35 Placebo Tablets.

60. Admit that Kelnor 1/35 tablets containing an API are approximately the same size as Kelnor 1/35 Placebo Tablets.

61. Admit that Kelnor 1/35 tablets containing an API are the same size as Kelnor 1/35 Placebo Tablets.

62. Admit that Lessina 28 tablets containing an API are the same shape as Lessina 28 Placebo Tablets.

63. Admit that Lessina 28 tablets containing an API are approximately the same size as Lessina 28 Placebo Tablets.

64. Admit that Lessina 28 tablets containing an API are the same size as Lessina 28 Placebo Tablets.

65. Admit that Nortrel 0.5/35 tablets containing an API are the same shape as Nortrel 0.5/35 Placebo Tablets.

66. Admit that Nortrel 0.5/35 tablets containing an API are approximately the same size as Nortrel 0.5/35 Placebo Tablets.

67. Admit that Nortrel 0.5/35 tablets containing an API are the same size as Nortrel 0.5/35 Placebo Tablets.

68. Admit that Nortrel 7/7/7 tablets containing an API are the same shape as Nortrel 7/7/7 Placebo Tablets.

69. Admit that Nortrel 7/7/7 tablets containing an API are approximately the same size as Nortrel 7/7/7 Placebo Tablets.

70. Admit that Nortrel 7/7/7 tablets containing an API are the same size as Nortrel 7/7/7 Placebo Tablets.

71. Admit that Portia 28 tablets containing an API are the same shape as Portia 28 Placebo Tablets.

72. Admit that Portia 28 tablets containing an API are approximately the same size as Portia 28 Placebo Tablets.

73. Admit that Portia 28 tablets containing an API are the same size as Portia 28 Placebo Tablets.

74. Admit that Sprintec tablets containing an API are the same shape as Sprintec Placebo Tablets.

75. Admit that Sprintec tablets containing an API are approximately the same size as Sprintec Placebo Tablets.

76. Admit that Sprintec tablets containing an API are the same size as Sprintec Placebo Tablets.

77. Admit that Tri-Sprintec 28 tablets containing an API are the same shape as Tri-Sprintec 28 Placebo Tablets.

78. Admit that Tri-Sprintec 28 tablets containing an API are approximately the same size as Tri-Sprintec 28 Placebo Tablets.

79. Admit that Tri-Sprintec 28 tablets containing an API are the same size as Tri-Sprintec 28 Placebo Tablets.

80. Admit that Velivet tablets containing an API are the same shape as Velivet Placebo Tablets.

81. Admit that Velivet tablets containing an API are approximately the same size as Velivet

Placebo Tablets.

82. Admit that Velivet tablets containing an API are the same size as Velivet Placebo Tablets.

83. Admit that, as of June 30, 2005, Barr manufactured and marketed 22 different Generic Contraceptives.

84. Admit that, by September 2001, Barr had filed two ANDAs seeking to manufacture and market generic versions of Warner Chilcott's Ovcon 35 21-day and 28-day products.

85. Admit that the FDA approved Barr's ANDAs to manufacture and market generic versions of Warner Chilcott's Ovcon 35 21-day and 28-day products on April 22, 2004.

86. Admit that Barr signed the Option and License Agreement and the Finished Product Supply Agreement, involving Warner Chilcott and this litigation.

87. Admit that the Option and License Agreement required Warner Chilcott to pay Barr $1 million upon the signing of the Option and License Agreement.

88. Admit that Barr received a payment of $1 million from Warner Chilcott upon signing the Option and License Agreement.

89. Admit that under the Option and License Agreement, if Warner Chilcott exercised its option to acquire licenses to the Barr ANDAs referenced in the agreement, it was required to pay Barr an additional $19 million.

90. Admit that Warner Chilcott exercised its option under the Option and License Agreement.

91. Admit that Barr received a payment of $19 million from Warner Chilcott upon Warner Chilcott's exercise of its option under the Option and License Agreement.

92. Admit that under the Option and License Agreement, after Warner Chilcott exercised its

option and paid Barr the additional $19 million, Warner Chilcott received "an exclusive (including with respect to Barr and its Affiliates), fully-paid license under each Approved ANDA."

93. Admit that the Option and License Agreement and the Finished Product Supply Agreement prohibit Barr from marketing Generic Ovcon, either itself or through a licensee, for five years following Warner Chilcott's exercise of its option under the Option and License Agreement.

94. Admit that under the Finished Product Supply Agreement, Barr agreed to supply Warner Chilcott with Generic Ovcon.

95. Admit that under the Finished Product Supply Agreement, Warner Chilcott had the option to purchase Generic Ovcon from Barr.

96. Admit that under the Finished Product Supply Agreement, Warner Chilcott was not obligated to purchase any minimum quantity of Generic Ovcon from Barr.

97. Admit that the $20 million Barr received from Warner Chilcott under the Option and License Agreement is non-refundable.

98. Admit that, even if Warner Chilcott had never sought to purchase Generic Ovcon from Barr under the Finished Product Supply Agreement, Barr would have been entitled to keep the $20 million it received from Warner Chilcott under the Option and License Agreement.

99. Admit that even if Barr had never been able to validate its manufacturing process for Generic Ovcon, it still would have been entitled to keep the $20 million it received from Warner Chilcott under the Option and License Agreement.

100. Admit that counsel for Barr received a letter from Bradley S. Albert of the FTC on or

about February 17, 2004.

101. Admit that, in his letter of February 17, 2004 to Barr's counsel, Mr. Albert stated that "staff has determined to investigate Galen's acquisition of an option to exclusively license Barr's ANDA for Ovcon."

102. Admit that, in his letter of February 17, 2004 to Barr's counsel, Mr. Albert expressed FTC staff's concern that the Option and License Agreement "has the potential to significantly reduce competition by eliminating the only generic alternative to Ovcon."

103. Admit that Barr signed the Option and License Agreement on or about March 24, 2004.

104. Admit that Barr, at the time it signed the Option and License Agreement, was aware that FTC staff had determined to investigate the Option and License Agreement.

105. Admit that Barr, at the time it signed the Option and License Agreement, was aware that FTC staff had expressed concern about the potential competitive effects of the Option and License Agreement.

106. Admit that Barr has agreed with Warner Chilcott that Barr will supply Warner Chilcott with Estrace tablets.

107. Admit that Barr has supplied Estrace tablets to Warner Chilcott.

108. Admit that Barr currently supplies Estrace tablets to Warner Chilcott.

109. Admit that nothing in any contract, agreement, or other understanding between Barr and Warner Chilcott prevents Barr from selling a generic version of Estrace tablets.

110. Admit that Barr markets a generic version of Estrace tablets.

Dated: September 15, 2006

          /s/
Markus H. Meier (DC Bar # 459715)
Bradley S. Albert
Thomas H. Brock (DC Bar # 939207)
Federal Trade Commission
601 New Jersey Avenue, N.W.
Washington, D.C. 20580
Telephone: (202) 326-3759
Facsimile: (202) 326-3384

Counsel for Plaintiff
Federal Trade Commission


          /s/
Devin M. Laiho
Assistant Attorney General
Consumer Protection Section
STATE OF COLORADO
1525 Sherman Street, 5th Floor
Denver, CO 80203
(303) 866-5079

Counsel for the Plaintiff States