**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MEIJER, INC., *et al.*,      ) | |
| ) | |
| Plaintiffs,   ) | |
| ) | Civil Action No.: 1:05-CV-02195-CKK |
| v.      ) | |
| ) | |
| WARNER CHILCOTT HOLDINGS CO.   ) | |
| III, LTD., *et al.*,     ) | |
| ) | |
| Defendants.   ) | |

|  |  |
|---|---|
| WALGREEN CO., *et al.*,    ) | |
| ) | |
| Plaintiffs,   ) | |
| ) | Civil Action No.: 1:06-CV-00494-CKK |
| v.      ) | |
| ) | |
| WARNER CHILCOTT HOLDINGS CO.   ) | |
| III, LTD., *et al.*,     ) | |
| ) | |
| Defendants.   ) | |

**DEFENDANT BARR PHARMACEUTICALS, INC.'S REPLY TO DIRECT
PURCHASER PLAINTIFFS' OPPOSITION TO BARR'S MOTION TO COMPEL**

In their opposition brief, plaintiffs concede that the documents and information Barr seeks by its motion—documents and information concerning Ovcon 35, its generic equivalents, and other Combined Hormonal Contraceptives ("CHCs")—are relevant. Accordingly, the documents and information Barr seeks are plainly discoverable. Plaintiffs have not presented *any* valid justification for denying Barr discovery.

*First*, plaintiffs' claim that Barr's motion to compel is untimely because it was filed one week prior to the close of discovery. This claim is wholly without merit. As plaintiffs well

know, Barr has repeatedly sought production of these documents and, in fact, negotiated and met and conferred with counsel for each named individual plaintiff[1] and Walgreen beginning in March 2007, more than three months before the close of fact discovery. Moreover, courts in this Circuit regularly permit parties to file such motions well *after* the close of discovery. Thus, Barr's motion—filed *before* the close of discovery—can hardly be viewed as untimely.

*Second*, although plaintiffs assert in scattershot fashion various objections to producing the requested documents and data, plaintiffs ultimately *concede* that the information sought is, in fact, relevant. Thus, at bottom, plaintiffs' opposition to producing the documents and data requested rests on an unsubstantiated claim of undue burden. Such unsubstantiated objections add nothing and provide no basis to resist discovery.

Accordingly, Barr's motion to compel should be granted.

## ARGUMENT

**I.   BARR'S MOTION TO COMPEL IS TIMELY.**

Plaintiffs claim that Barr's motion—filed one week before the close of fact discovery—is untimely. However, neither the Federal Rules of Civil Procedure or any order of this Court sets out a limit on the time within which a motion to compel discovery must be filed. Moreover, courts within this Circuit have consistently permitted parties to file motions to compel even *after* the close of discovery.[2] *See*, *e.g.*, *Intex Recreation Corp. v. Team Worldwide Corp.*, 471 F. Supp. 2d 11, 15 (D.D.C. 2007) (motion to compel filed one month after the close of discovery

---

[1]   The *Meijer* plaintiffs refused to designate any single point of contact to resolve these discovery issues. Therefore, Barr was forced to engage in lengthy meet and confer sessions with each named plaintiff individually.

[2]   This very Court recently explained that "if [a motion to compel] could not be filed after the discovery period, it would create an incentive to delay responses and then 'run out the clock.'" *McFadden v. Ballard, Spahr, Andrews & Ingersoll, LLP*, No. 05-2401, 2007 WL 1880305, at *7 (D.D.C. Jun. 29, 2007).

was timely); *McFadden v. Ballard, Spahr, Andrews & Ingersoll, LLP*, No. 05-2401, 2007 WL 1880305, at *7 (D.D.C. Jun. 29, 2007) (motion to compel filed two months after the close of discovery was timely). Barr's motion here was filed one week *before* the close of fact discovery. Additionally, it is entirely unclear how granting Barr's motion would cause "a substantial delay in the pretrial schedule," Opp'n at 8, given that expert discovery is ongoing and the dispositive motion briefing schedule has not yet been determined. Thus, despite plaintiffs' vague allegations to the contrary, there is no evidence that granting Barr's motion to compel will prejudice plaintiffs at all.

Plaintiffs' argument rests solely on three district court cases from the Northern District of Illinois, where the "length of the movant's delay" is one factor in determining whether a motion to compel is timely.³ (*See* Opp'n at 7.) But there was no unreasonable delay here. Barr began contacting counsel for individual plaintiffs regarding outstanding discovery issues in March 2007, more than three months before the close of fact discovery. (*See*, *e.g.*, J. Parish's March 29, 2007 Letter to L. Nussbaum, attached as Exhibit A.) Pursuant to their obligation under Local Rule 7(m), counsel for Barr and each of the direct purchaser plaintiffs exchanged correspondence and spoke by telephone over the next three months.⁴ During this period, American Sales

---

³ Notwithstanding that the decisions of the Northern District of Illinois are not binding here, each of the three cases cited by plaintiffs is easily distinguishable. First, *Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, No. 05-C-6022, 2007 WL 1673563 (N.D. Ill. June 8, 2007), dealt with a motion to compel filed six weeks *after* the close of discovery. Second, the court in *Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Servs. North America, L.L.C.*, No. 03-C-760, 2004 WL 3021842 (N.D. Ill. Dec. 30, 2004), denied the plaintiffs' motion to compel because the plaintiffs had not fulfilled their obligations to meet and confer with the defendant. Finally, the court in *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331 (N.D. Ill. 2005), actually *granted* in part the plaintiffs' motion to compel and noted that "even . . . motions made after the close of discovery are not inevitably out-of-bounds [citations omitted]." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. at 331 n.1. Plainly, these cases are distinguishable from the facts here: Barr began meeting and conferring with plaintiffs and filed the instant motion *before* the close of discovery.

⁴ Plaintiffs would have this Court rigidly require parties to file motions to compel within a short time after disclosures or discovery responses are due. Such a rule would interfere with the achievement of two of the
(Continued…)

Company, Eckerd Corporation, Hy-vee, Inc., The Kroger Company, Meijer, Inc., SAJ Distributors, Inc., and Walgreen Company all made supplemental productions of documents to Barr. Prior to the week of June 18, 2007, Barr had no reason to believe that it was necessary to seek the intervention of the Court. Barr filed its motion to compel less than two weeks later. Thus, Barr's motion to compel was timely and plaintiffs' argument to the contrary should be rejected.

## II. DOCUMENTS AND INFORMATION REGARDING COMBINED HORMONAL CONTRACEPTIVES OTHER THAN OVCON 35 AND ITS GENERIC EQUIVALENTS ARE RELEVANT AND MUST BE PRODUCED.

Plaintiffs do not dispute (and in fact concede) that information regarding CHCs other than Ovcon 35 and its generic equivalents is relevant to market definition. (*See* Opp'n at 19 (citing this information's "limited relevance").) Plaintiffs offer a number of excuses why this information need not be produced (all of which are examined in detail below), including that the production of this information would be burdensome, that the information will not be useful to Barr, and that the information is available from other sources. But plaintiffs do not and, in fact, cannot dispute that the information requested by Barr is relevant to market definition. For this reason, Barr's motion to compel should be granted.

### A. Plaintiffs' Objections Are Without Merit.

Plaintiffs claim—without any substantiation or support whatsoever—that producing information regarding CHCs other than Ovcon 35 and its generic equivalents would be unduly burdensome. However, the law in this District is clear: "the party opposing discovery based on burden 'must make a specific showing, ***supported by declaration***, as to why the production

---

principal objectives of the meet and confer requirements: (1) to encourage more communication and cooperation across party lines with respect to disclosure and discovery, and (2) to reduce the number of discovery motions that courts must address. *See* 7-37 *Moore's Federal Practice (Civil)* § 37.05.

sought would be unreasonably burdensome.'" *Peskoff v. Faber*, No. 04-526, 2006 WL 1933483, at \*2 (D.D.C. July 11, 2006) (emphasis added); *see also Williams v. Johanns*, 235 F.R.D. 116, 123 (D.D.C. 2006) ("like every other judge, I will not even consider claims of burdensomeness without an affidavit specifying exactly why this is so."). Plaintiffs have failed to provide a declaration outlining why each of Barr's discovery requests is unduly burdensome and thus has deprived the Court of information necessary to evaluate its claim.[5] On this basis alone, plaintiffs' burdensomeness argument should be rejected.

Plaintiffs cite this Court's decision in *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296 (D.D.C. 2002), as support for their claims of burden. But the facts of *Vitamins* (the only case cited by plaintiffs on this issue) are easily distinguishable from those here. Defendants in *Vitamins* sought to compel the production of data regarding "thousands of different products" sold by plaintiffs, data which would consist of "literally every document relating to the businesses of the plaintiffs selling those products." *In re Vitamins*, 198 F.R.D. at 298-99. Barr seeks the production of documents and information regarding only Ovcon 35 and its generic equivalents (which have, for the most part, already been produced), and other CHCs. Plaintiffs have not and cannot reasonably claim that the small imposition created by Barr's discovery requests at all approaches that faced by the *Vitamins* plaintiffs.

Plaintiffs' other objections are similarly without merit. First, plaintiffs argue, in essence, that the information requested by Barr need not be produced because the data will not be useful

---

[5] For example, plaintiffs have not offered any estimates of potential costs, time demands, or any other objective facts relevant to this analysis. Plaintiffs claim that responding to Barr's requests will require "[t]racking down and producing data showing every purchase of every oral contraceptive stocked by Plaintiffs" and that "a program needs to be written to search the relevant files and extract information on purchases of the relevant drugs." (Opp'n at 19.) But plaintiffs have not provided any information about why such considerations should foreclose Barr's discovery of (admittedly) relevant information.

to Barr. (*See* Opp'n at 18.) Plaintiffs' unsupported (and facially self-serving) assertion regarding the usefulness of the information requested by Barr is simply not material to whether that information should be produced. Plaintiffs' (incorrect) assumptions regarding Barr's intended use for the data—to perform market-wide studies of the cross-elasticity of demand between Ovcon 35 and other CHCs—and plaintiffs' assessment of whether any such analysis would be fruitful are simply irrelevant.

Second, plaintiffs argue that the information requested by Barr need not be produced because similar information is available from third parties, such as IMS. (*See* Opp'n at 18.) Notably, plaintiffs' own experts do not rely on such third party data to conduct their analyses and, indeed, conclude that such data would not be adequate. (*See*, *e.g.*, May 18, 2007 Expert Report of Keith Leffler, at 12 n.26 ("[t]he data available does not allow an econometric or statistical calculation of cross elasticities; hence reasonable inferences as to cross elasticity must be made from other available [ ] evidence.").) Most tellingly, however, plaintiffs' expert relies on the very same types of data that Barr seeks from the plaintiffs. (*See* Leffler Report at 35-51 (using plaintiffs' purchasing and dispensing data to calculate actual and "but-for" sales and prices for generic Ovcon 35); May 18, 2007 Expert Report of Jeffrey J. Leitzinger, Ph.D., at 28-44 (same).)

Moreover, Barr has requested more than simple CHC purchasing data. (*See*, *e.g.*, Barr's First Request for Production of Documents to Direct Purchaser Plaintiffs Number 6 (requesting documents and information regarding how plaintiffs decide which CHCs to sell and how to price those CHCs).) Plaintiffs cannot plausibly claim that Barr could obtain from third parties all of

6

the memoranda, business plans, and other internal documents regarding individual plaintiffs' CHC purchasing decisions. The only source for such documents is plaintiffs themselves.[6]

### B. Plaintiffs' Claim That Market Definition Is Not A "Claim or Defense" In This Litigation Is Just Wrong.

Much of plaintiffs' opposition brief is dedicated to a dress rehearsal of the arguments that plaintiffs evidently plan to raise in a motion for summary judgment. In fact, plaintiffs spend six pages of their opposition brief arguing (incorrectly) that the Court should not apply a rule of reason analysis to decide the *merits* of this case. Thus, plaintiffs request that this Court decide *right now* that this case is subject to the *per se* rule, not the rule of reason. Plaintiffs' argument is both inappropriate and premature. *See*, *e.g.*, *Lee v. Dep't of Justice*, 401 F. Supp. 2d 123, 142 n.24 (D.D.C. 2005) (argument regarding merits of underlying lawsuit during consideration of motion to compel was "wholly premature"); *see also Burns v. Bank of America*, 2007 WL 1589437, at *11 (S.D.N.Y. June 4, 2007) (plaintiff's request for judgment on the merits was premature because it was filed "in the midst of discovery.").

The purpose of plaintiffs' extensive argument appears to be (and this is not at all clear) that discovery related to market definition is "legally irrelevant" because market definition is not a "claim or defense" in this litigation. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the *claim or defense* of any

---

[6] Even if Barr were to accept plaintiffs' argument that the documents and information it has requested are available from IMS or other third parties (which it does not), this is not a valid reason to prevent discovery of this information. *See Fort Washington Res., Inc. v. Tannen*, 153 F.R.D. 78, 79 (E.D. Pa. 1994) (defendant ordered to produce requested documents regardless of the fact that the same documents were either in the plaintiff's possession or readily accessible to the plaintiff). Plaintiffs must prove that the "unreasonably cumulative or duplicative" data obtainable from a third party is "more convenient, less burdensome, or less expensive" than it would be for plaintiffs to produce such information. *See* Fed. R. Civ. P. 26(b)(2)(C). Plaintiffs have not offered anything more than conclusory statements on this point and, as such, have not met their burden of proof. *See Alexander v. Fed. Bureau of Investigation*, 194 F.R.D. 299, 302 (D.D.C. 2000).

party. . . .") (emphasis added).  Given that plaintiffs themselves raised the question of market definition *in their Complaints*, this argument should be rejected for this reason alone.[7]  (*See* Meijer Compl. at ¶ 78 ("the relevant product market is Ovcon and its AB-rated generic equivalents"); Walgreen Compl. at ¶¶ 50, 52 (defining the relevant product market as "Ovcon and its generic equivalents").)  Moreover, Barr affirmatively raised market definition as a defense to plaintiffs' claims.  (Barr's Answer to *Meijer* Plaintiffs' Amended Class Action Compl. at 18 ("Plaintiffs' claims are barred . . . because plaintiffs have not properly alleged either a relevant product market or a relevant geographic market."); Barr's Answer to *Walgreen* Plaintiffs' Compl. at 16 (same).)  Additionally, plaintiffs have sought (and received) from Barr discovery of tens of thousands of pages of documents related to market definition.  (*See*, *e.g.*, Government Plaintiffs' Joint First Request for the Production of Documents from Defendant Barr Pharmaceuticals, Inc. (incorporated in *Meijer* Plaintiffs' First Set of Requests for Production of Documents from Barr and seeking production of documents and information regarding CHCs other than Ovcon 35, including IMS and ImpactRX data).)  And plaintiffs even retained an expert witness for the express purpose of testifying about the appropriate market definition.  (*See* May 16, 2007 Expert Report of Richard J. Derman, M.D., M.P.H.)  Given that plaintiffs themselves have offered argument on the question of market definition and have requested (and received) extensive discovery on this issue, plaintiffs cannot now blockade Barr's

---

[7] As plaintiffs note, market definition is not a relevant consideration in a *per se* antitrust case.  Given that this Court has not yet decided the merits of plaintiffs' claims, the relevant inquiry for discovery purposes is whether there is any possibility that market definition will be an issue in this litigation.  *See Alexander v. Fed. Bureau of Investigation*, 194 F.R.D. 316, 325 (D.D.C. 2000) ("a request for discovery should be considered relevant if there is **any possibility** that the information sought may be relevant to the subject matter of the action.") (emphasis added); *see also Maritime Cinema Service Corp. v. Movies En Route, Inc.*, 60 F.R.D. 587, 591 (S.D.N.Y. 1973) ("[t]he interpretation of relevancy in antitrust cases is quite broad.").

efforts to obtain the same.  Clearly, market definition is relevant to the claims and defenses at issue in this litigation.

      **C.  Documents and Information Regarding Combined Hormonal Contraceptives Other Than Ovcon 35 and Its Generic Equivalents Are Relevant to Plaintiffs' Damage Claims.**

Plaintiffs concede that information regarding CHCs other than Ovcon 35 and its generic equivalents is relevant to plaintiffs' damage claims.  (Opp'n at 20 ("no one denies that it is possible to model generic discounts and substitution rates using other drugs. . . .").)  Plaintiffs claim (without support) that this information need not be produced because data from the real world October 2006 entry of Balziva is the "best means" of calculating plaintiffs' alleged damages.  In other words, plaintiffs object to producing this data because plaintiffs believe that their purported methodology to calculate alleged damages is the "best" way.  But plaintiffs' opinion regarding the "best" way to assess any alleged damages in this case has nothing to do with the relevance of the discovery requested by Barr.  Notably, plaintiffs' own expert economist disagrees with plaintiffs, claiming that to accurately evaluate the impact of plaintiffs' hypothetical generic version of Ovcon 35, so-called "real world" (*i.e.*, contemporaneous as opposed to historical) Balziva data is insufficient.  (Leitzinger Report at 29 (noting that "[w]hile data reflecting actual prices, market shares, and purchase volumes [following Balziva's October 2006 entry] are available, *these same quantities have to be estimated in the but-for world involving earlier generic entry dates.*") (emphasis added).)[8]

---

[8] Plaintiffs' expert goes on to state that the data for plaintiffs' "but-for" world has three possible sources:  (1) economic literature and empirical data regarding the effect of generic entry on *other brand name drugs*, (2) Defendants' generic penetration models and forecasts (which are based on data regarding *other CHCs*), and (3) data for *other branded products* that have experienced generic competition.  (March 12, 2007 Expert Report of Jeffrey J. Leitzinger, Ph.D., at 17-28.)

Alternatively, plaintiffs argue that the discovery requested by Barr is duplicative of other documents already produced. (Opp'n at 20.) Plaintiffs fail to offer any support for this assertion. Because a plaintiff bears the burden of showing why discovery should not be compelled, plaintiffs here must, at a minimum, identify these "other documents." *See Alexander v. Fed. Bureau of Investigation*, 194 F.R.D. 299, 302 (D.D.C. 2000) ("[b]y simply objecting to the plaintiffs' request without specifically referring to any documents already produced or describing the relevant search already performed, Mrs. Clinton has not met her burden of demonstrating that this request is in fact 'unreasonably cumulative or duplicative'"); *cf. Peskoff v. Faber*, 230 F.R.D. 25, 28 (D.D.C. 2005) ("[a]bsent any specific representation of duplication . . . this Court cannot find that the defendant has shown good cause for the entry of a protective order"). By failing to identify any such documents, plaintiffs have not met their burden. Nor could they as none of this information has been previously produced. Specifically, none of the documents produced by plaintiffs outline "generic substitution rates in general, or for particular classes of drugs." (Opp'n at 20.)

Because documents and information regarding CHCs other than Ovcon 35 and its generic equivalents are—as plaintiffs concede—relevant to market definition and plaintiffs' damage claims, Barr's motion to compel this information should be granted.

### III. PLAINTIFFS CONCEDE THAT THE OTHER DOCUMENTS IDENTIFIED BY BARR ARE RELEVANT AND MUST BE PRODUCED.

In an appendix attached to its motion to compel, Barr identified dozens of specific documents and categories of documents and data regarding Ovcon 35 that plaintiffs have, to

date, declined to produce or intend (well after the close of discovery) to produce.[9]  Plaintiffs have represented to the Court that they will now produce many of these documents.  (*See* Opp'n at Appendix A.)  Having conceded that these documents must be produced, plaintiffs presumably do not object to Barr's motion to compel these documents.[10]

Notwithstanding plaintiffs' apparent willingness to produce documents it previously withheld, American Sales Company refuses to produce its contract with Cardinal Health (under which it purchased Ovcon 35).  American Sales Company claims that this contract is "duplicative." (*See* Opp'n at Appendix A.)  As outlined above, a party objecting to discovery as duplicative must identify with specificity the duplicative documents already produced.  *See Alexander*, 194 F.R.D. at 302; *cf. Peskoff*, 230 F.R.D. at 28 ("[a]bsent any specific representation of duplication . . . this Court cannot find that the defendant has shown good cause for the entry of a protective order").  Plaintiffs have noted that American Sales Company has already produced its Ovcon 35 purchase data.  (*See* Opp'n at Appendix A.)  But plaintiffs have not outlined why the Cardinal Health contract requested by Barr duplicates this data.  This contract outlines the terms under which American Sales Company purchased Ovcon 35.  Those terms—including applicable rebates, discounts, and other price adjustments—are not reflected in any of the documents American Sales Company has produced.  (*See*, *e.g.*, AMS_001_00000001, attached as Exhibit B (showing only the net price paid by American Sales Company on its purchases of Ovcon 35).)  Accordingly, production of this contract—and of all of the documents and data related to Ovcon 35 and its generic equivalents—should be compelled.

---

[9]   Certainly plaintiffs' response that they "intend" to produce some additional documents (after the close of discovery) in response to Barr's motion belies any claim that Barr's motion is untimely.

[10]  A complete list of the documents and data requested by Barr, together with plaintiffs' responses, is attached at Appendix A.

## **CONCLUSION**

For all of the foregoing reasons, Barr respectfully requests that the Court order plaintiffs to produce documents and information responsive to its discovery requests, including: (1) documents and information regarding CHCs other than Ovcon 35 and its generic equivalents, and (2) documents and data regarding Ovcon 35 and its generic equivalents.

Date: July 24, 2007                                  Respectfully submitted,

 /s/ Karen N. Walker
Karen N. Walker (D.C. Bar # 412137)
Mark L. Kovner (D.C. Bar # 430431)
Chong S. Park (D.C. Bar # 463050)
Patrick M. Bryan (D.C. Bar # 490177)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, District of Columbia 20005
Telephone: (202) 879-5000
Facsimile: (202) 979-5200

*Counsel for Barr Pharmaceuticals, Inc.*

**APPENDIX A**

**DOCUMENTS AND DATA REGARDING OVCON 35 AND ITS GENERIC EQUIVALENTS IDENTIFIED IN BARR'S JUNE 28, 2007 MOTION TO COMPEL:**

| Documents/Data Requested | Status |
|---|---|
| **Albertson's, Inc.** | |
| Contracts and agreements under which Albertson's purchased Ovcon 35 from McKesson. | This document was produced on July 12, 2007. |
| Contracts and agreements under which McKesson purchased Ovcon 35 from Warner Chilcott for resale to Albertson's. | Plaintiffs claim that the documents are not in their possession, custody, or control. |
| Contracts and agreements under which Albertson's purchased Balziva and Zenchent. | Still not produced. |
| Records of Albertson's purchases of Ovcon 35 for the period from April 2006 to the present. | Still not produced. |
| Records of McKesson's purchases of Ovcon 35 for resale to Albertson's for the period from January 1, 2000 to the present. | Plaintiffs claim that the records are not in their possession, custody, or control. |
| Records of Albertson's purchases of Balziva, Zenchent, Ovcon Chewable, and Femcon for the period from January 1, 2000 to the present. | Still not produced. |
| Supply forecasts for Ovcon 35, Balziva, and Zenchent. | Plaintiffs claim that the documents do not exist. |
| Analyses and other documents regarding the following subjects: (1) the increase in generic prescriptions over the 2002-2006 period; (2) the impact of Balziva on the total combined purchases of branded and generic Ovcon 35; (3) generic substitution rates; and (4) rebates received by Albertson's on its purchases of Ovcon 35. | Plaintiffs claim that the documents have been produced. |
| **American Sales Company, Inc**. | |
| American Sales Company's contract with Cardinal Health (under which it purchased Ovcon 35). | Plaintiffs refuse to produce this document. *See supra*, page 11. |
| American Sales Company's market share agreement with Watson Pharmaceuticals (under which it purchased Zenchent). | Still not produced. Though plaintiffs now claim that the document does not exist, counsel for American Sales Company has previously indicated that this agreement exists. |
| **Hy-vee, Inc.** | |
| Contracts and agreements under which McKesson purchased Ovcon 35 from Warner Chilcott for resale to Hy-vee. | Plaintiffs claim that the documents are not in their possession, custody, or control. |
| Contracts and agreements under which Hy-vee | Still not produced. |

| | |
|---|---|
| purchased Balziva and Zenchent. | |
| Records of Hy-vee's purchases of Ovcon 35 for the period from January 1, 2000 to the present. | Still not produced. |
| Records of McKesson's purchases of Ovcon 35 for resale to Hy-vee for the period from January 1, 2000 to the present. | Plaintiffs claim that the documents are not in their possession, custody, or control. |
| Records of Hy-vee's purchases of Balziva, Zenchent, Ovcon Chewable, and Femcon for the period from January 1, 2000 to the present. | Still not produced. |
| Supply forecasts for Ovcon 35, Balziva, or Zenchent. | Plaintiffs claim that the documents do not exist. |
| **The Kroger Company** | |
| Contracts and agreements under which Kroger purchased Ovcon 35 from Warner Chilcott. | Plaintiffs claim that the documents do not exist. |
| Contracts and agreements under which Kroger purchased Balziva. | Still not produced. Though plaintiffs claim these documents were produced, Barr has not received any such documents. |
| Records of Kroger's purchases of Ovcon 35 for the period from April 2006 to the present. | Still not produced. |
| Records of Kroger's purchases of Balziva, Zenchent, Ovcon Chewable, and Femcon for the period from January 1, 2000 to the present. | Still not produced. |
| **Maxi Drug, Inc., d/b/a/ Brooks Pharmacy and Eckerd Corporation ("Brooks/Eckerd")** | |
| Contracts and agreements under which Brooks/Eckerd purchased Ovcon 35 from McKesson. | These documents were produced on July 12, 2007. |
| Contracts and agreements under which McKesson purchased Ovcon 35 from Warner Chilcott for resale to Brooks/Eckerd. | Plaintiffs claim that the documents are not in their possession, custody, or control. |
| Contracts and agreements under which Brooks/Eckerd purchased Zenchent. | Still not produced. |
| Records of Brooks/Eckerd's purchases of Ovcon 35 for the period from August 2006 to the present. | Still not produced. |
| Records of McKesson's purchases of Ovcon 35 for resale to Brooks/Eckerd for the period from January 1, 2000 to the present. | Plaintiffs claim that the documents are not in their possession, custody, or control. |
| Records of Brooks/Eckerd's purchases of Balziva, Zenchent, Ovcon Chewable, and Femcon for the period from January 1, 2000 to the present. | Still not produced. |
| **Safeway, Inc.** | |
| Contracts and agreements under which Safeway purchased Ovcon 35 from McKesson. | This document was produced on July 12, 2007. |

| | |
|---|---|
| Contracts and agreements under which McKesson purchased Ovcon 35 from Warner Chilcott for resale to Safeway. | Plaintiffs claim that the documents are not in their possession, custody, or control. |
| Contracts and agreements under which Safeway purchased Zenchent, including Safeway's market share agreement with Watson Pharmaceuticals. | Still not produced. |
| Records of Safeway's purchases of Ovcon 35 for the period from January 1, 2000 to the present. | Still not produced. |
| Records of McKesson's purchases of Ovcon 35 for resale to Safeway for the period from January 1, 2000 to the present. | Plaintiffs claim that the documents are not in their possession, custody, or control. |
| Records of Safeway's purchases of Balziva, Zenchent, Ovcon Chewable, and Femcon for the period from January 1, 2000 to the present. | Still not produced. |
| **Walgreen Company** | |
| Contracts and agreements under which Walgreen has purchased Ovcon 35 from Amerisource Bergen. | Still not produced. |
| Contracts and agreements under which Amerisource Bergen has purchased Ovcon 35 from Warner Chilcott for resale to Walgreen. | Plaintiffs claim that the documents are not in their possession, custody, or control. |
| Contracts and agreements under which Walgreen purchased Balziva and Zenchent, including Walgreen's market share agreement with Watson Pharmaceuticals. | Still not produced. |
| Records of Walgreen's purchases of Ovcon 35 for the period from April 2006 to the present. | Still not produced. |
| Records of Amerisource Bergen's purchases of Ovcon 35 for resale to Walgreen for the period from January 1, 2000 to the present. | Plaintiffs claim that the documents are not in their possession, custody, or control. |
| Records of Walgreen's purchases of Balziva, Zenchent, Ovcon Chewable, and Femcon for the period from January 1, 2000 to the present. | Still not produced. |
| Documents prepared in anticipation of a generic version of Ovcon 35, including product analysis forms and pricing models. | Still not produced. |
| A legible copy of the document Bates stamped WAL_000022 and marked as Walgreen Exhibit 4. | Plaintiffs claim that the most legible copy of this document has been produced. |