**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
STATE OF COLORADO, *et al.*,                         )
                                                    )
          Plaintiffs,                               )
                                                    )
     v.                                             )     Civil Action No. 1:05-cv-2182-CKK
                                                    )
WARNER CHILCOTT HOLDING COMPANY                     )
III, LTD., *et al.*,                                 )
                                                    )
          Defendants.                               )
_____)
                                                    )
MEIJER, INC., *et al.*,                              )
                                                    )
          Plaintiffs,                               )
     v.                                             )     Civil Action No. 1:05-cv-2195-CKK
                                                    )
WARNER CHILCOTT HOLDINGS COMPANY                    )
III, LTD., *et al.*,                                 )
                                                    )
          Defendants.                               )
_____ )
                                                    )
WALGREEN CO., *et al.*,                              )
                                                    )
          Plaintiffs,                               )
                                                    )
     v.                                             )     Civil Action No. 1:06-cv-494-CKK
                                                    )
WARNER CHILCOTT HOLDINGS COMPANY                    )
III, LTD., *et al.*,                                 )
                                                    )
          Defendants.                               )
_____ )

CVS PHARMACY, INC., *et al.*,     )
                                      )
          Plaintiffs,        )
                                      )
      v.                       )     Civil Action No. 1:06-cv-795-CKK
                                        )
WARNER CHILCOTT HOLDINGS COMPANY  )
III, LTD., *et al.*,         )
                                      )
         Defendants.       )
                                      )
_____ )

## PUBLIC COPY

### APPENDIX OF EXHIBITS IN SUPPORT OF PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT AND DIRECT PURCHASER PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### EXHIBITS 4, 6 -10 AND 12-13 HAVE BEEN FILED UNDER SEAL

Tab 1        Warner Chilcott's Answer to the Second Amended Complaint (*Colorado*)

Tab 2        Warner Chilcott's Answer to Class Action Complaint (*Meijer*)

Tab 3        Barr Pharmaceuticals, Inc.'s Answer to Plaintiffs' Complaint (*Walgreen*)

Tab 4        Option and License Agreement (BARR-29-00011-39) (**FILED UNDER SEAL**)

Tab 5        News Release, *Barr's Generic Ovcon-35 Tablets Approved* (April 23, 2004)

Tab 6        Finished Product Supply Agreement (BARR-29-00040-67) (**FILED UNDER SEAL**)

Tab 7        BARR-00-0226; BARR-12-1729 (**FILED UNDER SEAL**)

Tab 8        Boissonneault dep. 201:5 - 202:2 (**FILED UNDER SEAL**)

Tab 9        WC00140657-59 (**FILED UNDER SEAL**)

Tab 10       WC00125915 (**FILED UNDER SEAL**)

Tab 11    News Release, *Barr Announces Warner Chilcott Waives Exclusive License for Ovcon 35* (Sept. 26, 2006)

Tab 12    Warner Chilcott Price Increase Notice dated March 1, 2006 (KGR 0003) (**FILED UNDER SEAL**)

Tab 13    Barr Laboratories Letter to Brooks/Eckerd dated October 17, 2006 (BRK00086-87) (**FILED UNDER SEAL**)

Tab 14    News Release, *Warner Chilcott Reports Operating Results for the Quarter Ended March 31, 2007 and Raises 2007 Full Year Guidance* (May 11, 2007)

# TAB 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------- x

STATE OF COLORADO                              :
by Attorney General John W. Suthers           :
1525 Sherman Street, Fifth Floor              :
Denver, Colorado 80203                         :     Civil Action No: 1:05CV02182 (CKK)
                                               :     Judge Colleen Kollar-Kotelly
COMMONWEALTH OF VIRGINIA                        :
by Attorney General Robert F. McDonnell       :
900 East Main Street                           :     **JURY TRIAL DEMANDED**
Richmond, Virginia 23219                       :

STATE OF MARYLAND                              :
by Attorney General J. Joseph Curran, Jr.     :
200 St. Paul Street                            :
Baltimore, Maryland 21202                      :
                                               :
STATE OF ALASKA                                :
by Attorney General David W. Marquez          :
1031 W. 4th Avenue #200                        :
Anchorage, Alaska 99501                        :
                                               :
STATE OF ARIZONA                               :
by Attorney General Terry Goddard             :
1275 West Washington                           :
Phoenix, Arizona 85007-2926                    :
                                               :
STATE OF ARKANSAS                              :
by Attorney General Mike Beebe                :
323 Center Street, Suite 200                   :
Little Rock, Arkansas 72201                    :
                                               :
STATE OF CALIFORNIA                            :
by Attorney General Bill Lockyear             :
1515 Clay St.                                  :
Oakland, California 94612                       :
                                               :
STATE OF DELAWARE                              :
by Attorney General Carl C. Danberg           :
Carvel State Office Building                    :
820 N. French Street                           :
Wilmington, Delaware 19801                     :
                                               :
                                               :
                                               :

DISTRICT OF COLUMBIA                                 :
by Attorney General Robert J. Spagnoletti           :
441 Fourth Street, NW, Suite 450N                   :
Washington, District of Columbia 20001              :
                                                    :
STATE OF FLORIDA                                    :
by Attorney General Charles J. Crist, Jr.           :
PL-01 The Capitol                                   :
Tallahassee, Florida 32399                          :
                                                    :
STATE OF IDAHO                                      :
by Attorney General Lawrence Wasden                :
650 W. State Street, Lower Level                    :
Boise, Idaho 84720-0010                             :
                                                    :
STATE OF ILLINOIS                                   :
by Attorney General Lisa Madigan                    :
100 West Randolph Street, 13th Floor                :
Chicago, Illinois 60601                             :
                                                    :
STATE OF IOWA                                       :
by Attorney General Thomas J. Miller                :
2nd Floor, Hoover Office Building                   :
East 13th Street and Walnut                         :
Des Moines, Iowa 50319                              :
                                                    :
STATE OF KANSAS                                     :
by Attorney General Phill Kline                     :
120 SW 10th Street, 2nd Floor                       :
Topeka, Kansas 66612                                :
                                                    :
COMMONWEALTH OF KENTUCKY                            :
by Attorney General Gregory D. Stumbo               :
1024 Capital Center Drive                           :
Frankfort, Kentucky 40601                           :
                                                    :
STATE OF LOUISIANA                                  :
by Attorney General Charles C. Foti, Jr.            :
1885 N. 3rd Street, 4th Floor                       :
Baton Rouge, Louisiana 70802                        :
                                                    :
                                                    :
                                                    :
                                                    :
                                                    :
                                                    :
                                                    :

2

STATE OF MAINE                                    :
by Attorney General G. Steven Rowe               :
6 State House Station                            :
Augusta, Maine 04333-0006                        :
                                                 :
COMMONWEALTH OF MASSACHUSETTS                     :
by Attorney General Thomas F. Reilly             :
One Ashburton Place                              :
Boston, Massachusetts 02108                      :
                                                 :
STATE OF MICHIGAN                                 :
by Attorney General Michael A. Cox               :
G. Mennen Williams Building, 6th Floor           :
525 W. Ottawa Street                             :
Lansing, Michigan 48913                          :
                                                 :
STATE OF MINNESOTA                                :
by Attorney General Mike Hatch                   :
102 State Capitol                                :
St. Paul, Minnesota 55155-1609                   :
                                                 :
STATE OF MISSISSIPPI                              :
by Attorney General Jim Hood                     :
Post Office Box 22947                            :
Jackson, Mississippi 39225                       :
                                                 :
STATE OF MISSOURI                                 :
by Attorney General Jeremiah (Jay) W. Nixon      :
Post Office Box 899                              :
Jefferson City, Missouri 65102                   :
                                                 :
STATE OF NEVADA                                   :
by Attorney General George J. Chanos             :
555 East Washington Avenue, Suite 3900           :
Las Vegas, Nevada 89101                          :
                                                 :
STATE OF NEW YORK                                 :
by Attorney General Eliot Spitzer                :
120 Broadway, Suite 26C                          :
New York, New York 10271-0332                    :
                                                 :
STATE OF  NORTH CAROLINA                          :
by Attorney General Roy Cooper                   :
9001 Mail Service Center                         :
Raleigh, NC 27699-9001                           :

STATE OF NORTH DAKOTA                    :
by Attorney General Wayne Stenehjem      :
P.O. Box 1054                            :
Bismarck, North Dakota 58502-1054        :
                                         :
STATE OF OHIO                            :
by Attorney General Jim Petro            :
150 East Gay Street, 20th Floor          :
Columbus, Ohio 43215                     :
                                         :
STATE OF OKLAHOMA                        :
by Attorney General W.A. Drew Edmonson   :
4545 N. Lincoln Boulevard, Suite 260     :
Oklahoma City, Oklahoma 73105            :
                                         :
STATE OF OREGON                          :
by Attorney General Hardy Myers          :
1162 Court Street NE                     :
Salem, Oregon 97301                      :
                                         :
STATE OF RHODE ISLAND                    :
by Attorney General Patrick C. Lynch     :
150 South Main Street                    :
Providence, Rhode Island 02903           :
                                         :
STATE OF SOUTH CAROLINA                  :
by Attorney General Henry D. McMaster    :
Rembert C. Dennis Building               :
1000 Assembly Street, Suite 501          :
Columbia, South Carolina 29211-1549      :
                                         :
STATE OF TENNESSEE                       :
by Attorney General Paul G. Summers      :
P.O. Box 20207                           :
Nashville, Tennessee 37202-0207          :
                                         :
STATE OF TEXAS                           :
by Attorney General Greg Abbott          :
Post Office Box 12548                    :
Austin, Texas 78711                      :
                                         :
STATE OF UTAH                            :
by Attorney General Mark L. Shurtleff    :
160 East 300 South, Fifth Floor          :
Salt Lake City, Utah 84111               :

4

and                                                              :
                                                                 :
STATE OF VERMONT                                                 :
by Attorney General William H. Sorrell                           :
109 State Street                                                 :
Montpelier, Vermont 05609-1001                                   :
                                                                 :
        Plaintiffs,                                              :
                                                                 :
v.                                                               :
                                                                 :
WARNER CHILCOTT HOLDINGS COMPANY                                 :
III, LTD.                                                        :
100 Enterprise Drive                                             :
Rockaway, N.J. 07866-2129                                        :
                                                                 :
WARNER CHILCOTT CORPORATION                                      :
100 Enterprise Drive                                             :
Rockaway, N.J. 07866-2129                                        :
                                                                 :
WARNER CHILCOTT (US) INC.                                        :
100 Enterprise Drive                                             :
Rockaway, N.J. 07866-2129                                        :
                                                                 :
WARNER CHILCOTT COMPANY, INC.                                    :
Union Street, Km. 1.1                                            :
Fajardo, Puerto Rico 00738                                       :
                                                                 :
and                                                              :
                                                                 :
BARR PHARMACEUTICALS, INC.                                       :
2 Quaker Road, P.O. Box 2900                                     :
Pomona, N.Y. 10970-0519                                          :
                                                                 :
        Defendants.                                              :
------------------------------------------------------    x

## WARNER CHILCOTT'S ANSWER TO THE SECOND AMENDED COMPLAINT

        Defendants Warner Chilcott Holdings Company III, Ltd., Warner Chilcott

Corporation, Warner Chilcott (US) Inc. and Warner Chilcott Company, Inc. (collectively,

"Warner Chilcott") answer the allegations of the states of Colorado, Maryland, Alaska, Arizona,

Arkansas, California, Delaware, Florida, Idaho, Illinois, Iowa, Kansas, Louisiana, Maine,

Michigan, Minnesota, Mississippi, Missouri, Nevada, New York, North Carolina, North Dakota,

Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Utah, and Vermont,

the commonwealths of Kentucky, Massachusetts and Virginia, and the District of Columbia

("Plaintiffs") in their Second Amended Complaint ("Complaint") as follows:

**PLAINTIFFS' ALLEGATION**

1.    Warner Chilcott and Barr entered into an anticompetitive agreement not to compete, in violation of the antitrust laws.

**ANSWER**

        Paragraph 1 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies each and every allegation

contained in Paragraph 1 of the Complaint.

**PLAINTIFFS' ALLEGATION**

2.    Warner Chilcott is a pharmaceutical company that develops, manufactures, and markets proprietary women's healthcare and dermatology prescription pharmaceutical products.

**ANSWER**

        Warner Chilcott admits the allegations contained in Paragraph 2 of the Complaint.

**PLAINTIFFS' ALLEGATION**

3.    Barr is a pharmaceutical company that develops, manufactures, and markets generic and proprietary prescription pharmaceutical products.

**ANSWER**

        Warner Chilcott admits the allegations contained in Paragraph 3 of the Complaint.

**PLAINTIFFS' ALLEGATION**

     4.    Warner Chilcott markets Ovcon, a proprietary prescription pharmaceutical product that contains norethindrone and ethinyl estradiol as its active pharmaceutical ingredients. Ovcon is an oral contraceptive product prescribed to women for the prevention of pregnancy.

**ANSWER**

     Warner Chilcott admits the allegations contained in Paragraph 4 of the Complaint.

**PLAINTIFFS' ALLEGATION**

     5.    Warner Chilcott is the exclusive marketer of Ovcon, pursuant to an agreement with Bristol-Myers Squibb.

**ANSWER**

     Warner Chilcott denies each and every allegation contained in Paragraph 5 of the Complaint.

**PLAINTIFFS' ALLEGATION**

     6.    Barr developed a generic version of Ovcon and submitted an abbreviated new drug application ("ANDA") for generic versions of Ovcon with the U.S. Food and Drug Administration ("FDA").

**ANSWER**

     Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6 of the Complaint, except admits that the FDA has approved a Barr ANDA for a generic Ovcon.

**PLAINTIFFS' ALLEGATION**

7.      On or about March 24, 2004, Warner Chilcott and Barr entered into an Option and License Agreement (the "Agreement") not to compete.  Warner Chilcott exercised that option on May 6, 2004.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 7 of the Complaint,

except admits that on or about March 24, 2004 Warner Chilcott and Barr entered into an option

agreement, and further admits that Warner Chilcott exercised that option on May 6, 2004.

Warner Chilcott respectfully refers the Court to the option agreement for the terms thereof.

**PLAINTIFFS' ALLEGATION**

8.      Prior to May 6, 2004, Barr planned on competing with Warner Chilcott by marketing its lower-priced generic version of Ovcon after obtaining FDA approval.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 8 of the Complaint.

**PLAINTIFFS' ALLEGATION**

9.      The Agreement prevented persons in the Plaintiff States from purchasing a less-expensive generic version of Ovcon.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 9 of the

Complaint.

8

**PLAINTIFFS' ALLEGATION**

10.    The States request a finding that Warner Chilcott and Barr violated state and federal antitrust and related laws, a permanent injunction barring Warner Chilcott and Barr from engaging in similar conduct in the future, other equitable relief, civil penalties, and/or other relief for injuries caused by the illegal Agreement.

**ANSWER**

Warner Chilcott admits that Plaintiffs purport to allege claims against Warner Chilcott, but denies each and every allegation contained in Paragraph 10 of the Complaint. Warner Chilcott further denies that it has violated any laws and that Plaintiffs are entitled to any relief whatsoever.

**PLAINTIFFS' ALLEGATION**

11.    This Court has jurisdiction pursuant to Section 1 of the Sherman Act, 15 U.S.C. § 1 and Section 16 of the Clayton Act, 15 U.S.C. § 26, and 28 U.S.C. §§ 1331 and 1337. In addition to pleading violations of federal antitrust law, the States also allege violations of state antitrust, consumer protection and/or unfair competition statutes and related state laws. The States seek civil penalties and/or equitable relief under those state laws.

**ANSWER**

Paragraph 11 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies that Plaintiffs are entitled to any relief whatsoever.

**PLAINTIFFS' ALLEGATION**

12.    All claims under federal and state law are based upon a common nucleus of operative fact, and the entire action commenced by this Complaint constitutes a single case that would ordinarily be tried in one judicial proceeding.

9

**ANSWER**

Paragraph 12 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott admits the allegations contained in Paragraph 12 of the Complaint.

**PLAINTIFFS' ALLEGATION**

13. This Court has jurisdiction of state law claims under 28 U.S.C. §1367(a), as well as under the principles of supplemental jurisdiction. Supplemental jurisdiction will avoid unnecessary duplication and multiplicity of actions and should be exercised in the interests of judicial economy, convenience, and fairness.

**ANSWER**

Paragraph 13 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott admits the allegations contained in Paragraph 13 of the Complaint.

**PLAINTIFFS' ALLEGATION**

14. Venue is proper in this Court under Section 12 of the Clayton Act, 15 U.S.C. § 22 and under 28 U.S.C. §§ 1391(b) and (c), because: (1) Warner Chilcott and Barr transact business and are found within this district; and (2) a substantial portion of the affected trade and commerce described below has been carried out in this district.

**ANSWER**

Paragraph 14 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint, except admits that Ovcon is sold in the District of Columbia.

10

**PLAINTIFFS' ALLEGATION**

15. Defendant Warner Chilcott Holdings Company III, Limited, is a privately-owned for-profit enterprise organized under the laws of Bermuda, with its principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey, 07866-2129.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 15 of the Complaint, except admits that Warner Chilcott Holdings Company III, Ltd. is a privately-owned, for-profit enterprise organized under the laws of Bermuda, with its registered office located at Canon's Court, 22 Victoria Street, Hamilton HM12 Bermuda.

**PLAINTIFFS' ALLEGATION**

16. Defendant Warner Chilcott Corporation is a for-profit Delaware corporation with its principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey, 07866-2129. Defendant Warner Chilcott Corporation is an indirect wholly-owned subsidiary of Defendant Warner Chilcott Holdings Company III, Limited.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 16 of the Complaint.

**PLAINTIFFS' ALLEGATION**

17. Defendant Warner Chilcott (US), Inc., is a for-profit Delaware corporation with its principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey, 07866-2129. Defendant Warner Chilcott (US), Inc., is a direct wholly-owned subsidiary of Defendant Warner Chilcott Corporation.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 17 of the Complaint.

11

**PLAINTIFFS' ALLEGATION**

18.    Warner Chilcott develops, manufactures, and markets proprietary women's healthcare and dermatology prescription pharmaceutical products. For the fiscal quarter ending March 31, 2005, Warner Chilcott Holdings Company III, Limited reported net revenue of approximately $133.7 million. During that period, sales of Ovcon increased 30.8% to approximately $22,900,000 for the quarter.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 18 of the

Complaint, except admits that Warner Chilcott develops, manufacturers, and markets proprietary

women's healthcare and dermatology prescription pharmaceutical products. Warner Chilcott

further admits that its net unaudited revenue for the fiscal quarter ending March 31, 2005 was

approximately $133.7 million.

**PLAINTIFFS' ALLEGATION**

19.    Defendant Warner Chilcott Company, Inc., a wholly-owned subsidiary of Warner Chilcott Holdings Company III, Ltd., is organized, existing, and doing business under and by virtue of the laws of the Commonwealth of Puerto Rico.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 19 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

20.    Defendant Barr Pharmaceuticals, Inc., is a Delaware corporation with its principal place of business at 400 Chestnut Ridge Rd., Woodcliff Lake, New Jersey 07677-7668. Barr Laboratories, Inc., is a wholly-owned subsidiary of Barr Pharmaceuticals, Inc. Barr develops, manufactures, and markets generic and proprietary prescription pharmaceutical products.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint, except admits that Barr develops, manufactures, and markets generic and proprietary prescription pharmaceutical products.

**PLAINTIFFS' ALLEGATION**

21.    The Plaintiff States bring this action in their sovereign and/or quasi-sovereign capacities by their Attorneys General as the Plaintiff States' chief civil law enforcement officials seeking relief 1) pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, as parens patriae, and 2) pursuant to state law as a civil law enforcement action.

**ANSWER**

Paragraph 21 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 21 of the Complaint.

**PLAINTIFFS' ALLEGATION**

22.    A drug manufacturer must obtain approval from the U.S. Food and Drug Administration ("FDA") before the manufacturer may lawfully introduce a new drug in the United States.

**ANSWER**

Paragraph 22 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott admits that the FDA has procedures concerning pharmaceuticals sold in the United States.

13

**PLAINTIFFS' ALLEGATION**

23.    To have one of its new drugs considered for approval, a manufacturer must file a New Drug Application ("NDA") with the FDA.  The NDA must contain information demonstrating that the drug is safe and effective for its intended use.

**ANSWER**

Paragraph 23 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott admits that the FDA has procedures concerning pharmaceuticals sold in the United States.

**PLAINTIFFS' ALLEGATION**

24.    A drug that is approved through the NDA process may be listed by the FDA as a "Reference Listed Drug" in the FDA's publication entitled "Approved Drug Products with Therapeutic Equivalence Evaluations," which is commonly referred to as the "Orange Book."

**ANSWER**

Paragraph 24 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott admits that a pharmaceutical may be listed in the "Orange Book."

**PLAINTIFFS' ALLEGATION**

25.    Generic drugs are similar to, but not necessarily identical to, Reference Listed Drugs.  A generic drug contains the same active pharmaceutical ingredient(s) (or contains the same therapeutic moiety, but may be a different salt, ester, or complex of that moiety) as the corresponding Reference Listed Drug, but may contain other ingredients (such as colors and flavors) that are different.  A generic drug is comparable to a Reference Listed Drug in dosage form, strength, route of administration, quality, performance characteristics and intended use.  A generic drug must be bioequivalent to the corresponding Reference Listed Drug.

14

**ANSWER**

Paragraph 25 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 25 of the Complaint.

**PLAINTIFFS' ALLEGATION**

26. The Drug Price Competition and Patent Term Restoration Act of 1984, 21 U.S.C. § 355, (the "Hatch-Waxman Act") established a procedure that has often allowed generic drugs to enter the market earlier than had been possible in the past. The Hatch-Waxman Act allows a company to seek FDA approval to market a generic version of a Reference Listed Drug by filing an Abbreviated New Drug Application ("ANDA"). An ANDA is generally not required to include preclinical (animal) and clinical (human) data to establish safety and effectiveness.

**ANSWER**

Paragraph 26 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Complaint, except admits that the Drug Price Competition and Patent Term Restoration Act of 1984 ("Hatch-Waxman Act"), 21 U.S.C. § 355, has provisions concerning generic pharmaceuticals.

**PLAINTIFFS' ALLEGATION**

27. Because the FDA has already determined that a Reference Listed Drug is safe and effective for use, an ANDA filer may rely on the safety and efficacy data previously provided for a specific Reference Listed Drug, so long as the ANDA filer sufficiently demonstrates to the FDA that its generic drug is bioequivalent to the Reference Listed Drug.

**ANSWER**

Paragraph 27 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the Complaint, except admits that the FDA has procedures concerning generic pharmaceuticals.

**PLAINTIFFS' ALLEGATION**

28.    Generic versions of Reference Listed Drugs are usually sold at prices substantially below the prices charged for the Reference Listed Drugs. Persons in the Plaintiff States save significant amounts of money by purchasing generic drugs.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 28 of the Complaint.

**PLAINTIFFS' ALLEGATION**

29.    Ovcon has been available to the general public as a prescription pharmaceutical product since approximately 1976.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 of the Complaint, except admits that Ovcon 35 was approved by the FDA in approximately 1976.

**PLAINTIFFS' ALLEGATION**

30.    Prior to January 26, 2000, Bristol-Myers Squibb Company ("BMS") manufactured, distributed, and marketed Ovcon in the United States.

16

**ANSWER**

       Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 30 of the Complaint, except denies that BMS

was the only company marketing Ovcon in the United States prior to January 26, 2000.


**PLAINTIFFS' ALLEGATION**

     31.    On January 26, 2000, Warner Chilcott purchased from BMS certain rights, title, and interest in Ovcon products.

**ANSWER**

       Warner Chilcott admits the allegations contained in Paragraph 32 of the

Complaint.


**PLAINTIFFS' ALLEGATION**

     32.    On January 26, 2000, Warner Chilcott entered into a supply agreement with Bristol Myers-Squibb Laboratories Company ("BMSLC"), a wholly owned subsidiary of BMS. The supply agreement states the terms and conditions associated with the supply of Ovcon product by BMSLC to Warner Chilcott.

**ANSWER**

       Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 32 of the Complaint, except admits that on

January 26, 2000 Warner Chilcott entered into a supply agreement with BMSLC, and further

admits that the supply agreement states the terms and conditions associated with the supply of

Ovcon product from BMSLC to Warner Chilcott.  Warner Chilcott respectfully refers the Court

to the supply agreement for the terms thereof.

**PLAINTIFFS' ALLEGATION**

33.    Warner Chilcott then began marketing Ovcon manufactured by BMSLC, and continues to be the exclusive marketer of Ovcon at the present time.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint, except admits that Warner Chilcott marketed Ovcon after entering into the agreement with BMSLC.

**PLAINTIFFS' ALLEGATION**

34.    Warner Chilcott's sales of Ovcon have continued to increase, and Warner Chilcott has continued to increase the price charged for Ovcon.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 34 of the Complaint, except admits that Warner Chilcott's sales of Ovcon have increased since it purchased the product, and further admits that the price of Ovcon has risen.

**PLAINTIFFS' ALLEGATION**

35.    In September 2001, Barr filed ANDAs with the FDA for approval to market generic versions of Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 35 of the Complaint.

18

**PLAINTIFFS' ALLEGATION**

36.    In January 2003, Barr publicly communicated its intent to launch a generic version of Ovcon by the end of 2003.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 36 of the Complaint.

**PLAINTIFFS' ALLEGATION**

37.    Barr intended to offer its generic version of Ovcon for sale at a price approximately 30% less than the price charged by Warner Chilcott.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 37 of the Complaint.

**PLAINTIFFS' ALLEGATION**

38.    At all times since executing its agreement to purchase rights to Ovcon from BMS, Warner Chilcott has remained the only marketer of Ovcon; no generic version of Ovcon has ever been released to the public.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 38 of the Complaint.

**PLAINTIFFS' ALLEGATION**

39.    Warner Chilcott was aware that its revenues could be substantially decreased if a generic version of Ovcon became available to consumers.

19

**ANSWER**

    Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 39 of the Complaint.


**PLAINTIFFS' ALLEGATION**

  40.  Warner Chilcott's first attempt to eliminate the threat posed by the entry of a
generic version of Ovcon was the development of a line extension to Ovcon.

**ANSWER**

    Warner Chilcott denies the allegations contained in Paragraph 40 of the

Complaint, except admits that Warner Chilcott has developed a new, innovative, patented

product, Ovcon Chewable.


**PLAINTIFFS' ALLEGATION**

  41.  Warner Chilcott's strategy was to introduce its line extension (a chewable version
of Ovcon) prior to the entry of a generic version of non-chewable Ovcon.

**ANSWER**

    Warner Chilcott denies each and every allegation contained in Paragraph 41 of the

Complaint.


**PLAINTIFFS' ALLEGATION**

  42.  Warner Chilcott planned to engage in various practices that would ultimately
result in the replacement of prescriptions for (and supply of) non-chewable Ovcon with chewable
Ovcon.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 42 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

43.    In 2003, Warner Chilcott became aware that its position as the exclusive marketer of Ovcon was facing an imminent threat from the generic version of Ovcon being developed by Barr.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 43 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

44.    By mid-2003, Warner Chilcott learned that it would likely be unable to begin marketing a chewable version of Ovcon prior to Barr's launch of a generic version of Ovcon.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 44 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

45.    Warner Chilcott's inability to begin marketing its line extension prior to the availability of Barr's generic version of Ovcon would substantially reduce Warner Chilcott's revenues.

**ANSWER**

        Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 45 of the Complaint.


**PLAINTIFFS' ALLEGATION**

       46.    In August 2003, Warner Chilcott responded to Barr's impending launch of a
generic version of Ovcon by engaging in discussions with Barr regarding an anticompetitive
agreement not to compete.

**ANSWER**

        Warner Chilcott denies each and every allegation contained in Paragraph 46 of the

Complaint.


**PLAINTIFFS' ALLEGATION**

       47.    On September 10, 2003, Warner Chilcott and Barr signed a letter of intent to enter
into an agreement that gave Warner Chilcott the exclusive option to market all products
produced pursuant to Barr's ANDAs for generic versions of Ovcon.

**ANSWER**

        Warner Chilcott denies the allegations contained in Paragraph 47 of the

Complaint, except admits that on September 10, 2003 Warner Chilcott and Barr signed a letter of

intent.  Warner Chilcott respectfully refers the Court to the letter of intent for the terms thereof.


**PLAINTIFFS' ALLEGATION**

       48.    On March 24, 2004, the Defendants signed the Agreement, as contemplated by
their letter of intent.

**ANSWER**

        Warner Chilcott denies the allegations contained in Paragraph 48 of the

Complaint, except admits that Warner Chilcott and Barr entered into an option agreement on

March 24, 2004.  Warner Chilcott respectfully refers the Court to the option agreement for the

terms thereof.

**PLAINTIFFS' ALLEGATION**

      49.     Through the Agreement, Barr agreed to stay off the market and give Warner
Chilcott the exclusive right to market, distribute, and sell Barr's generic version of Ovcon.

**ANSWER**

        Warner Chilcott denies each and every allegation contained in Paragraph 49 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

      50.     Warner Chilcott paid Barr $1,000,000 in exchange for the option contained in the
Agreement.

**ANSWER**

        Warner Chilcott denies the allegations contained in Paragraph 50 of the

Complaint, except admits that Warner Chilcott paid Barr $1,000,000 in consideration for the

option.  Warner Chilcott respectfully refers the Court to the option agreement for the terms

thereof.

**PLAINTIFFS' ALLEGATION**

51.    On April 22, 2004, the FDA granted final approval of Barr's ANDAs for the generic versions of Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 51 of the Complaint.


**PLAINTIFFS' ALLEGATION**

52.    On April 23, 2004, Barr publicly communicated its intent to begin marketing its generic version of Ovcon in the event that Warner Chilcott chose not to exercise its option under the Agreement.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 52 of the

Complaint, except admits that Barr publicly contemplated marketing a generic Ovcon if Warner

Chilcott did not exercise its option, subject to certain risks and uncertainties associated with

making generic Ovcon commercially available.


**PLAINTIFFS' ALLEGATION**

53.    On May 6, 2004, Warner Chilcott exercised its option under the Agreement. Pursuant to the terms of the Agreement, Warner Chilcott paid Barr $19,000,000 in exchange for Barr's promise not to compete with Warner Chilcott by introducing a generic version of Ovcon and for giving Warner Chilcott the exclusive right to market, distribute, and sell Barr's generic version of Ovcon.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 53 of the

Complaint, except admits that on or about May 6, 2004 Warner Chilcott exercised the option,

and further admits that Warner Chilcott paid Barr $19,000,000 upon the exercise of the option.

Warner Chilcott respectfully refers the Court to the option agreement for the terms thereof.

**PLAINTIFFS' ALLEGATION**

54.    Warner Chilcott and Barr also entered into a Finished Product Supply Agreement ("Supply Agreement") on March 24, 2004.  The Supply Agreement became effective when Warner Chilcott exercised its option under the Agreement.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 54 of the

Complaint, except admits that Warner Chilcott and Barr entered into a supply agreement on

March 24, 2004.  Warner Chilcott respectfully refers the Court to the supply agreement for the

terms thereof

**PLAINTIFFS' ALLEGATION**

55.    The Supply Agreement allowed Warner Chilcott to purchase generic Ovcon from Barr at a premium price of 200% of Barr's actual fully loaded manufacturing cost.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 55 of the

Complaint.  Warner Chilcott respectfully refers the Court to the supply agreement for the terms

thereof.

**PLAINTIFFS' ALLEGATION**

56.    As a consequence of the anticompetitive Agreement, no generic version of Ovcon was ever launched, and Barr has agreed not to launch a generic version of Ovcon until at least May 2009.

25

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 56 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

57.    In the absence of the anticompetitive Agreement, Barr would have begun marketing its product shortly after obtaining FDA approval.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 57 of the Complaint, except denies that Barr

had the capability to market a generic Ovcon shortly after obtaining FDA approval.

**PLAINTIFFS' ALLEGATION**

58.    In the absence of the competitive threat that Barr would have provided in a free marketplace, Ovcon consumers were required to continue purchasing the brand-name Ovcon product when a less expensive generic version would have otherwise been available.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 58 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

59.    If Barr had introduced its generic product into the market, the average price paid for Ovcon products would have decreased rapidly and substantially.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 59 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

60.    No company, other than Barr, has received FDA approval for a generic version of Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 60 of the Complaint.

**PLAINTIFFS' ALLEGATION**

61.    The Agreement between Warner Chilcott and Barr destroyed the competition that is intrinsic to our market-based economy.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 61 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

62.    During the relevant period, Ovcon was sold throughout the United States.  Ovcon was transported across state lines and sold in each of the Plaintiff States.  The Defendants' unlawful activities alleged in this Complaint have occurred in and have had a substantial effect upon interstate commerce.

**ANSWER**

Paragraph 62 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott admits that Ovcon is sold in the United States, but denies that Warner Chilcott has engaged in any unlawful activity.

**PLAINTIFFS' ALLEGATION**

63.    Warner Chilcott and Barr's Agreement not to compete was a naked restraint of trade with the purpose of stifling competition, and is anticompetitive.

**ANSWER**

Paragraph 63 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 63 of the Complaint.

**PLAINTIFFS' ALLEGATION**

64.    The Agreement is anticompetitive pursuant to every relevant legal analysis.

**ANSWER**

Paragraph 64 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 64 of the Complaint.

**PLAINTIFFS' ALLEGATION**

65.    Warner Chilcott and Barr's conduct had the purpose and effect of unreasonably and illegally restraining trade and preventing competition.

**ANSWER**

Paragraph 65 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 65 of the Complaint.

**PLAINTIFFS' ALLEGATION**

66.    Warner Chilcott and Barr's Agreement to eliminate competition is not reasonably necessary to accomplish any procompetitive objective. The Agreement was not subsidiary to any procompetitive objective. Eliminating competition from Barr was the primary purpose of Warner Chilcott's unlawful Agreement with Barr.

**ANSWER**

Paragraph 66 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 66 of the Complaint.

**PLAINTIFFS' ALLEGATION**

67.    The Defendants could have accomplished any of the purported competitive benefits of the Agreement by other less-restrictive means that would not have destroyed competition.

**ANSWER**

Paragraph 67 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 67 of the Complaint.

29

**PLAINTIFFS' ALLEGATION**

68.    As a direct and proximate result of the illegal conduct alleged in this complaint, persons in the Plaintiff States have not been and are not able to purchase generic versions of Ovcon, which would have been available at prices lower than those paid for Ovcon.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 68 of the Complaint.

**PLAINTIFFS' ALLEGATION**

69.    Warner Chilcott and Barr deprived persons in the Plaintiff States of the benefits of competition that the federal and state antitrust laws, consumer protection laws and/or unfair competition statutes and related state laws are designed to promote, preserve, and protect.

**ANSWER**

Paragraph 69 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 69 of the Complaint.

**PLAINTIFFS' ALLEGATION**

70.    As a direct and proximate result of the unlawful conduct alleged above, Warner Chilcott has unjustly profited from the Agreement with Barr.

**ANSWER**

Paragraph 70 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 70 of the Complaint.

30

**PLAINTIFFS' ALLEGATION**

71.    As a direct and proximate result of the unlawful conduct alleged above, Barr has unjustly profited from the Agreement with Warner Chilcott.

**ANSWER**

Paragraph 71 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 71 of the Complaint.

**PLAINTIFFS' ALLEGATION**

72.    As a direct and proximate result of the unlawful conduct alleged above, injury has been sustained by the general economies of the Plaintiff States.

**ANSWER**

Paragraph 72 of the Complaint is not susceptible to being answered because of its ambiguity in not defining "general economies" and contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 72 of the Complaint.

**PLAINTIFFS' ALLEGATION**

73.    The Agreement between Warner Chilcott and Barr constitutes a restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

**ANSWER**

Paragraph 73 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 73 of the Complaint.

31

**PLAINTIFFS' ALLEGATION**

74.     Plaintiff State of Alaska repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

75.     Defendants' acts violate, and Plaintiff State of Alaska is entitled to relief under, AS 45.50.471 and AS 45.50.562- .596.

**ANSWER**

Paragraph 75 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 75 of the Complaint, and further denies that Plaintiff State of Alaska is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

76.     Plaintiff State of Arizona repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

32

**PLAINTIFFS' ALLEGATION**

77.    Defendants' acts violate, and Plaintiff State of Arizona is entitled to relief under, Arizona Uniform State Antitrust Act, Arizona Revised Statutes section 44-1401 et seq.

**ANSWER**

Paragraph 77 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 77 of the Complaint, and further denies that Plaintiff State of Arizona is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

78.    Plaintiff State of Arkansas repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

79.    Defendants' acts violate, and Plaintiff State of Arkansas is entitled to relief under, the Arkansas Deceptive Trade Practices Act, A.C.A. § 4-88-101, et seq. and the Arkansas Unfair Practices Act, A.C.A. § 4-75-301 et seq.

**ANSWER**

Paragraph 79 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation

contained in Paragraph 79 of the Complaint, and further denies that Plaintiff State of Arkansas is

entitled to any relief.

## PLAINTIFFS' ALLEGATION

80.    Plaintiff State of California repeats and realleges each and every allegation contained in paragraphs 1 through 73.

## ANSWER

Warner Chilcott incorporates and realleges by this reference each and all of the

matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth

herein.

## PLAINTIFFS' ALLEGATION

81.    Defendants' acts violate, and Plaintiff State of California is entitled to relief under, the Cartwright Act, Business & Professions Code § 16700, et seq., and the California Unfair Competition Act, Bus. & Prof. Code § 17200, et seq.

## ANSWER

Paragraph 81 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies each and every allegation

contained in Paragraph 81 of the Complaint, and further denies that Plaintiff State of California

is entitled to any relief.

## PLAINTIFFS' ALLEGATION

82.    Plaintiff State of Colorado repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

83.    Defendants' acts violate, and Plaintiff State of Colorado is entitled to relief under, the Colorado Antitrust Act of 1992, § 6-4-101, et seq., Colo. Rev. Stat.

**ANSWER**

Paragraph 83 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 83 of the Complaint, and further denies that Plaintiff State of Colorado is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

84.    Plaintiff State of Delaware repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

35

**PLAINTIFFS' ALLEGATION**

85.    Defendants' acts violate, and Plaintiff State of Delaware is entitled to relief under, the Delaware Antitrust Act, 6 Del.C. § 2101, et seq.

**ANSWER**

Paragraph 85 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 85 of the Complaint, and further denies that Plaintiff State of Delaware is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

86.    Plaintiff District of Columbia repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

87.    Defendants' acts violate, and Plaintiff District of Columbia is entitled to relief under, D.C. Official Code § 28-4502, et seq. (2001).

**ANSWER**

Paragraph 87 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation

36

contained in Paragraph 87 of the Complaint, and further denies that Plaintiff District of

Columbia is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

88.    Plaintiff State of Florida repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the

matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth

herein.

**PLAINTIFFS' ALLEGATION**

89.    Defendants' acts violate, and Plaintiff State of Florida is entitled to relief under, the Florida Antitrust Act of 1980, § 542.15 Florida Statutes, et seq., and the Florida Deceptive and Unfair Trade Practices Act, § 501.201 Florida Statutes, et seq.

**ANSWER**

Paragraph 89 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies each and every allegation

contained in Paragraph 89 of the Complaint, and further denies that Plaintiff State of Florida is

entitled to any relief.

**PLAINTIFFS' ALLEGATION**

90.    Plaintiff State of Idaho repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

      Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

    91.    Defendants' acts violate, and Plaintiff State of Idaho is entitled to relief under, the Idaho Competition Act, Idaho Code § 48-101 et seq.

**ANSWER**

      Paragraph 91 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 91 of the Complaint, and further denies that Plaintiff State of Idaho is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

    92.    Plaintiff State of Illinois repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

      Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

38

**PLAINTIFFS' ALLEGATION**

93.    Defendants' acts violate, and Plaintiff State of Illinois is entitled to relief under, the Illinois Antitrust Act, 740 ILCS 10/1, et seq.

**ANSWER**

Paragraph 93 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 93 of the Complaint, and further denies that Plaintiff State of Illinois is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

94.    Plaintiff State of Iowa repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

95.    Defendants' acts violate, and Plaintiff State of Iowa is entitled to relief under, the laws of the State of Iowa, alleging violations of the Iowa Competition Act, Iowa Code sections 553 et seq., and the Iowa Consumer Fraud Act, Iowa Code section 714.16.

**ANSWER**

Paragraph 95 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation

contained in Paragraph 95 of the Complaint, and further denies that Plaintiff State of Iowa is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

96.     Plaintiff State of Kansas repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

97.     Defendants' acts violate, and Plaintiff State of Kansas is entitled to relief under, Kan. Stat. Ann. §50-101, et seq.

**ANSWER**

Paragraph 97 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 97 of the Complaint, and further denies that Plaintiff State of Kansas is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

98.     Plaintiff Commonwealth of Kentucky repeats and realleges each and every allegation contained in paragraphs 1 through 73.

40

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

99.    Defendant's acts violate, and Plaintiff Commonwealth of Kentucky is entitled to relief under, the Kentucky Antitrust Law, KRS 367.175.

**ANSWER**

Paragraph 99 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 99 of the Complaint, and further denies that Plaintiff Commonwealth of Kentucky is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

100.    Plaintiff State of Louisiana repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

41

**PLAINTIFFS' ALLEGATION**

101.    Defendants' acts violate, and Plaintiff State of Louisiana is entitled to relief under, the Louisiana Antitrust Act, La. R.S. 51: 122, et seq., and La. R.S. 51:1401, et seq.

**ANSWER**

Paragraph 101 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 101 of the Complaint, and further denies that Plaintiff State of Louisiana is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

102.    Plaintiff State of Maine repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

103.    Defendants' acts violate, and Plaintiff State of Maine is entitled to relief under, Maine's Monopolies and Profiteering law, Title 10, Maine Revised Statutes, §§ 1101 and 1104.

**ANSWER**

Paragraph 103 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every

42

allegation contained in Paragraph 103 of the Complaint, and further denies that Plaintiff State of Maine is entitled to any relief.

## PLAINTIFFS' ALLEGATION

104.    Plaintiff State of Maryland repeats and realleges each and every allegation contained in paragraphs 1 through 73.

## ANSWER

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

## PLAINTIFFS' ALLEGATION

105.    Defendants' acts violate, and Plaintiff State of Maryland is entitled to relief under, the Maryland Antitrust Act, Md. Com. Law Code Ann. § 11-201, et seq.

## ANSWER

Paragraph 105 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 105 of the Complaint, and further denies that Plaintiff State of Maryland is entitled to any relief.

## PLAINTIFFS' ALLEGATION

106.    Plaintiff Commonwealth of Massachusetts repeats and realleges each and every allegation contained in paragraphs 1 through 73.

43

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the

matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth

herein.

**PLAINTIFFS' ALLEGATION**

107.    Defendants' acts violate, and Plaintiff Commonwealth of Massachusetts is entitled to relief under, the Consumer Protection and Antitrust Acts, G.L. c.93A § 2, et seq., and G.L. c.93 § 4, et seq., respectively.

**ANSWER**

Paragraph 107 of the Complaint contains legal conclusions to which no response

is required.  To the extent a response is required, Warner Chilcott denies each and every

allegation contained in Paragraph 107 of the Complaint, and further denies that Plaintiff

Commonwealth of Massachusetts is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

108.    Plaintiff State of Michigan repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the

matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth

herein.

**PLAINTIFFS' ALLEGATION**

109.    Defendants' acts violate, and Plaintiff State of Michigan is entitled to relief under, the Michigan Antitrust Reform Act, Mich. Comp. Laws Ann. § 445.771, et seq., the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, et seq., and the common law of Michigan.

**ANSWER**

Paragraph 109 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 109 of the Complaint, and further denies that Plaintiff State of Michigan is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

110.    Plaintiff State of Minnesota repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

111.    Defendants' acts violate, and Plaintiff State of Minnesota is entitled to relief under, the Minnesota Antitrust Law of 1971, Minn. Stat. §§ 325D.49-.66 (2004), and Minn. Stat. § 8.31 (2004).

**ANSWER**

Paragraph 111 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every

45

allegation contained in Paragraph 111 of the Complaint, and further denies that Plaintiff State of

Minnesota is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

112.    Plaintiff State of Mississippi repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the

matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth

herein.

**PLAINTIFFS' ALLEGATION**

113.    Defendants' acts violate, and Plaintiff State of Mississippi is entitled to relief under, its Consumer Protection Act found at Miss. Code Ann. § 75-24-1, et seq. (1972, as amended) and its Antitrust Act found at Miss. Code Ann. § 75-21-1, et seq. (1972, as amended).

**ANSWER**

Paragraph 113 of the Complaint contains legal conclusions to which no response

is required.  To the extent a response is required, Warner Chilcott denies each and every

allegation contained in Paragraph 113 of the Complaint, and further denies that Plaintiff State of

Mississippi is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

114.    Plaintiff State of Missouri repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

115.    Defendants' acts violate, and Plaintiff State of Missouri is entitled to relief under, the Missouri Merchandising Practices Act, Revised Statutes of Missouri § 407.010 et seq., and the Missouri Antitrust Act, Revised Statutes of Missouri § 416.011 et seq.

**ANSWER**

Paragraph 115 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 115 of the Complaint, and further denies that Plaintiff State of Missouri is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

116.    Plaintiff State of Nevada repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

117.    Defendants' acts violate, and Plaintiff State of Nevada is entitled to relief under the Nevada Unfair Trade Practice Act, Nev. Rev. Stat. § 598A.010 et seq.

**ANSWER**

Paragraph 117 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 117 of the Complaint, and further denies that Plaintiff State of Nevada is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

118.    Plaintiff State of New York repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

119.    Defendants' acts violate, and Plaintiff State of New York is entitled to relief under, N.Y. Gen. Bus. Law §§ 340, 342, and 342-a.

**ANSWER**

Paragraph 119 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every

48

allegation contained in Paragraph 119 of the Complaint, and further denies that Plaintiff State of

New York is entitled to any relief.

## PLAINTIFFS' ALLEGATION

120.    Plaintiff State of North Carolina repeats and realleges each and every allegation
contained in paragraphs 1 through 73.

## ANSWER

Warner Chilcott incorporates and realleges by this reference each and all of the

matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth

herein.

## PLAINTIFFS' ALLEGATION

121.    Defendants' acts violate, and Plaintiff State of North Carolina is entitled to relief
under, N.C. Gen. Stat. §§ 75-1, 75-1.1, 75-2, 75-2.1.

## ANSWER

Paragraph 121 of the Complaint contains legal conclusions to which no response

is required.  To the extent a response is required, Warner Chilcott denies each and every

allegation contained in Paragraph 121 of the Complaint, and further denies that Plaintiff State of

North Carolina is entitled to any relief.

## PLAINTIFFS' ALLEGATION

122.    Plaintiff State of North Dakota repeats and realleges each and every allegation
contained in paragraphs 1 through 73.

49

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

123.    Defendants' acts violate, and Plaintiff State of North Dakota is entitled to relief under, the Uniform State Antitrust Act, N.D. Cent. Code § 51-08.1-01, et seq.

**ANSWER**

Paragraph 123 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 123 of the Complaint, and further denies that Plaintiff State of North Dakota is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

124.    Plaintiff State of Ohio repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

125.    Defendants' acts violate, and Plaintiff State of Ohio is entitled to relief under, Ohio's Antitrust Law, Ohio Revised Code, § 109.81 and 1331.01, et seq.

**ANSWER**

Paragraph 125 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 125 of the Complaint, and further denies that Plaintiff State of Ohio is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

126.    Plaintiff State of Oklahoma repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

127.    Defendants' acts violate, and Plaintiff State of Oklahoma is entitled to relief under, The Oklahoma Antitrust Reform Act, 79 O.S. 2001 §201, et seq., and the Oklahoma Consumer Protection Act, 15 O.S.2001, § 751 et seq.

**ANSWER**

Paragraph 127 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every

51

allegation contained in Paragraph 127 of the Complaint, and further denies that Plaintiff State of

Oklahoma is entitled to any relief.


**PLAINTIFFS' ALLEGATION**

128.    Plaintiff State of Oregon repeats and realleges each and every allegation
contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the

matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth

herein.


**PLAINTIFFS' ALLEGATION**

129.    Defendants' acts violate, and Plaintiff State of Oregon is entitled to relief under,
the Oregon Antitrust Act, ORS 646.705, et seq.

**ANSWER**

Paragraph 129 of the Complaint contains legal conclusions to which no response

is required.  To the extent a response is required, Warner Chilcott denies each and every

allegation contained in Paragraph 129 of the Complaint, and further denies that Plaintiff State of

Oregon is entitled to any relief.


**PLAINTIFFS' ALLEGATION**

130.    Plaintiff State of Rhode Island repeats and realleges each and every allegation
contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

131.    Defendants' acts violate, and Plaintiff State of Rhode Island is entitled to relief under, Rhode Island General Laws Chapter 6-36, entitled the "Rhode Island Antitrust Act."

**ANSWER**

Paragraph 131 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 131 of the Complaint, and further denies that Plaintiff State of Rhode Island is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

132.    Plaintiff State of South Carolina repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

53

**PLAINTIFFS' ALLEGATION**

133.    Defendants' acts violate, and Plaintiff State of South Carolina is entitled to relief under, the South Carolina Unfair Trade Practices Act, §§ 39-5-10, et seq.

**ANSWER**

Paragraph 133 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 133 of the Complaint, and further denies that Plaintiff State of South Carolina is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

134.    Plaintiff State of Tennessee repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

135.    Defendants' acts violate, and Plaintiff State of Tennessee is entitled to relief under, the Tennessee Antitrust Act, Tenn. Code Ann. §§ 47-25-101, et seq.

**ANSWER**

Paragraph 135 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every

allegation contained in Paragraph 135 of the Complaint, and further denies that Plaintiff State of

Tennessee is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

136.    Plaintiff State of Texas repeats and realleges each and every allegation contained
in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the

matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth

herein.

**PLAINTIFFS' ALLEGATION**

137.    Defendants' acts violate, and Plaintiff State of Texas is entitled to relief under, the
Texas Free Enterprise and Antitrust Act of 1983, Tex. Bus. & Com. Code § 15.01, et seq.

**ANSWER**

Paragraph 137 of the Complaint contains legal conclusions to which no response

is required.  To the extent a response is required, Warner Chilcott denies each and every

allegation contained in Paragraph 137 of the Complaint, and further denies that Plaintiff State of

Texas is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

138.    Plaintiff State of Utah repeats and realleges each and every allegation contained in
paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

139.    Defendants' acts violate, and Plaintiff State of Utah is entitled to relief under, the Utah Antitrust Act, Sections 76-10-911 through 76-10-926, Utah Code Annotated, as amended.

**ANSWER**

Paragraph 139 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 139 of the Complaint, and further denies that Plaintiff State of Utah is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

140.    Plaintiff State of Vermont repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

56

**PLAINTIFFS' ALLEGATION**

141. Defendants' acts violate, and Plaintiff State of Vermont is entitled to relief under, the Vermont Consumer Fraud Act, 9 V.S.A. Section 2451, et seq.

**ANSWER**

Paragraph 141 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 141 of the Complaint, and further denies that Plaintiff State of Vermont is entitled to any relief.

**PLAINTIFFS' ALLEGATION**

142. Plaintiff Commonwealth of Virginia repeats and realleges each and every allegation contained in paragraphs 1 through 73.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

143. Defendants' acts violate, and Plaintiff Commonwealth of Virginia is entitled to relief under, the Virginia Antitrust Act, Va. Code Ann. Section 59.1-9.5

**ANSWER**

Paragraph 143 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every

allegation contained in Paragraph 143 of the Complaint, and further denies that Plaintiff

Commonwealth of Virginia is entitled to any relief.

## REQUEST FOR RELIEF

### PLAINTIFFS' ALLEGATION

Accordingly, the Plaintiff States request that this Court:

1. Adjudge and decree that Defendants engaged in conduct in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

2. Adjudge and decree that Defendants engaged in conduct in violation of each of the state statutes and common law enumerated in this Complaint;

3. Enjoin and restrain, pursuant to federal and state law, Defendants, their affiliates, assignees, subsidiaries, successors and transferees, and their officers, directors, partners, agents and employees, and all other persons acting or claiming to act on their behalf or in concert with them, from continuing to engage in any anticompetitive conduct (including the anticompetitive terms of the Agreement) and from adopting in the future any practice, plan, program or device having a similar purpose or effect to the anticompetitive actions set forth above;

4. Award to Plaintiff States any other equitable relief as the Court finds appropriate to redress Defendants' violations of state law;

5. Award to each Plaintiff State the maximum civil penalties allowed by law;

6. Award to each Plaintiff State its costs, including reasonable attorneys' fees; and

7. Order any other relief that this Court deems proper.

### ANSWER

Wherefore, Warner Chilcott denies that Plaintiffs are entitled to any relief

whatsoever and respectfully requests judgment for Warner Chilcott along with costs and

58

attorneys' fees, as may be allowed by law, and such further relief as the Court deems appropriate. Furthermore, Warner Chilcott denies each and every allegation contained in the Complaint not specifically admitted herein.

## AFFIRMATIVE DEFENSES

Warner Chilcott states the following affirmative defenses without assuming the burden of proof of such defenses that would otherwise rest on Plaintiffs.

### First Affirmative Defense
### (Failure to State a Claim Under Any State's Law)

The Complaint fails to state a claim under the law of any of the Plaintiff States against Warner Chilcott on which relief can be granted.

### Second Affirmative Defense
### (Failure to State a Claim under Federal Law)

The Complaint fails to state a claim under any federal law or law enforced by the Federal Trade Commission against Warner Chilcott on which relief can be granted. Further, the license and supply agreements are subject to, and comply with, the statutes administered by the Federal Trade Commission.

### Third Affirmative Defense
### (Laches)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

59

## Fourth Affirmative Defense
### (Estoppel)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel.


## Fifth Affirmative Defense
### (Waiver)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver.


## Sixth Affirmative Defense
### (Justification)

Plaintiffs' claims are barred, in whole or in part, because any conduct engaged in by Warner Chilcott has been reasonable, based upon independent, legitimate business and economic justifications, without the purpose or effect of injuring competition.


## Seventh Affirmative Defense
### (Preservation of Business)

Plaintiffs' claims are barred, in whole or in part, because any conduct engaged in by Warner Chilcott was reasonable in relation to the development and preservation of its business.


## Eighth Affirmative Defense
### (No Injury to Competition)

Plaintiffs' claims are barred, in whole or in part, because none of Warner Chilcott's actions have injured competition in any relevant market.

**Ninth Affirmative Defense**
**(Pro-Competitive Effects)**

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott's

actions have pro-competitive effects that benefit competition as a whole in any relevant market.

Warner Chilcott's actions increased competition and are in furtherance of trade.

**Tenth Affirmative Defense**
**(No Consumer Harm)**

Plaintiffs' claims are barred, in whole or in part, because none of Warner

Chilcott's actions have harmed consumers.

**Eleventh Affirmative Defense**
**(No Injury to Any State)**

Plaintiffs' claims are barred, in whole or in part, because none of Warner

Chilcott's actions have harmed any state in its business or property or the general economy of

any state.

**Twelfth Affirmative Defense**
**(No Adverse Effect on the Public Interest)**

Plaintiffs' claims are barred, in whole or in part, because none of Warner

Chilcott's actions have adversely affected, or caused injury to, the public interest.

61

**Thirteenth Affirmative Defense**
**(No Knowledge or Intent)**

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott had no knowledge, intention or belief that its actions might illegally restrain trade.  Further, Warner Chilcott could not have known that its actions might illegally restrain trade.

**Fourteenth Affirmative Defense**
**(No Willful or Flagrant Act)**

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott did not engage in any willful, flagrant or unconscionable act.

**Fifteenth Affirmative Defense**
**(Good Faith Reliance)**

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott relied in good faith on the actions of the Federal Trade Commission.

**Sixteenth Affirmative Defense**
**(No Notice)**

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott had no notice that its actions, if any, were illegal.

**Seventeenth Affirmative Defense**
**(No Concealment)**

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott did not conceal any of its actions.

**Eighteenth Affirmative Defense**
**(No Pattern or Practice of Illegal Activity)**

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott did not engage in any pattern or practice of illegal activity.

**Nineteenth Affirmative Defense**
**(Bona Fide Error)**

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott's actions were the result of a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error.

**Twentieth Affirmative Defense**
**(No Unfair or Deceptive Act)**

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott did not engage in any unfair or deceptive act or practice.

**Twenty-First Affirmative Defense**
**(No Direct Sales Within A State)**

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott does not sell directly into one or more of the Plaintiff States.

**Twenty-Second Affirmative Defense**
**(Intrastate Commerce)**

Plaintiffs' claims are barred, in whole or in part, to the extent that Warner Chilcott's actions did not affect intrastate commerce.

63

**Twenty-Third Affirmative Defense**
**(No Competitive Impact Within Any State)**

Plaintiffs' claims are barred, in whole or in part, to the extent that Warner Chilcott's actions did not have any alleged competitive impact primarily or predominately within any one state or within New England.

**Twenty-Fourth Affirmative Defense**
**(Failure to Identify Appropriate Markets)**

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not alleged either a relevant product market or a relevant geographic market.

**Twenty-Fifth Affirmative Defense**
**(No Market Power)**

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott has no market power and Plaintiffs have failed to allege any market power.

**Twenty-Sixth Affirmative Defense**
**(No Monopoly Power)**

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott has and had no monopoly power.

**Twenty-Seventh Affirmative Defense**
**(Commerce Clause)**

To the extent the causes of action asserted in the Complaint purport to impose liability or seek relief for conduct that is lawful under the laws of the United States, those claims

impose an undue burden on interstate commerce and are barred by the Commerce Clause of the United States Constitution.

## Twenty-Eighth Affirmative Defense
### (Statute of Limitations)

Plaintiffs' claims are barred, in whole or in part, under one or more applicable statutes of limitations.

## Twenty-Ninth Affirmative Defense
### (Improper Party)

Plaintiffs' claims are barred, in whole or in part, because one or more of the Plaintiff States is not a proper party to this action.

## Thirtieth Affirmative Defense
### (Item Purchased for Business or Commercial Purposes)

Plaintiffs' claims are barred, in whole or in part, to the extent relevant purchases were primarily for business or commercial purposes.

## Thirty-First Affirmative Defense
### (Non-Resident)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott is not a resident of one or more of the Plaintiff States.

### Thirty-Second Affirmative Defense
### (No Standing)

Plaintiffs' claims are barred, in whole or in part, because one or more of the Plaintiff States do not have standing to maintain this action.

### Thirty-Third Affirmative Defense
### (No Proper Remedy; Proscribed Remedy)

Plaintiffs' claims are barred, in whole or in part, for failure to seek a proper remedy or for seeking a remedy proscribed by statute or common law of one or more of the Plaintiff States.

### Thirty-Fourth Affirmative Defense
### (Reservation of Additional Defenses)

Warner Chilcott reserves the right to assert additional affirmative defenses as discovery proceeds.

## JURY DEMAND

Warner Chilcott hereby demands a trial by jury on all claims so triable.

## WARNER CHILCOTT'S PRAYER FOR RELIEF

Wherefore, Warner Chilcott prays as follows:

1.    That the Court enter judgment for Warner Chilcott;

2.    That the Court award Warner Chilcott reasonable costs and expenses

including, but not limited to, attorneys' fees and costs of suit, and such other and further relief as

may be appropriate.

October 20, 2006                    Respectfully submitted,


By:    /s/
       _____
       Peter C. Thomas, D.C. Bar #495928
       Charles E. Koob, *pro hac vice*
       SIMPSON THACHER & BARTLETT LLP
       601 Pennsylvania Avenue, N.W.
       North Building
       Washington, D.C. 20004
       (202) 220-7700

       *Counsel for Warner Chilcott Defendants*

67

# TAB 2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MEIJER, INC., 2929 Walker Avenue NW, Grand Rapids, Michigan 49544

MEIJER DISTRIBUTION, INC., 2929 Walker Avenue NW, Grand Rapids, Michigan 49544

LOUISIANA WHOLESALE DRUG CO., INC., 2085 I-49, South Service Road, Sunset, Louisiana 70584

ROCHESTER DRUG CO-OPERATIVE, INC., 50 Jet View Drive, Rochester, New York 14624

VALLEY WHOLESALE DRUG COMPANY, INC., 1401 West Fremont Street, Stockton, California 95203-2627

AMERICAN SALES COMPANY, INC., 4201 Walden Ave, Lancaster, New York 14086

SAJ DISTRIBUTORS, INC. 3017 N. Midland Pine Bluff, Arkansas 71603

STEPHEN L. LaFRANCE HOLDINGS, INC., 3017 N. Midland, Pine Bluff, Arkansas 71603

on behalf of themselves and all others similarly situated,

           Plaintiffs,

       v.

WARNER CHILCOTT HOLDINGS COMPANY III, LTD.

WARNER CHILCOTT CORPORATION

WARNER CHILCOTT (US) INC.

WARNER CHILCOTT COMPANY, INC.

GALEN (CHEMICALS), LTD.

BARR PHARMACEUTICALS, INC.

           Defendants.

**Civil Action No. 1:05-cv-02195-CKK**

**Judge Colleen Kollar-Kotelly**

**JURY TRIAL DEMANDED**

## DEFENDANT WARNER CHILCOTT'S
## ANSWER TO CLASS ACTION COMPLAINT

Defendants Warner Chilcott Holdings Company III, Ltd., Warner Chilcott

Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company, Inc., and Galen (Chemicals),

Ltd. (collectively, "Warner Chilcott") answer the allegations of Meijer, Inc., Meijer Distribution,

Inc., Louisiana Wholesale Drug Company, Inc., Rochester Drug Co-operative, Inc., Valley

Wholesale Drug Company, Inc., American Sales Company, Inc., SAJ Distributors, Inc., and

Stephen L. LaFrance Holdings, Inc. (collectively, "Plaintiffs") in their Class Action Complaint

("Complaint") as follows:

## PLAINTIFFS' ALLEGATION

      1.    This case involves a horizontal agreement between Warner Chilcott and Barr not
to compete in the sale of Ovcon 35 ("Ovcon"), an oral contraceptive.

## ANSWER

      Warner Chilcott states that Paragraph 1 of the Complaint is a description of

Plaintiffs' claims to which no response is required. To the extent a response is required, Warner

Chilcott denies the allegations contained in Paragraph 1 of the Complaint, except admits that

Ovcon 35 ("Ovcon") is an oral contraceptive product.


## PLAINTIFFS' ALLEGATION

      2.    Warner Chilcott is a pharmaceutical company that develops, manufactures,
markets, and distributes proprietary women's healthcare and dermatological pharmaceutical
products. Pursuant to an agreement with Bristol-Myers Squibb Company, Warner Chilcott is the
exclusive marketer of Ovcon in the United States.

**ANSWER**

Warner Chilcott admits the allegations contained in the first sentence of

Paragraph 2 of the Complaint. Warner Chilcott denies each and every allegation contained in the

second sentence of Paragraph 2 of the Complaint.

**PLAINTIFFS' ALLEGATION**

3.      Barr is a pharmaceutical company that develops, manufactures, markets, and
distributes generic and proprietary pharmaceutical drugs. Barr developed a generic version of
Ovcon, which was approved for sale by the United States Food and Drug Administration on or
about April 22, 2004.

**ANSWER**

Warner Chilcott admits the allegations contained in the first sentence of

Paragraph 3 of the Complaint. Warner Chilcott denies knowledge or information sufficient to

form a belief as to the truth of each and every allegation contained in the second sentence of

Paragraph 3 of the Complaint.

**PLAINTIFFS' ALLEGATION**

4.      Barr planned to market its generic drug in competition with Warner Chilcott's
branded Ovcon. Both Warner Chilcott and Barr had predicted that the entry of Barr's lower-
priced generic into the market would reduce Warner Chilcott's Ovcon sales, with generic
versions of Ovcon capturing approximately 50% of Ovcon's sales in the first year alone.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in the first sentence of Paragraph 4 of the

Complaint. Warner Chilcott denies each and every allegation contained in the second sentence

of Paragraph 4 of the Complaint as it refers to Warner Chilcott and denies knowledge or

2

information sufficient to form a belief as to the truth of each and every allegation contained in

the second sentence of Paragraph 4 of the Complaint as it refers to Barr.

**PLAINTIFFS' ALLEGATION**

5.    As alleged more fully herein, Warner Chilcott entered into an agreement with
Barr, in which Barr agreed not to market its generic Ovcon for five years in exchange for Warner
Chilcott's payment of approximately $20 million (the "Agreement").

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 5 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

6.    Defendants' Agreement denied Plaintiffs and other purchasers of Ovcon the
benefits of competition and of less expensive, generic versions of Ovcon. As a result, Plaintiffs
and members of the class defined below have paid supracompetitive prices for Ovcon and its
generic equivalents.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 6 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

7.    This action is brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§
15 and 26, to recover treble damages and the costs of suit, including reasonable attorneys' fees,
for injuries sustained by Plaintiffs and members of the Class as a result of Defendants' violations
of Section 1 of the Sherman Act, 15 U.S.C. § 1, as alleged herein.

**ANSWER**

Warner Chilcott states that Paragraph 7 of the Complaint is a description of

Plaintiffs' claims to which no response is required.  To the extent a response is required, Warner

Chilcott denies each and every allegation contained in Paragraph 7 of the Complaint, and further denies that Plaintiffs are entitled to any relief whatsoever.

**PLAINTIFFS' ALLEGATION**

8.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 15 and 28 U.S.C. §§ 1331 and 1337(a).

**ANSWER**

Paragraph 8 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 8 of the Complaint.

**PLAINTIFFS' ALLEGATION**

9.      Venue is proper in this District under 15 U.S.C. §§ 15, 22, and 26 and under 28 U.S.C. § 1391, because (1) Warner Chilcott and Barr transact business and are found within this District; and (2) a substantial portion of the affected trade and commerce described below has been carried out in this District.

**ANSWER**

Paragraph 9 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the Complaint, except admits that Ovcon is sold in the District of Columbia.

**PLAINTIFFS' ALLEGATION**

10.     Plaintiff American Sales Company, Inc. ("American Sales") is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its principal place of business located at 4201 Walden Ave, Lancaster, New York 14086.

4

American Sales purchased Ovcon directly from one or more of the named Defendants during the Class Period, as defined below.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 10 of the Complaint, except admits that

Plaintiff American Sales Company, Inc. purchased Ovcon from Warner Chilcott.

**PLAINTIFFS' ALLEGATION**

11.    Plaintiff Louisiana Wholesale Drug Company, Inc. ("Louisiana Wholesale") is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Louisiana, with its principal place of business located at 2085 I-49, South Service Road, Sunset, Louisiana 70584. Louisiana Wholesale purchased Ovcon directly from one or more of the named Defendants during the Class Period, as defined below.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 11 of the Complaint, except admits that

Plaintiff Louisiana Wholesale Drug Company, Inc. purchased Ovcon from Warner Chilcott.

**PLAINTIFFS' ALLEGATION**

12.    Plaintiffs Meijer, Inc. and Meijer Distribution, Inc. (collectively, "Meijer") are corporations organized under the laws of Michigan, with their principal place of business at 2929 Walker Avenue NW, Grand Rapids, Michigan 49544. Meijer is the assignee of the claims of the Frank W. Kerr Co., which purchased Ovcon directly from one or more of the named Defendants during the Class Period, as defined below.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 12 of the Complaint.

**PLAINTIFFS' ALLEGATION**

13.     Plaintiff Rochester Drug Co-operative, Inc. ("Rochester Drug") is a
pharmaceutical wholesale company, with its principal place of business located at 50 Jet View
Drive, Rochester, New York 14624. Rochester Drug purchased Ovcon directly from one or more
of the named Defendants during the Class Period, as defined below.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 13 of the Complaint, except admits that

Plaintiff Rochester Drug Co-operative, Inc. purchased Ovcon from Warner Chilcott.

**PLAINTIFFS' ALLEGATION**

14.     Plaintiff Stephen L. LaFrance Holdings, Inc. ("LaFrance") is a holding company,
with its corporate office located at 3017 N. Midland, Pine Bluff, Arkansas 71603. Plaintiff SAJ
Distributors, Inc. ("SAJ") is a wholly-owned subsidiary of LaFrance, with its office also located
at 3017 N. Midland, Pine Bluff, Arkansas 71603. LaFrance and SAJ have interests in retail and
wholesale drug distribution, and they are the assignees of McKesson Corporation, which
purchased Ovcon directly from one or more of the named Defendants during the Class Period, as
defined below.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 14 of the Complaint.

**PLAINTIFFS' ALLEGATION**

15.     Plaintiff Valley Wholesale Drug Company, Inc. ("Valley Wholesale") is a
corporation organized, existing, and doing business under and by virtue of the laws of the State
of California, with its principal place of business located at 1401 West Fremont Street, Stockton,
California 95203-2627. Valley Wholesale purchased Ovcon directly from one or more of the
named Defendants during the Class Period, as defined below.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 15 of the Complaint, except admits that

Plaintiff Valley Wholesale Drug Company, Inc. purchased Ovcon from Warner Chilcott.

**PLAINTIFFS' ALLEGATION**

16.    Defendant Warner Chilcott Holdings Company III, Ltd. is a privately-owned, for-profit company organized, existing, and doing business under and by virtue of the laws of Bermuda, with its registered office located at Canon's Court, 22 Victoria Street, Hamilton HM 12 Bermuda. Its principal place of business is located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 16 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

17.    Defendant Warner Chilcott Corporation is a wholly-owned subsidiary of Warner Chilcott Holdings Company III, Ltd. and is the direct 100% shareholder of Warner Chilcott (U.S.) Inc. Warner Chilcott Corporation is a for-profit company organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 17 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

18.    Defendant Warner Chilcott (U.S.) Inc. is a wholly-owned subsidiary of Warner Chilcott Corporation. Warner Chilcott (U.S.) Inc. is a for-profit company organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 18 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

19.    Defendant Warner Chilcott Company, Inc. is a wholly-owned subsidiary of
Warner Chilcott Holdings Company III, Ltd., and is organized, existing, and doing business
under and by virtue of the laws of the Commonwealth of Puerto Rico.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 19 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

20.    Defendant Galen (Chemicals) Ltd. ("Galen") is a for-profit enterprise organized,
existing, and doing business under and by virtue of the laws of the Republic of Ireland. Galen is
directly or indirectly owned or controlled by Warner Chilcott Holdings Company Ill, Ltd.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 20 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

21.    Unless otherwise specified, Warner Chilcott Holdings Company III, Ltd., Warner
Chilcott Corporation, Warner Chilcott (U.S.) Inc., Warner Chilcott Company, Inc., Galen
(Chemicals) Ltd. and/or their predecessors, successors, parent corporations, and subsidiary
corporations are referred to herein collectively as "Warner Chilcott" or the "Warner Chilcott
Defendants." Warner Chilcott is engaged in the business of developing, manufacturing,
marketing, and distributing women's healthcare and dermatological pharmaceutical products,
including Ovcon.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 21 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

22.    Defendant Barr Pharmaceuticals, Inc., is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its principal place of business located at 2 Quaker Road, P.O. Box 2900, Pomona, New York 10970-0519. Barr is engaged in the business of developing, manufacturing, marketing, and distributing generic oral contraceptive products.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 22 of the Complaint.

**PLAINTIFFS' ALLEGATION**

23.    The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, as amended by the Drug Price Competition and Patent Term Restoration Act of 1984 (the "Hatch-Waxman Act"), and the Medicare Prescription Drug, Improvement and Modernization Act of 2003, codified at 21 U.S.C. § 355(j) and 35 U.S.C. § 271(e) (2005), establishes procedures designed to facilitate competition from lower-priced generic drugs.

**ANSWER**

Paragraph 23 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the

Complaint, except admits that the Drug Price Competition and Patent Term Restoration Act of

1984 ("Hatch-Waxman Act"), 21 U.S.C. § 355(j) (2005), and the Medicare Prescription Drug,

Improvement and Modernization Act of 2003, 35 U.S.C. § 271(e) (2005), have procedures

concerning pharmaceuticals sold in the United States.

9

**PLAINTIFFS' ALLEGATION**

24.    Before a manufacturer can market a new drug in the United States, it must obtain approval from the United States Food and Drug Administration ("FDA").

**ANSWER**

Paragraph 24 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott admits that the United States Food and Drug Administration ("FDA") has procedures concerning pharmaceuticals sold in the United States.

**PLAINTIFFS' ALLEGATION**

25.    The FDA maintains a list of approved "Reference Listed Drugs" in a publication entitled, "Approved Drug Products with Therapeutic Equivalence Evaluations," which is commonly known as the "Orange Book."

**ANSWER**

Paragraph 25 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott admits that the FDA has procedures concerning pharmaceuticals sold in the United States, and further admits that a pharmaceutical may be listed in the "Orange Book."

**PLAINTIFFS' ALLEGATION**

26.    A manufacturer seeking to market a new drug must file with the FDA a New Drug Application (NDA), demonstrating the safety and efficacy of its product. 21 U.S.C. § 355(b) (2005). Once the FDA approves the NDA, the manufacturer may market the branded drug, and the branded drug may be listed in the Orange Book. The NDA process is typically time-consuming and expensive.

**ANSWER**

The first and second sentences of Paragraph 26 of the Complaint contain legal conclusions to which no response is required. To the extent a response is required, Warner

10

Chilcott admits that the FDA has procedures concerning pharmaceuticals sold in the United

States. Warner Chilcott denies knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in the third sentence of Paragraph 26 of the

Complaint.


## PLAINTIFFS' ALLEGATION

27.    In 1984, Congress enacted the Hatch-Waxman Act, which accelerated the
approval process for generic drugs. Among other things, the Act permits a manufacturer seeking
FDA approval for a generic drug to file an Abbreviated New Drug Application ("ANDA"). 21
U.S.C. § 355(j) (2005). An ANDA filer may rely on the safety and efficacy data previously
provided in the NDA for its branded counterpart. FDA approval of an ANDA takes, on average,
about 18 months.

## ANSWER

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 27 of the Complaint, except admits that the

Hatch-Waxman Act has provisions concerning generic pharmaceuticals and that the FDA has

procedures concerning generic pharmaceuticals.


## PLAINTIFFS' ALLEGATION

28.    FDA-approved generic drugs are certified by the FDA as bioequivalent to the
branded drug whose NDA the generic drug relied upon in its ANDA and are completely
interchangeable with that branded drug. The FDA refers to such drugs as "AB-rated." A generic
drug that is "AB-rated" may be listed in the Orange Book and dispensed by a pharmacist in lieu
of its branded counterpart.

## ANSWER

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 28 of the Complaint, except admits that the

FDA has procedures concerning generic pharmaceuticals.

11

**PLAINTIFFS' ALLEGATION**

29.     Upon their introduction, generic drugs generally enter the market at prices 30 to 50 % (or more) below the price of their brand-name equivalents. Because generic and branded drugs are fully interchangeable in terms of safety and efficacy, the vast majority of patients are switched to the less expensive generic in place of the brand-name drug.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 29 of the Complaint.

**PLAINTIFFS' ALLEGATION**

30.     Almost all states (and the District of Columbia) encourage generic competition through laws that allow pharmacists to substitute brand-name drugs with their "AB-rated" generic equivalents, unless a physician directs or the patient requests otherwise.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 30 of the Complaint.

**PLAINTIFFS' ALLEGATION**

31.     Many third-party payors of prescription drugs (*e.g.*, health insurance plans, Medicaid programs) have adopted policies to encourage the substitution of available AB-rated generic drugs for their branded counterparts.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 31 of the Complaint.

**PLAINTIFFS' ALLEGATION**

32.     Ovcon is an oral contraceptive, containing norethindrone and ethinyl estradiol as its active ingredients. It has been available to the general public as a prescription pharmaceutical product since approximately 1976 and is not subject to patent protection.

12

**ANSWER**

Warner Chilcott admits the allegations contained in the first sentence of

Paragraph 32 of the Complaint. Warner Chilcott denies knowledge or information sufficient to

form a belief as to the truth of the allegations contained in the second sentence of Paragraph 32

of the Complaint, except admits that Ovcon was approved by the FDA in approximately 1976,

and further admits that Ovcon is not subject to patent protection.

**PLAINTIFFS' ALLEGATION**

33.    Prior to January 26, 2000, Bristol-Myers Squibb Company ("BMS")
manufactured, distributed, and marketed Ovcon in the United States.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 33 of the Complaint.

**PLAINTIFFS' ALLEGATION**

34.    On January 26, 2000, Warner Chilcott purchased from BMS certain rights, title,
and interests in Ovcon products, including an agreement with Bristol Myers Squibb Laboratories
Company ("BMSLC"), a wholly-owned subsidiary of BMS, to supply Ovcon products to Warner
Chilcott.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 34 of the Complaint, except admits that on

January 26, 2000 Warner Chilcott purchased from BMS certain rights, title, and interest in

Ovcon products. Warner Chilcott further admits that it entered into a supply agreement with

Bristol-Myers Squibb Laboratories ("BMSLC").

13

**PLAINTIFFS' ALLEGATION**

35.    Warner Chilcott then began marketing Ovcon manufactured by BMSLC and continues to be the exclusive marketer of Ovcon in the United States at the present time.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the Complaint, except admits that Warner Chilcott marketed Ovcon after entering into the agreement with BMSLC.

**PLAINTIFFS' ALLEGATION**

36.    Ovcon is highly profitable. It is, and has been, one of Warner Chilcott's highest revenue-producing products. Ovcon's net dollar sales have more than doubled since 2000, even as Warner Chilcott has raised Ovcon's price. For the twelve months ending September 30, 2004, Warner Chilcott's net sales of Ovcon were approximately $71.5 million.

**ANSWER**

Warner Chilcott denies the allegations contained in the first and second sentences of Paragraph 36 of the Complaint, except admits that Ovcon is, and has been, one of Warner Chilcott's highest revenue-producing products, and further admits that Warner Chilcott earns a profit on Ovcon. Warner Chilcott denies the allegations contained in the third sentence of Paragraph 36 of the Complaint, except admits that the price of Ovcon has risen. Warner Chilcott admits the allegations contained in the fourth sentence of Paragraph 36 of the Complaint.

**PLAINTIFFS' ALLEGATION**

37.    In September 2001, Barr filed an ANDA with the FDA for approval to market an AB-rated generic version of Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 37 of the Complaint.

14

**PLAINTIFFS' ALLEGATION**

38.    In January 2003, Barr publicly announced its intention to launch a generic version of Ovcon by the end of that year.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 38 of the Complaint.


**PLAINTIFFS' ALLEGATION**

39.    Barr intended to sell its generic version of Ovcon at an initial price approximately 30% below the price Warner Chilcott charged for Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 39 of the Complaint.


**PLAINTIFFS' ALLEGATION**

40.    Warner Chilcott expected Barr to enter the market with its generic Ovcon product priced approximately 30% below the price Warner Chilcott charged for Ovcon.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 40 of the Complaint.


**PLAINTIFFS' ALLEGATION**

41.    Barr projected that within its first year of introduction, generic Ovcon would capture approximately 50% of Warner Chilcott's branded Ovcon sales.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 41 of the Complaint.

**PLAINTIFFS' ALLEGATION**

42.    Warner Chilcott projected that within its first year of introduction, generic Ovcon would capture at least 50% of Ovcon's new prescriptions. Warner Chilcott calculated that, as a result of these lost prescriptions, its net revenues from the sale of branded Ovcon would decline by at least $100 million over a three-year period.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 42 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

43.    Warner Chilcott had planned to protect its Ovcon revenues from generic competition by introducing a chewable form of the product (Ovcon Chewable) before generic entry occurred. Warner Chilcott's strategy was to convert Ovcon patients to Ovcon Chewable, and to stop selling Ovcon once conversion was substantially complete. This is known as a "line extension" strategy. The January 17, 2003 publication of the IRISH TIMES quotes a Galen spokesperson as saying: "At some stage there was going to be generic competition to Ovcon, which is why we took the step of filing the line extension."

**ANSWER**

Warner Chilcott denies the allegations contained in the first three sentences of

Paragraph 43 of the Complaint, except admits that Warner Chilcott has developed a new,

innovative, patented product, Ovcon Chewable. Warner Chilcott denies knowledge or

information sufficient to form a belief as to the truth of each and every allegation contained in

the fourth sentence of Paragraph 43 of the Complaint.

16

**PLAINTIFFS' ALLEGATION**

44.    Prescriptions for Ovcon Chewable would not be able to be filled with a generic Ovcon product because any generic version of Ovcon would not be AB-rated to Ovcon Chewable.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 44 of the Complaint.

**PLAINTIFFS' ALLEGATION**

45.    By mid-2003, however, Warner Chilcott's "switch" strategy of converting users from non-chewable Ovcon to Ovcon Chewable was in jeopardy. Warner Chilcott's planned Ovcon Chewable had not obtained FDA approval by the time that Barr's generic Ovcon entry appeared imminent.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 45 of the

Complaint, except admits that Ovcon Chewable obtained FDA approval in November 2003.

**PLAINTIFFS' ALLEGATION**

46.    In May 2003, Warner Chilcott's chief financial officer warned the company's Board of Directors that generic Ovcon entry was the "biggest risk to the company."

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 46 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

47.    By the summer of 2003, Warner Chilcott believed that Barr's generic Ovcon entry could occur as early as September of that year.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 47 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

48.    In August 2003, Warner Chilcott and Barr discussed potential business
arrangements under which Barr would refrain from competing with Warner Chilcott's branded
Ovcon.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 48 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

49.    On September 10, 2003, Warner Chilcott and Barr signed a Letter of Intent to
enter into an agreement in which Warner Chilcott would pay Barr $20 million not to compete in
the United States for a term of five years with its generic Ovcon product following Barr's final
FDA approval for generic Ovcon. Rather than enter the market as a competitor, Barr would agree
to be available as a second supplier of Ovcon to Warner Chilcott if Warner Chilcott so requested,
and Warner Chilcott would pay a premium price for Barr's generic Ovcon of up to 200% of
Barr's manufacturing costs.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 49 of the

Complaint, except admits that on September 10, 2003 Warner Chilcott and Barr executed a letter

of intent. Warner Chilcott respectfully refers the Court to the letter of intent for the terms

thereof.

**PLAINTIFFS' ALLEGATION**

50.    On March 24, 2004, Defendants signed their Agreement, as contemplated by their
Letter of Intent, and Warner Chilcott paid Barr $1 million.

18

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 50 of the

Complaint, except admits that Warner Chilcott and Barr entered into an option agreement on

March 24, 2004, and further admits that Warner Chilcott paid Barr $1 million in consideration

for the option. Warner Chilcott respectfully refers the Court to the option agreement for the

terms thereof.

**PLAINTIFFS' ALLEGATION**

51.    Under the Agreement, within 45 days after FDA approval of Barr's generic
Ovcon ANDA, Warner Chilcott could elect to pay the remaining $19 million to secure Barr's
commitment to refrain from marketing generic Ovcon in the United States, either by itself, or
through a license, for five years.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 51 of the

Complaint, except admits that it entered into an option agreement with Barr. Warner Chilcott

respectfully refers the Court to the option agreement for the terms thereof.

**PLAINTIFFS' ALLEGATION**

52.    On April 22, 2004, the FDA granted final approval of Barr's ANDA for generic
Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 52 of the Complaint.

**PLAINTIFFS' ALLEGATION**

53.    On April 23, 2004, Barr announced its intent to begin marketing generic Ovcon under the name "Balziva" in the event Warner Chilcott chose not to exercise its option under the Agreement.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 53 of the

Complaint, except admits that Barr publicly contemplated marketing a generic Ovcon if Warner

Chilcott did not exercise its option, subject to certain risks and uncertainties associated with

making generic Ovcon commercially available.

**PLAINTIFFS' ALLEGATION**

54.    On May 6, 2004, Warner Chilcott exercised its option under the Agreement. Warner Chilcott paid Barr $19 million in exchange for Barr's agreement not to compete with Warner Chilcott by introducing generic Ovcon into the market.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 54 of the

Complaint, except admits that on May 6, 2004 Warner Chilcott exercised the option, and further

admits that Warner Chilcott paid Barr $19 million upon the exercise of the option.  Warner

Chilcott respectfully refers the Court to the option agreement for the terms thereof.

**PLAINTIFFS' ALLEGATION**

55.    Warner Chilcott did not begin purchasing Ovcon supply from Barr at that time, but instead continued to purchase its Ovcon requirements solely from Bristol-Myers Squibb Co. Barr began purchasing Ovcon supply from Barr approximately one year later in May 2005.

20

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 55 of the

Complaint, except admits that product under Barr's ANDA could not be sold immediately upon

FDA approval, and further admits that Warner Chilcott purchased Ovcon from BMS.

**PLAINTIFFS' ALLEGATION**

56.    Under the terms of the Agreement, Barr cannot sell generic Ovcon in the United States for five years, or until approximately May 2009.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 56 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

57.    Absent this Agreement, Barr would have begun marketing its generic Ovcon after it received FDA approval of its ANDA on or about April 22, 2004.

**ANSWER**

Warner Chilcott denies knowledge and information sufficient to form a belief as

to the truth of the allegations contained in Paragraph 57 of the Complaint, except denies that Barr

had the capability to market a generic Ovcon shortly after obtaining FDA approval.

**PLAINTIFFS' ALLEGATION**

58.    Barr has abided by the Agreement not to sell generic Ovcon in the United States. To date, no other company has received FDA approval to market a generic version of Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 58 of the Complaint.

21

**PLAINTIFFS' ALLEGATION**

59.    If Barr had introduced its generic product, Plaintiffs and members of the Class, defined below, would have substituted Barr's lower-priced generic Ovcon for all or a portion of their purchases of branded Ovcon, and/or would have paid substantially less for branded Ovcon because Warner Chilcott would have lowered net Ovcon prices in response to competition.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 59 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

60.    As a consequence of Defendants' Agreement, Plaintiffs and members of the Class have been deprived of the benefits of free and open competition in their purchases. Purchasers of Ovcon were required to continue purchasing brand name Ovcon when a less expensive generic product would have otherwise been available.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 60 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

61.    Plaintiffs bring this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and the following Class (the "Class"):

> All persons and entities in the United States who purchased Ovcon
> directly from Warner Chilcott at any time from April 22, 2004,
> through the present and continuing until the effects of Defendants'
> anticompetitive conduct have ceased ("Class Period"). Excluded
> from the class are Defendants and their officers, directors,
> employees, subsidiaries, or affiliates, and all government entities.

**ANSWER**

Paragraph 61 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies that it engaged in

22

anticompetitive conduct, and further denies that Plaintiffs are entitled to any relief whatsoever.

Warner Chilcott further denies that this suit can be litigated as class action under Federal Rule of

Civil Procedure 23(b)(3) or any other rule.

### PLAINTIFFS' ALLEGATION

62.    The Class is so numerous that joinder of all members is impracticable. Class members include wholesalers, hospitals, health maintenance organizations, and/or retail chain drug stores. Upon information and belief, the Class includes one hundred or more members, and the exact identity of Class members is ascertainable from the records of Defendants.

### ANSWER

Paragraph 62 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies knowledge or information

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 62

of the Complaint.

### PLAINTIFFS' ALLEGATION

63.    There are questions of law and fact common to the Class, including but not limited to, the following:

a.    whether Defendants combined, agreed, or conspired as alleged herein in restraint of trade;

b.    whether Defendants' agreement, combination, or conspiracy was lawful;

c.    whether Defendants' unlawful conduct as alleged herein has affected interstate commerce;

d.    whether Defendants' unlawful conduct caused Plaintiffs and the other members of the Class to pay more for Ovcon and its generic equivalents than they would have paid absent Defendants' conduct;

e.    whether Defendants' unlawful conduct caused antitrust injury to the business or property of Plaintiffs and the member of the Class and, if so, the appropriate relief and/or measure of damages.

23

**ANSWER**

Paragraph 63 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 63 of the Complaint.

**PLAINTIFFS' ALLEGATION**

64.    These and other questions of law and fact are common to the members of the Class and predominate over any questions affecting individual members because Defendants have acted on grounds generally applicable to the entire Class. Such generally applicable conduct is inherent in Defendants' collusive conduct.

**ANSWER**

Paragraph 64 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in the first sentence of Paragraph 64 of the Complaint. Warner Chilcott denies each and every allegation contained in the second sentence of Paragraph 64 of the Complaint.

**PLAINTIFFS' ALLEGATION**

65.    Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and all Class members suffered antitrust injury by the same wrongful conduct by the Defendants; they have all paid artificially inflated prices for Ovcon and its generic equivalents resulting from Warner Chilcott's agreement with Barr to exclude generic competition.

**ANSWER**

Paragraph 65 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 65 of the Complaint.

24

**PLAINTIFFS' ALLEGATION**

66.    Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel experienced in class action and antitrust litigation. Plaintiffs have no interest in this litigation that is adverse to, or in conflict with, the interests of the other members of the Class.

**ANSWER**

Paragraph 66 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies the allegations contained in the first sentence of Paragraph 66 of the Complaint, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 66 of the Complaint.

**PLAINTIFFS' ALLEGATION**

67.    A class action is superior to any other available methods for the fair and efficient adjudication of this controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would require. The benefits of proceeding by way of class action, including providing injured persons or entities with a method for obtaining redress on claims that they might not be able to pursue individually, substantially outweigh any difficulties that may arise in the management of a class action.

**ANSWER**

Paragraph 67 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies that a class action is superior to any other available method for the fair and efficient adjudication of this controversy, and further denies that a class action is the proper vehicle for this action.

25

**PLAINTIFFS' ALLEGATION**

68.    Plaintiffs know of no difficulty that would be encountered in the management of the claims advanced by the Class that would preclude certification.

**ANSWER**

Paragraph 68 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 68 of the Complaint.

**PLAINTIFFS' ALLEGATION**

69.    During the period relevant to this litigation, Ovcon was sold throughout the United States. Ovcon was manufactured and sold in a continuous and uninterrupted flow of commerce across state lines. Defendants' unlawful activities alleged in this Complaint have occurred in and have had a substantial effect upon interstate commerce.

**ANSWER**

Paragraph 69 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott admits that Ovcon is sold in the United States, but denies that Warner Chilcott has engaged in any unlawful activity.

**PLAINTIFFS' ALLEGATION**

70.    In furtherance of their unlawful conduct, Defendants employed the United States mail and interstate and international telephone lines, as well as means of interstate and international travel.

**ANSWER**

Paragraph 70 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 70 of the Complaint.

26

**PLAINTIFFS' ALLEGATION**

71.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully stated herein.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 70 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

72.    By entering into the Agreement, the purpose and effect of which was to restrain trade by keeping generic competition to Ovcon out of the market, the Defendants have engaged in a continuing contract, combination, or conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

**ANSWER**

Paragraph 72 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 72 of the Complaint.

**PLAINTIFFS' ALLEGATION**

73.    The Defendants' contract, combination, and/or conspiracy has included concerted actions and undertakings among Defendants with the purpose and effect of fixing, raising, maintaining, or stabilizing the price of Ovcon and its generic equivalents.

**ANSWER**

Paragraph 73 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 73 of the Complaint.

**PLAINTIFFS' ALLEGATION**

74.    For the purpose of formulating and effectuating their contract, combination, and/or conspiracy, Defendants performed the following acts:

        a.    entering into an illegal agreement by which Barr agreed not to sell generic Ovcon in U.S. commerce in exchange for monetary payment by Warner Chilcott; and

        b.    depriving direct purchasers of the ability to purchase Ovcon and its generic equivalents at a competitive price.

**ANSWER**

Paragraph 74 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 74 of the Complaint, including sub-parts a) and b).

**PLAINTIFFS' ALLEGATION**

75.    The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, and/or conspiracy were authorized, ordered or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

**ANSWER**

Paragraph 75 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 75 of the Complaint.

**PLAINTIFFS' ALLEGATION**

76.    Defendants' illegal contract, combination, and/or conspiracy to prevent the introduction into the U.S. marketplace of a generic version of Ovcon resulted in Plaintiffs and members of the Class paying more than they would have paid for Ovcon and its generic equivalents absent Defendants' illegal conduct.

**ANSWER**

Paragraph 76 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 76 of the Complaint.

**PLAINTIFFS' ALLEGATION**

77.    Defendants' contract, combination, and/or conspiracy is a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

**ANSWER**

Paragraph 77 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 77 of the Complaint.

**PLAINTIFFS' ALLEGATION**

78.    In the alternative, Defendants' contract, combination and/or conspiracy violates Section 1 of the Sherman Act, 15 U.S.C. § 1, under the "quick look" and/or rule of reason analyses, because the purpose and effect of Defendants' conduct was to unreasonably restrain competition in the sale of Ovcon and its generic equivalents. To the extent required by law, the relevant product market is Ovcon and its AB-rated generic equivalents and the relevant geographic market is the United States. Defendants had monopoly power in the relevant product market in that through the Agreement, (a) Warner Chilcott allocated 100% of that relevant market in the United States to themselves, and (b) Ovcon and its generic equivalents was sold at prices well above the competitive level without losing substantial sales.

**ANSWER**

Paragraph 78 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 78 of the Complaint.

**PLAINTIFFS' ALLEGATION**

79.    Defendants have undertaken the foregoing unlawful courses of conduct for the following purposes and with the following effects:

        a.    prices for Ovcon and its generic equivalents have been fixed, raised, maintained, or stabilized at artificially high and non-competitive levels;

        b.    buyers of Ovcon have been unable to purchase lower-priced generic versions of Ovcon;

        c.    buyers of Ovcon and its generic equivalents have been deprived of the benefits of free and open competition in their purchases; and

        d.    competition in the production and sale of Ovcon and its generic equivalents has been restrained, suppressed, and eliminated.

**ANSWER**

Paragraph 79 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 79 of the Complaint, including sub-parts a) through d).

**PLAINTIFFS' ALLEGATION**

80.    During the relevant period, Plaintiffs and members of the Class purchased substantial amounts of Ovcon from Defendants. As a result of Defendants' illegal conduct, Plaintiffs and members of the Class were compelled to pay, and did pay, artificially inflated prices for Ovcon and its generic equivalents. Those prices were substantially greater than the prices they would have paid absent the illegal agreement, combination, or conspiracy alleged herein, because they were deprived of the opportunity to: (1) pay lower prices for the generic versions of the drug; (2) pay lower prices for their Ovcon requirements by switching some of the volume of their purchases from the brand to the generic versions; and (3) pay lower prices for the brand name drug Ovcon. Members of the Class have sustained substantial losses and damage to their businesses and property in the form of overcharges. The full amount and forms and components of such damages will be calculated after discovery and upon proof at trial.

**ANSWER**

Paragraph 80 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 80 of the Complaint.

## JURY DEMAND

### PLAINTIFFS' ALLEGATION

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues so triable.

### ANSWER

Warner Chilcott hereby demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

### PLAINTIFFS' ALLEGATION

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully request:

1.    Certification of this case as a class action;

2.    Judgment declaring Defendants' contract, combination, or conspiracy alleged herein to be an unlawful restraint of trade in violation of Section 1 of the Sherman Act;

3.    Judgment in Plaintiffs' favor and against Defendants for damages representing three times the overcharge damages sustained by Plaintiffs and the other members of the Class defined herein;

4.    Joint and several judgment be entered against each Defendant in favor of Plaintiffs and the other members of the Class;

5.    An award to Plaintiffs of all costs incurred, including reasonable attorneys' fees;

6.    Pre- and post-judgment interest;

7.    Such other and further relief as the Court deems just and proper.

### ANSWER

WHEREFORE, Warner Chilcott denies that this suit can be litigated as class action, denies that Plaintiffs are entitled to any relief whatsoever, and respectfully requests judgment for Warner Chilcott along with costs and attorneys' fees, as may be allowed by law, and such further relief as the Court deems appropriate.  Furthermore, Warner Chilcott denies every allegation contained in the Complaint not specifically herein admitted.

31

## AFFIRMATIVE DEFENSES

Warner Chilcott states the following affirmative defenses without assuming the burden of proof of such defenses that would otherwise rest on Plaintiffs.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

The Complaint fails to state a claim against Warner Chilcott on which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Laches)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

## THIRD AFFIRMATIVE DEFENSE
### (Estoppel)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel.

## FOURTH AFFIRMATIVE DEFENSE
### (Waiver)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver.

### FIFTH AFFIRMATIVE DEFENSE
#### (Justification)

Plaintiffs' claims are barred, in whole or in part, because any conduct engaged in by Warner Chilcott was reasonable, based upon independent, legitimate business and economic justifications, without the purpose or effect of injuring competition.

### SIXTH AFFIRMATIVE DEFENSE
#### (Preservation of Business)

Plaintiffs' claims are barred, in whole or in part, because any conduct engaged in by Warner Chilcott was reasonable in relation to the development and preservation of its business.

### SEVENTH AFFIRMATIVE DEFENSE
#### (No Injury to Competition)

Plaintiffs' claims are barred, in whole or in part, because none of Warner Chilcott's actions have injured competition in any relevant market.

### EIGHTH AFFIRMATIVE DEFENSE
#### (Pro-Competitive Effects)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott's alleged actions have pro-competitive effects that benefit competition as a whole in any relevant market. Warner Chilcott's alleged actions increased competition and are in furtherance of trade.

33

## NINTH AFFIRMATIVE DEFENSE
### (No Consumer Harm)

Plaintiffs' claims are barred, in whole or in part, because none of Warner Chilcott's alleged actions have harmed consumers.

## TENTH AFFIRMATIVE DEFENSE
### (No Harm to Plaintiffs)

Plaintiffs' claims are barred, in whole or in part, because none of Warner Chilcott's alleged actions have harmed Plaintiffs.

## ELEVENTH AFFIRMATIVE DEFENSE
### (No Knowledge or Intent)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott had no knowledge, intention or belief that its actions might illegally restrain trade. Further, Warner Chilcott could not have known that its actions might illegally restrain trade.

## TWELFTH AFFIRMATIVE DEFENSE
### (No Willful or Flagrant Act)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott did not engage in any willful, flagrant or unconscionable act.

34

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Good Faith Reliance)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott relied in good faith on the actions of the Federal Trade Commission.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (No Notice)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott had no notice that its actions, if any, were illegal.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (No Concealment)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott did not conceal any of its actions.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Failure to Identify Appropriate Markets)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not properly alleged either a relevant product market or a relevant geographic market.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (No Market Power)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott has and had no market power.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### (Causation)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott's

actions were not the proximate cause in fact of Plaintiffs' alleged damages.

## NINETEENTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

To the extent that Plaintiffs have failed to mitigate, minimize or avoid any loss or

damage referred to in the Complaint, any recovery must be reduced by that amount.

## TWENTIETH AFFIRMATIVE DEFENSE
### (Lawful Conduct)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott has

acted at all times in conformity with all applicable laws, statutes, ordinances and decrees with

respect to the Plaintiffs.

## TWENTY-FIRST AFFIRMATIVE DEFENSE
### (Not Maintainable as a Class Action)

Plaintiffs' claims are barred, in whole or in part, because the action against

Warner Chilcott is not properly maintained as a class action.

## TWENTY-SECOND AFFIRMATIVE DEFENSE
### (Lack of Antitrust Injury)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not suffered antitrust injury.

## TWENTY-THIRD AFFIRMATIVE DEFENSE
### (No Pattern or Practice)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott did not engage in any pattern or practice of illegal activity.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
### (No Standing)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs do not have standing.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE
### (Failure to Plead a Proper Party)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have failed to plead a proper party.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE
### (Reservation of Additional Defenses)

Warner Chilcott reserves the right to assert additional affirmative defenses as discovery proceeds.

## JURY DEMAND

Warner Chilcott hereby demands a trial by jury on all claims so triable.

## WARNER CHILCOTT'S PRAYER FOR RELIEF

**WHEREFORE**, Warner Chilcott prays as follows:

1.     That the Court enter judgment for Warner Chilcott on all counts;

2.     That the Court award Warner Chilcott reasonable costs and expenses

including, but not limited to, attorneys' fees and costs of suit, and such other and further relief as

may be appropriate.

May 3, 2006                                       Respectfully submitted,

                                        /s/ Peter C. Thomas

                            By:     _____

                                    Peter C. Thomas, D.C. Bar # 495928
                                    SIMPSON THACHER & BARTLETT LLP
                                    555 11th Street, N.W.
                                    Suite 725
                                    Washington, D.C.  20004
                                    (202) 220-7700

                                    Charles E. Koob, *pro hac vice*
                                    SIMPSON THACHER & BARTLETT LLP
                                    425 Lexington Avenue
                                    New York, New York 10017
                                    (212) 455-2000

                                    *Counsel for Warner Chilcott Defendants*

# TAB 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WALGREEN CO., 200 Wilmot Road, Deerfield, IL 60015, | |
| ECKERD CORPORATION, 50 Service Road, Warwick, RI 02886, | |
| MAXI DRUG, INC., d/b/a BROOKS PHARMACY, 50 Service Road, Warwick, RI 02886, | |
| THE KROGER CO., 1014 Vine Street, Cincinnati, OH 45202, | |
| ALBERTSON'S, INC. 250 East Park Center Blvd., Boise, ID 83706, | Civil Action No. 1:06-CV-00494-CKK |
| SAFEWAY, INC., 5918 Stoneridge Mall Road, Pleasanton, CA 94588, and | Judge Colleen Kollar-Kotelly |
| HY-VEE, INC., 5820 Westtown Pkwy., W. Des Moines, IA 50266, | JURY TRIAL DEMANDED |
| Plaintiffs, | |
| v. | |
| WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (U.S.) INC., WARNER CHILCOTT COMPANY, INC., AND BARR PHARMACEUTICALS, INC., | |
| Defendants. | |

## BARR PHARMACEUTICAL, INC.'S
## ANSWER TO PLAINTIFFS' COMPLAINT

Defendant BARR PHARMACEUTICALS, INC. ("Barr") hereby responds to the allegations of Plaintiffs WALGREEN CO., ECKERD CORPORATION, MAXIDRUG, INC. d/b/a/ BROOKS PHARMACY, THE KROGER CO., ALBERTSON'S INC., SAFEWAY, INC., and HY-VEE, INC. (collectively, "Plaintiffs") in their Complaint ("Complaint"). Barr denies it

has engaged or is engaging in any unlawful or unfair methods of competition in or affecting

commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Barr further responds to

each paragraph of the Complaint as set forth below. Any allegation in the Complaint not

specifically addressed below is hereby denied.

1.    This is a civil antitrust action seeking treble damages and other relief arising out of an unlawful horizontal agreement between Warner Chilcott and Barr, two competing sellers of an oral contraceptive marketed by Warner Chilcott under the brand name Ovcon 35 ("Ovcon"). Barr is the only company approved by the United States Food and Drug Administration ("FDA") to sell a generic version of Ovcon in competition with Warner Chilcott in the United States. Defendants have unlawfully conspired to prevent and suppress that competition. Defendants' unlawful conspiracy has deprived Plaintiffs and other Ovcon purchasers of the benefits of generic competition from approximately April 2004 to the present.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in the second sentence of Paragraph 1 of the Complaint. Barr

denies the remaining allegations contained in Paragraph 1 of the Complaint, and specifically

denies that it has engaged in any unlawful activity whatsoever.

2.    Plaintiff Walgreen Co. ("Walgreen") is an Illinois corporation having its principal place of business in Deerfield, Illinois. Walgreen owns and operates retail stores in several states at which it dispenses prescription drugs to the public. Walgreen brings this action in its own behalf and as assignee of a pharmaceutical wholesaler, AmerisourceBergen Corporation, which purchased Ovcon directly from Warner during the relevant period for resale to Walgreen and which has assigned its antitrust claims arising from those purchases to Walgreen.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 2 of the Complaint.

3.    Plaintiff Eckerd Corporation ("Eckerd") is a Delaware corporation having its principal place of business in Warrick, Rhode Island. Eckerd owns and operates retail stores in several states at which it dispenses prescription drugs to the public. Eckerd brings this action in its own behalf and as assignee of a pharmaceutical wholesaler, McKesson Corporation ("McKesson"), which purchased Ovcon directly from Warner during the relevant period for resale to Eckerd and which has assigned its antitrust claims arising from those purchases to Eckerd.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 3 of the Complaint.

2

4.    Plaintiff Maxi Drug, Inc. d/b/a/ Brooks Pharmacy ("Brooks") is a Delaware corporation having its principal place of business in Warrick, Rhode Island. Brooks owns and operates retail stores in several states at which it dispenses prescription drugs to the public. Brooks brings this action in its own behalf and as the assignee of McKesson, which purchased Ovcon directly from Warner during the relevant period for resale to Brooks and which has assigned its antitrust claims arising from those purchases to Brooks.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 4 of the Complaint.

5.    Plaintiff The Kroger Co. ("Kroger") is an Ohio corporation having its principal place of business in Cincinnati, Ohio. Kroger owns and operates retail stores in several states at which it dispenses prescription drugs to the public. During the relevant period, Kroger purchased Ovcon directly from Warner.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 5 of the Complaint.

6.    Plaintiff Albertson's, Inc. ("Albertson's") is a Delaware corporation having its principal place of business in Boise, Idaho. Albertson's owns and operates retail stores in several states at which it dispenses prescription drugs to the public. Albertson's brings this action in its own behalf and as the assignee of McKesson, which purchased Ovcon directly from Warner during the relevant period for resale to Albertson's and which has assigned its antitrust claims arising from those purchases to Albertson's.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 6 of the Complaint.

7.    Plaintiff Safeway, Inc. ("Safeway") is a Delaware corporation having its principal place of business in Pleasanton, California. Safeway owns and operates retail stores in several states at which it dispenses prescription drugs to the public. Safeway brings this action in its own behalf and as the assignee of McKesson, which purchased Ovcon directly from Warner during the relevant period for resale to Safeway and which has assigned its antitrust claims arising from those purchases to Safeway.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 7 of the Complaint.

8.    Plaintiff Hy-Vee, Inc. ("Hy-Vee") is an Iowa corporation having its principal place of business in West Des Moines, Iowa. Hy-Vee owns and operates retail stores in several states at which it dispenses prescription drugs to the public. Hy-Vee brings this action in its own behalf and as the assignee of McKesson, which purchased Ovcon directly from Warner during

the relevant period for resale to Hy-Vee and which has assigned its antitrust claims arising from those purchases to Hy-Vee.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 8 of the Complaint.

9.    Defendant Warner Chilcott Holdings Company III, Ltd. is a privately owned for-profit company organized and existing under the laws of Bermuda, with its principal place of business in Rockaway, New Jersey. Warner Chilcott Holdings Company III, Ltd., through its direct and indirect subsidiaries, is engaged in the discovery, development, manufacture and distribution of pharmaceutical products in the United States, including Ovcon.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 9 of the Complaint.

10.    Defendant Warner Chilcott Corporation is an indirect wholly owned subsidiary of Warner Chilcott Holdings Company III, Ltd. and is the direct parent of Warner Chilcott (U.S.) Inc. Warner Chilcott Corporation is a Delaware corporation with its principal place of business in Rockaway, New Jersey.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 10 of the Complaint.

11.    Defendant Warner Chilcott (U.S.) Inc. is a wholly owned subsidiary of Warner Chilcott Corporation. Warner Chilcott (U.S.) Inc. is a Delaware corporation with its principal place of business in Rockaway, New Jersey.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 11 of the Complaint.

12.    Defendant Warner Chilcott Company, Inc. is a wholly owned subsidiary of Warner Chilcott Holdings Company III, Ltd. Warner Chilcott Company, Inc. is organized and exists under the laws of the Commonwealth of Puerto Rico.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 12 of the Complaint.

13.    The defendants identified in paragraphs 9 through 12 above will be referred to collectively as "Warner Chilcott."

4

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 13 of the Complaint.

14.    Defendant Barr Pharmaceuticals, Inc. ("Barr") is a Delaware corporation with its
principal place of business in Pomona, New York.    Barr is engaged in the business of
developing, manufacturing, marketing and distributing generic pharmaceutical products,
including generic oral contraceptives.

**ANSWER:**    Barr admits that it is a corporation organized under the laws of the state of

Delaware.    Barr further admits that its regular business activities include the development,

manufacture, and marketing of various pharmaceutical products.    Barr denies the remaining

allegations contained in Paragraph 14 of the Complaint.

15.    This action arises under section 1 of the Sherman Act, 15 U.S.C. § 1, and sections
4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.    The Court has subject-matter
jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337(a).

**ANSWER:**    Paragraph 15 of the Complaint contains legal conclusions to which no

response is required.    To the extent a response is required, Barr denies each and every allegation

contained in Paragraph 15 of the Complaint.

16.    Venue is proper in this Court pursuant to section 12 of the Clayton Act, 15 U.S.C.
§ 22, because each Defendant is an inhabitant of this District or is found or transacts business
there.

**ANSWER:**    Paragraph 16 of the Complaint contains legal conclusions to which no

response is required.    To the extent a response is required, Barr lacks knowledge or information

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 16

of the Complaint.

17.    The pharmaceutical products at issue in this case are sold in interstate commerce,
and the unlawful activities alleged in this Complaint have occurred in, and have had a substantial
effect upon, interstate commerce.

**ANSWER:**    Paragraph 17 of the Complaint contains legal conclusions to which no

response is required.    To the extent a response is required, Barr lacks knowledge or information

5

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 17

of the Complaint, but denies that it has engaged in any unlawful activity that has had a

substantial effect upon interstate commerce.

18.    Under the federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.*,
approval by the FDA is required before a new drug may be sold in interstate commerce.
Premarket approval for a new drug must be sought by filing a new drug application with the
FDA, under either section 355(b) or section 355(j) of the Act, demonstrating that the drug is safe
and effective for its intended use.

**ANSWER:**    Paragraph 18 of the Complaint contains legal conclusions to which no

response is required.  To the extent a response is required, Barr admits that, among other things,

a drug manufacturer must obtain approval from the FDA before a manufacturer may lawfully

introduce a new drug in the United States.  Barr further admits that, among other things, a drug

manufacturer must file a New Drug Application with the FDA and demonstrate that a new drug

is safe and effective for its intended use.  Barr lacks knowledge or information sufficient to form

a belief as to the truth of the remaining allegations contained in Paragraph 18 of the Complaint.

19.    In 1984, Congress amended the Food, Drug and Cosmetic Act by enacting the
Drug Price Competition and Patent Term Restoration Act, commonly known as the Hatch-
Waxman Amendments or the Hatch-Waxman Act.  Hatch-Waxman simplified the regulatory
hurdles for prospective generic drug manufacturers by eliminating the need for generic
companies to file lengthy and costly New Drug Applications ("NDAs") in order to obtain FDA
approval.  Instead, such companies are permitted to file Abbreviated New Drug Applications
("ANDAs") and to rely on the safety and effectiveness data already supplied to the FDA by the
brand-name manufacturer.  Hatch-Waxman also added a number of patent-related provisions to
the statutory scheme.  Congress's principal purpose in enacting the Hatch-Waxman Amendments
was "to bring generic drugs onto the market as rapidly as possible."  *Mova Pharmaceuticals
Corp. v. Shalala*, 140 F.3d 1060, 1068 (D.C. Cir. 1998).

**ANSWER:**    Paragraph 19 of the Complaint contains legal conclusions to which no

response is required.  To the extent a response is required, Barr admits that the Hatch-Waxman

Act established certain procedures relating to generic pharmaceuticals.  Barr lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in

Paragraph 19 of the Complaint.

20.    Generic drugs are drugs which the FDA has found to be bioequivalent to particular brand name drugs. When the FDA finds that a generic drug is both bioequivalent and equivalent in all other respects to a brand-name drug, it assigns the generic drug an "AB" rating. Retail pharmacies are permitted (and in some states required) to dispense an AB-rated generic drug in place of the corresponding brand-name drug unless the physician expressly dictates otherwise.

**ANSWER:**    Paragraph 20 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Barr admits that in some states and under certain circumstances a pharmacist may dispense an AB-rated generic drug when presented with a prescription for its branded equivalent, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 20 of the Complaint.

21.    The first generic competitor to enter a market typically does so at a price at least 30% lower than the price of the equivalent brand-name drug and quickly takes a substantial amount of market share away from the brand-name manufacturer. As additional generic competitors come to market, the price of the generics continues to fall, and their combined market share continues to grow. In some cases, generic competitors sell products equivalent to brand-name prescription drugs for as little as 10% of the price of the brand-name drug, and have captured as much as 90% of the brand-name drug's pre-generic sales.

**ANSWER:**    Barr admits that generic drugs can cost less than bioequivalent branded drugs, but that each drug must be considered individually to observe pricing behavior. Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 21 of the Complaint.

22.    The price competition engendered by generic drug manufacturers benefits all purchasers of the drug, who are able to buy the same chemical substance at much lower prices. Retail pharmacies, such as those owned and operated by Plaintiffs, substitute generic drugs for brand-name drugs wherever possible in order to lower their costs and those of their customers.

**ANSWER:**    Barr admits that generic drugs can cost less than bioequivalent branded drugs, but that each drug must be considered individually to observe pricing behavior. Barr further admits that in some states and under certain circumstances a pharmacist may dispense an AB-rated generic drug when presented with a prescription for its branded equivalent, but lacks

7

knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 22 of the Complaint.

23.    Ovcon was originally approved by the FDA in 1976, and is not subject to patent protection. Warner Chilcott acquired Ovcon from Bristol-Myers Squibb Company on January 26, 2006. As part of the acquisition, Bristol-Myers Squibb agreed to supply, and has supplied, Ovcon to Warner Chilcott.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 23 of the Complaint.

24.    Ovcon's net sales have more than doubled since 2000, even as Ovcon's price has risen.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 24 of the Complaint.

25.    Ovcon is, and has been, one of Warner Chilcott's highest revenue producing products.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 25 of the Complaint.

26.    Warner Chilcott sells Ovcon at a price substantially above its cost.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 26 of the Complaint.

27.    Ovcon is highly profitable for Warner Chilcott. For the twelve months ending September 30, 2004, Warner Chilcott's net sales of Ovcon were approximately $71.5 million. For that same time period, Warner Chilcott's gross margin on net sales of all its products was approximately 89%.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 27 of the Complaint.

28.    In September 2001, Barr filed an ANDA with the FDA for approval to manufacture and sell an AB-rated generic version of Ovcon in the United States.

**ANSWER:** Barr admits that it filed an ANDA with the FDA for approval to manufacture and sell an AB-rated generic version of Ovcon. Barr denies the remaining allegations contained in Paragraph 28 of the Complaint.

29. In January 2003, Barr publicly announced its intention to market generic Ovcon by the end of that year.

**ANSWER:** Barr denies the allegations contained in Paragraph 29 of the Complaint, except admits that in April 2004 it publicly contemplated launching a generic version of Ovcon if Warner Chilcott did not exercise its option, subject to certain risks and uncertainties in making a generic Ovcon commercially available.

30. Barr planned to price generic Ovcon at approximately 30 percent less than the price that Warner Chilcott charges for branded Ovcon.

**ANSWER:** Barr denies each and every allegation contained in Paragraph 30 of the Complaint.

31. Barr projected that its generic Ovcon would capture approximately 50 percent of Warner Chilcott's unit sales of branded Ovcon within the first year of introduction.

**ANSWER:** Barr admits that it made projections regarding the sales of a generic Ovcon product. Barr denies the remaining allegations contained in Paragraph 31 of the Complaint.

32. Warner Chilcott projected that Barr would price its generic Ovcon at approximately 30 percent less than the price that Warner Chilcott charges for branded Ovcon.

**ANSWER:** Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 32 of the Complaint.

33. Warner Chilcott projected that generic Ovcon would capture at least 50 percent of Ovcon's new prescriptions within the first year of introduction. Warner Chilcott calculated that, as a result of these lost prescriptions, its net revenues from the sale of branded Ovcon would decline by at least $100 million over a three year period.

**ANSWER:** Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 33 of the Complaint.

34.    Warner Chilcott had planned to protect its Ovcon revenues from generic competition by introducing a chewable form of the product (Ovcon Chewable) before generic Ovcon entry occurred.  Warner Chilcott's strategy was to convert its Ovcon customers to Ovcon Chewable and to stop selling Ovcon.  Prescriptions for Ovcon Chewable could not be filled at the pharmacy with generic Ovcon, because Ovcon would not be AB-rated to Ovcon Chewable.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 34 of the Complaint.

35.    By mid-2003, however, Warner Chilcott's "switch" strategy was in jeopardy.  Entry of generic Ovcon appeared imminent, and Ovcon Chewable had not yet obtained FDA approval.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 35 of the Complaint.

36.    In May 2003, Warner Chilcott's chief financial officer warned the company's Board of Directors that generic Ovcon entry was the "biggest risk to the company."

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 36 of the Complaint.

37.    In August 2003, Warner Chilcott and Barr discussed a possible business arrangement under which Barr would agree to refrain from competing in the United States with its generic Ovcon product.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 37 of the

Complaint, except admits that in August 2003 representatives of Barr and Warner Chilcott

discussed a number of possible business transactions.

38.    On September 10, 2003, Warner Chilcott and Barr executed a letter of intent.  Under the parties' agreement as described in the letter of intent, Warner Chilcott would pay Barr $20 million and Barr would not enter the market and compete in the United States for five years with its generic Ovcon product once Barr received final FDA approval.  Instead of entering and competing, Barr would agree to be available as a second supplier of Ovcon to Warner Chilcott if Warner Chilcott so requested.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 38 of the

Complaint, except admits that on September 10, 2003, Barr and Warner Chilcott executed a

letter of intent to enter into an agreement that would give Warner Chilcott an option to enter into

a five year exclusive license to Barr's Ovcon ANDA and a related supply agreement.

39.    On March 24, 2004, Defendants signed their Final Agreement implementing the letter of intent. Warner Chilcott paid Barr $1 million upon signing the Final Agreement.

**ANSWER:**    Barr admits that on March 24, 2004, Barr and Warner Chilcott executed an

option agreement implementing the terms of the parties' letter of intent, and further admits that

Barr was paid $1 million in consideration for the option by Warner Chilcott.

40.    Under the Final Agreement, within 45 days after the FDA approved Barr's generic Ovcon ANDA, Warner Chilcott could elect to pay the remaining $19 million to secure Barr's agreement to refrain from marketing generic Ovcon in the United States, either by itself or through a licensee, for five years. The Final Agreement referred to this arrangement as Warner Chilcott's option to an exclusive license to Barr's ANDA for generic Ovcon.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 40 of the

Complaint, except admits that Warner Chilcott exercised its option to a five-year exclusive

license to Barr's Ovcon ANDA in May 2004.

41.    In addition, the Final Agreement gave Warner Chilcott the ability to purchase Ovcon supply from Barr, pursuant to specified payment terms. The ability to purchase supply from Barr would arise, however, only after Barr received final FDA approval for its generic Ovcon. Both Warner Chilcott and Barr understood that if, upon receiving FDA approval, Barr went ahead and entered the market with its generic Ovcon product, Warner Chilcott's Ovcon supply needs would immediately be drastically reduced.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 41 of the

Complaint, except admits that Barr and Warner Chilcott entered into a supply agreement with

specified payment terms, and further admits that Barr could not supply Warner Chilcott with

generic Ovcon under its ANDA prior to receiving FDA approval.

42.    On April 22, 2004, the FDA approved Barr's ANDA to produce and market generic Ovcon.

**ANSWER:**    Barr admits the allegations contained in Paragraph 42 of the Complaint.

43.    Upon receiving final FDA approval for its generic Ovcon ANDA, Barr had the capability to market generic Ovcon in the United States and, but for the illegal agreement, would have done so.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 43 of the Complaint.

44.    On April 23, 2004, Barr publicly announced its intention to market generic Ovcon if Warner Chilcott chose not to exercise its exclusive license option.

**ANSWER:**    Barr admits that in April 2004 it publicly contemplated launching a generic version of Ovcon if Warner Chilcott did not exercise its option, subject to certain risks and uncertainties in making a generic Ovcon commercially available.

45.    On May 6, 2004, Warner Chilcott exercised the exclusive license option under the Final Agreement by paying Barr $19 million.

**ANSWER:**    Barr admits that on or about May 6, 2004, Warner Chilcott exercised the option for an exclusive license and supply, and further admits that Warner Chilcott paid Barr $19 million under the Final Agreement.

46.    Under the terms of the Final Agreement, Barr cannot sell generic Ovcon in the United States for five years, or until approximately May 2009.  Absent its illegal agreement not to compete with Warner Chilcott, Barr would have started selling generic Ovcon shortly after receiving final FDA approval in April 2004.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 46 of the Complaint, except admits that until approximately May 2009 Barr is obligated to supply Warner Chilcott exclusively with product produced under Barr's ANDA on generic Ovcon.

47.    Entry of Barr's generic Ovcon into the United States would have quickly and significantly reduced the sales of Warner Chilcott's branded Ovcon and led to a significant reduction in the average price Plaintiffs and other purchasers paid for Ovcon products.  By paying Barr not to compete, Warner Chilcott was able to avoid the loss of its monopoly profits and to maintain inflated, supracompetitive prices for the drug.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 47 of the Complaint.

12

48.    Barr has abided by its agreement not to sell generic Ovcon in the United States.

**ANSWER:**    Barr admits that it has not sold generic Ovcon in the United States. Barr

denies the remaining allegations contained in Paragraph 48 of the Complaint.

49.    As of the date of this complaint, Barr remains the only company that has received
FDA approval to market a generic version of Ovcon.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 49 of the Complaint.

50.    Since approximately September 10, 2004, when Defendants executed their letter
of intent, Defendants have engaged in a continuing horizontal agreement, combination or
conspiracy, the purpose and effect of which have been to allocate to Warner Chilcott the market
for the sale of Ovcon and its generic equivalents in the United States and to eliminate
competition between Warner Chilcott and Barr in the sale of Ovcon and its generic equivalents
in the United States.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 50 of the

Complaint.

51.    Defendants' illegal agreement is a conspiracy in restraint of trade and a *per se*
violation of section 1 of the Sherman Act.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 51 of the

Complaint and specifically denies that it has engaged in any illegal activity whatsoever.

52.    In the alternative, Defendants' agreement has had a substantially adverse effect on
competition in the relevant market—the sale of Ovcon and its generic equivalents in the United
States—and is illegal under the Rule of Reason.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 52 of the

Complaint and specifically denies that it has engaged in any illegal activity whatsoever.

53.    But for Defendants' illegal agreement, Barr would have entered the market with
generic Ovcon in or about April 2004. Barr's entry would have allowed Plaintiffs and other
purchasers to substitute lower-priced generic Ovcon for higher-priced branded Ovcon for a
substantial portion of their Ovcon purchases.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 53 of the

Complaint and specifically denies that it has engaged in any illegal activity whatsoever.

54.    Plaintiffs (or their assignors) have been injured in their business and property by reason of Defendants' unlawful conspiracy in restraint of trade.  Plaintiffs' injury consists of paying higher prices for Ovcon and its generic equivalents than would have been paid in the absence of Defendants' illegal conduct.  Plaintiffs' injury is injury of the type the antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 54 of the Complaint and specifically denies that Plaintiffs have suffered any injury whatsoever.

55.    Defendants' violations threaten continuing loss and injury to Plaintiffs unless enjoined by this Court.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 55 of the Complaint and specifically denies that Plaintiffs have suffered any injury whatsoever.

### DEFENSES

In addition to the foregoing responses, Barr asserts the following defenses to the claims alleged in Plaintiffs' Complaint.  Barr does not assume the burden of proof of these defenses except where the applicable substantive law provides otherwise.

### First Affirmative Defense

1.    The Complaint fails to state a claim against Barr upon which relief can be granted.

### Second Affirmative Defense

2.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

### Third Affirmative Defense

3.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel.

### Fourth Affirmative Defense

4.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver.

14

### Fifth Affirmative Defense

5.　　Plaintiffs' claims are barred, in whole or in part, because any conduct engaged in by Barr has been reasonable, based upon independent and legitimate business and economic justifications, and was taken without the purpose or effect of injuring competition.

### Sixth Affirmative Defense

6.　　Plaintiffs' claims are barred, in whole or in part, because any conduct engaged in by Barr was reasonable in relation to the development and preservation of its business.

### Seventh Affirmative Defense

7.　　Plaintiffs' claims are barred, in whole or in part, because none of Barr's actions have injured competition in any relevant market.

### Eighth Affirmative Defense

8.　　Plaintiffs' claims are barred, in whole or in part, because Barr's actions have pro-competitive effects that benefit competition as a whole in any relevant market.

### Ninth Affirmative Defense

9.　　Plaintiffs' claims are barred, in whole or in part, because none of Barr's alleged actions have harmed competition and/or consumers.

### Tenth Affirmative Defense

10.　　Plaintiffs' claims are barred, in whole or in part, because Barr had no knowledge, intention, notice, or belief that Barr's actions might illegally restrain trade. Further, Barr could not have known that its actions might illegally restrain trade.

### Eleventh Affirmative Defense

11.　　Plaintiffs' claims are barred, in whole or in part, because Barr did not engage in any willful or flagrant act.

15

## Twelfth Affirmative Defense

12.    Plaintiffs' claims are barred, in whole or in part, because Barr relied in good faith on the actions and statements of the Federal Trade Commission.

## Thirteenth Affirmative Defense

13.    Plaintiffs' claims are barred, in whole or in part, because Barr did not conceal any of its actions.

## Fourteenth Affirmative Defense

14.    Plaintiffs' claims are barred, in whole or in part, because Barr did not engage in any pattern or practice of illegal activity.

## Fifteenth Affirmative Defense

15.    Plaintiffs' claims are barred, in whole or in part, because Barr's actions were a result of a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error.

## Sixteenth Affirmative Defense

16.    Plaintiffs' claims are barred, in whole or in part, because Barr's actions did not cause harm to Plaintiffs.

## Seventeenth Affirmative Defense

17.    Plaintiffs' claims are barred, in whole or in part, because Barr did not engage in any unfair or deceptive act or practice.

## Eighteenth Affirmative Defense

18.    Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not properly alleged either a relevant product market or a relevant geographic market.

### Nineteenth Affirmative Defense

19.    Plaintiffs' claims are barred, in whole or in part, because Barr has and had no market power and Plaintiffs have failed to allege any market power.

### Twentieth Affirmative Defense

20.    Plaintiffs' claims are barred, in whole or in part, because Plaintiffs do not have standing.

### Twenty-First Affirmative Defense

21.    Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not suffered antitrust injury.

### Twenty-Second Affirmative Defense

22.    Plaintiffs' claims are barred, in whole or in part, because Barr has acted at all times in conformity with all applicable laws, statutes, ordinances, and decrees with respect to Plaintiffs.

### Twenty-Third Affirmative Defense

23.    Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have failed to plead a proper party.

### Twenty-Fourth Affirmative Defense

24.    Plaintiffs' claims are barred, in whole or in part, because Barr's actions were not the proximate cause in fact of Plaintiffs' alleged damages.

### Twenty-Fifth Affirmative Defense

25.    To the extent that Plaintiffs have failed to mitigate, minimize, or avoid any loss or damage referred to in the Complaint, any recovery must be reduced by that amount.

### Twenty-Sixth Affirmative Defense

26.    Barr reserves the right to assert and rely on other applicable defenses as may become available or apparent, to amend its answer and/or defenses, and/or delete defenses that it determines to be inapplicable.

### JURY DEMAND

Barr hereby demands trial by jury on all claims so triable.

### PRAYER FOR RELIEF

Wherefore, Barr prays as follows:

1.    That the Court enter judgment for Barr;

2.    That the Court award Barr reasonable costs and expenses, including, but not limited to, attorneys' fees and costs of suit, and such other and further relief as may be appropriate.

Dated: May 22, 2006                                  Respectfully submitted,

                                                     Karen N. Walker (D.C. Bar # 412137)
                                                     Mark L. Kovner (D.C. Bar # 430431)
                                                     Chong S. Park (D.C. Bar # 463050)

                                                     KIRKLAND & ELLIS LLP
                                                     655 Fifteenth Street, N.W.
                                                     Washington, D.C. 20005
                                                     (202) 879-5000
                                                     (202) 879-5200 (fax)

                                                     *Attorneys for Defendant Barr
                                                     Pharmaceuticals, Inc.*

18

# TAB 4

# THIS EXHIBIT HAS BEEN DESIGNATED
# HIGHLY CONFIDENTIAL
# AND IS FILED UNDER SEAL

# TAB 5

Barr Pharmaceuticals, Inc. News Release                                    Page 1 of 1

Print Page | Close Window

News Release

## Barr's Generic Ovcon-35(R) Tablets Approved

WOODCLIFF LAKE, N.J., April 23 /PRNewswire-FirstCall/ -- Barr Pharmaceuticals, Inc. (NYSE: BRL) today announced that Barr Laboratories, Inc. has received approval from the U.S. Food and Drug Administration (FDA) for its application to manufacture and market a generic version of Galen's Ovcon-35 (R) 21-day and 28-day Tablets oral contraceptive.

Under terms of an agreement signed on March 24, 2004, Barr Laboratories, Inc. granted Galen an option to acquire an exclusive license for Barr's generic version of Galen's Ovcon-35(R) 21-day and 28-day Tablets oral contraceptive. Galen has 45 days to exercise its option from the date of FDA approval. If Galen exercises its option, it will be granted a five-year exclusive license to sell the product under the ANDA. At the end of the five-year term, Galen can extend the license on a non-exclusive basis for an additional five-year period. Galen made a $1 million payment to Barr Laboratories upon signing the option agreement and would pay Barr an additional $19 million at the time of the exercise of the option.

If Galen does not exercise its option, following the 45-day period, Barr intends to market the product as a generic under the trademark name Balziva(TM).

Ovcon-35 is a regimen of oral contraceptives that contains 0.4 mg of norethindrone and 0.035 mg of ethinyl estradiol and is indicated for the prevention of pregnancy in women who elect to use this product as a method of contraception. The product is supplied in 21-day and 28-day regimens.

Ovcon-35 had annual sales of approximately $63.1 million for the twelve months ending February 2004, based on IMS data.

Barr Pharmaceuticals, Inc. is engaged through its principle subsidiaries, Barr Laboratories, Inc. and Duramed Pharmaceuticals, Inc., in the development, manufacture and marketing of generic and proprietary pharmaceuticals.

Forward-Looking Statements

This press release contains a number of forward-looking statements. To the extent that any statements made in this press release contain information that is not historical, these statements are essentially forward-looking. Forward-looking statements can be identified by their use of words such as "expects," "plans," "will," "may," "anticipates," "believes," "should," "intends," "estimates" and other words of similar meaning. These statements are subject to risks and uncertainties that cannot be predicted or quantified and, consequently, actual results may differ materially from those expressed or implied by such forward-looking statements. Such risks and uncertainties include: the difficulty in predicting the timing and outcome of legal proceedings, including patent-related matters such as patent challenge settlements and patent infringement cases; the difficulty of predicting the timing of U.S. Food and Drug Administration, or FDA, approvals; court and FDA decisions on exclusivity periods; the ability of competitors to extend exclusivity periods for their products; the success of our product development activities; market and customer acceptance and demand for our pharmaceutical products; our dependence on revenues from significant customers; reimbursement policies of third party payors; our dependence on revenues from significant products; the use of estimates in the preparation of our financial statements; the impact of competitive products and pricing; the ability to develop and launch new products on a timely basis; the availability of raw materials; the availability of any product we purchase and sell as a distributor; our mix of product sales between manufactured products, which typically have higher margins, and distributed products; the regulatory environment; our exposure to product liability and other lawsuits and contingencies; the increasing cost of insurance and the availability of product liability insurance coverage; our timely and successful completion of strategic initiatives, including integrating companies and products we acquire and implementing new enterprise resource planning systems; fluctuations in operating results, including the effects on such results from spending for research and development, sales and marketing activities and patent challenge activities; and other risks detailed from time to time in our filings with the Securities and Exchange Commission.

NOTE TO EDITOR: Barr Pharmaceuticals, Inc. news releases are available free of charge through PR Newswire's News On-Call site at http://www.pmewswire.com/comp/089750.html. Barr news releases and corporate information are also available on Barr's website (www.barrlabs.com). Balziva(TM) is a trademark of Barr Laboratories, Inc. Ovcon-35(R) is a registered trademark of Warner Chilcott, Inc.

CONTACT:
Carol A. Cox
Barr Pharmaceuticals, Inc.
201-930-3720
ccox@barrlabs.com

# TAB 6

**THIS EXHIBIT HAS BEEN DESIGNATED
HIGHLY CONFIDENTIAL
AND IS FILED UNDER SEAL**

# TAB 7

**THIS EXHIBIT HAS BEEN DESIGNATED
HIGHLY CONFIDENTIAL
AND IS FILED UNDER SEAL**

# TAB 8

**THIS EXHIBIT HAS BEEN DESIGNATED
HIGHLY CONFIDENTIAL
AND IS FILED UNDER SEAL**

# TAB 9

**THIS EXHIBIT HAS BEEN DESIGNATED
HIGHLY CONFIDENTIAL
AND IS FILED UNDER SEAL**

# TAB 10

**THIS EXHIBIT HAS BEEN DESIGNATED
HIGHLY CONFIDENTIAL
AND IS FILED UNDER SEAL**

# TAB 11

Barr Pharmaceuticals, Inc. News Release                                          Page 1 of 2



Contact Us    Product Guide    Drug Informa

HOME    CORPORATE OVERVIEW    GENERIC PRODUCTS    PROPRIETARY PRODUCTS    NEWS    INVESTORS

NEWS

## News Release

 View printer-friendly version

<< Back

## Barr Announces Warner Chilcott Waives Exclusive License for OVCON(R) 35

*Barr to Launch Generic Version Under Balziva(TM) Tradename in October*

WOODCLIFF LAKE, N.J., Sept 26, 2006 /PRNewswire-FirstCall via COMTEX News Network/ -- Barr Pharmaceuticals, Inc. (NYSE: BRL) today announced that Warner Chilcott Limited (Nasdaq: WCRX), formerly Galen Holdings PLC, has unilaterally waived the exclusivity provision of the license for Barr's generic version of Warner Chilcott's OVCON(R) 35 Tablets oral contraceptive. The waiver makes the license non-exclusive and, as a result, Barr Laboratories, Inc., a subsidiary of Barr Pharmaceuticals, Inc., intends to launch its generic version of OVCON 35 oral contraceptive in October 2006. The Company expects to launch the first generic version of OVCON 35 oral contraceptive under the tradename Balziva(TM).



"Today's action by Warner Chilcott paves the way for Barr to launch the first generic version of OVCON 35," said Bruce L. Downey, Barr's CEO and Chairman. "Following the launch of our Balziva product in October, we will manufacture and market a generic oral contraceptive portfolio that is the largest in the industry, totaling 24 products."

In March 2004, the Company granted Warner Chilcott an option to acquire an exclusive license under Barr's Abbreviated New Drug Application (ANDA) for OVCON 35 oral contraceptive. In April 2004, Barr received approval from U.S. Food and Drug Administration (FDA) to manufacture and market a generic version of OVCON 35 oral contraceptive. In May 2004, Warner Chilcott exercised its option to acquire an exclusive license for Barr's generic version of OVCON 35 oral contraceptive option and was granted a five-year exclusive license to sell the product under Barr's ANDA. Under a related supply agreement, Barr had been manufacturing OVCON 35 for Warner Chilcott, but does not anticipate further product orders from Warner Chilcott at this time.

OVCON 35 is a regimen of oral contraceptives that contains 0.4 mg of norethindrone and 0.035 mg of ethinyl estradiol and is indicated for the prevention of pregnancy in women who elect to use this product as a method of contraception. The product is supplied in 21-day and 28-day regimens.

OVCON 35 had annual sales of approximately $95 million for the twelve months ending July 2006, based on industry sources.

Barr Pharmaceuticals, Inc. is a holding company whose principal subsidiaries, Barr Laboratories, Inc. and Duramed Pharmaceuticals, Inc., develop, manufacture and market generic and proprietary pharmaceuticals.

Forward-Looking Statements

Except for the historical information contained herein, the statements made in this press release constitute forward-looking statements within the meaning of Section 27A of the Securities Act of 1933 and Section 21E of the Securities Exchange Act of 1934. Forward-looking statements can be identified by their use of words such as "expects," "plans," "projects," "will," "may," "anticipates," "believes," "should," "intends," "estimates" and other words of similar meaning. Because such statements inherently involve risks and uncertainties that cannot be predicted or quantified, actual results may differ materially from those expressed or implied by such forward-looking statements depending upon a

# TAB 12

**THIS EXHIBIT HAS BEEN DESIGNATED
HIGHLY CONFIDENTIAL
AND IS FILED UNDER SEAL**

# TAB 13

**THIS EXHIBIT HAS BEEN DESIGNATED
HIGHLY CONFIDENTIAL
AND IS FILED UNDER SEAL**

# TAB 14

43 of 55 DOCUMENTS

Copyright 2007 PR Newswire Association LLC.
All Rights Reserved.
PR Newswire US

May 11, 2007 Friday 11:00 AM GMT

**LENGTH:** 5549 words

**HEADLINE:** Warner Chilcott Reports Operating Results for the Quarter Ended March 31, 2007 and Raises 2007 Full Year Guidance;
LOESTRIN 24 FE and TACLONEX Fuel Strong Growth in First Quarter Revenue and Cash Net Income

**DATELINE:** HAMILTON, Bermuda May 11

**BODY:**

HAMILTON, Bermuda, May 11 /PRNewswire-FirstCall/ -- Warner Chilcott Limited (NASDAQ:WCRX) today announced its results for the quarter ended March 31, 2007. Total revenue in the quarter rose to $218.4 million, an increase of 31.2%, over the prior year quarter. The revenue growth in the quarter ended March 31, 2007 was driven by LOESTRIN 24 FE and TACLONEX, both of which were launched in April 2006. The Company reported a net loss of $4.5 million in the quarter compared with a net loss of $27.3 million in the prior year quarter.

Cash net income in the quarter ended March 31, 2007 was $51.0 million. The current quarter included a $7.5 million expense relating to the proposed settlements of certain legal actions related to OVCON 35. Excluding the after-tax impact of this expense, adjusted cash net income for the quarter was $58.4 million.

References in this release to "cash net income" mean the Company's net income adjusted for the after-tax effects of two non-cash items: amortization of intangible assets and amortization (or write-off) of deferred loan costs related to our debt. Reconciliations from the Company's reported results in accordance with U.S. GAAP to cash net income and to adjusted cash net income for all periods are presented in the table at the end of this press release.

"We had a strong quarter" said CEO Roger Boissonneault. "LOESTRIN 24 FE and TACLONEX were major contributors to our revenue growth. During the first quarter we completed the expansion of our Chilcott sales force which will enable us to launch promotional efforts behind our FEMCON FE brand and add another growth driver to our portfolio."

Revenue

Revenue in the quarter ended March 31, 2007 was $218.4 million, an increase of $51.9 million or 31.2% over the prior year quarter. The primary drivers of the increase in revenue were the net sales of two products introduced in March 2006, LOESTRIN 24 FE and TACLONEX, which together contributed $59.0 million of growth for the quarter ended March 31, 2007 compared to the same quarter last year.

Sales of the Company's oral contraceptives increased $14.8 million in the quarter, or 29.2%, compared with the prior year quarter. Beginning in April 2006, LOESTRIN 24 FE became the top promotional priority of our 175 territory Women's Healthcare sales force generating revenue of $34.4 million in the quarter ended March 31, 2007 compared to $1.4 million in the prior year quarter. Filled prescriptions of LOESTRIN 24 FE increased 36.4% sequentially in the quarter ended March 31, 2007 compared to the quarter ended December 31, 2006. ESTROSTEP net sales decreased

Warner Chilcott Reports Operating Results for the Quarter Ended March 31, 2007 and Raises 2007 Full Year Guidance;
LOESTRIN 24 FE and TACLONEX Fuel Strong Growth in First Quarter Revenue and Cash Net

$3.8 million during the first quarter, or 14.7%, due primarily to a decline in filled prescriptions of 20.1% offset partially by higher average selling prices. ESTROSTEP filled prescriptions declined due to the Company's promotional shift to LOESTRIN 24 FE. OVCON net sales during the quarter declined $19.4 million, or 80.7%, compared with the prior year quarter. The decline in OVCON revenue was due to the introduction of a generic version of OVCON 35 in late October 2006, which led to an 80.4% decline in filled prescriptions for OVCON 35 compared to the same quarter last year. FEMCON FE generated net sales in the quarter ended March 31, 2007 of $5.0 million. The Company introduced and began commercial sales of FEMCON FE in the second half of 2006, but did not initiate promotional efforts to launch the product until April 2007. Beginning in April 2007, FEMCON FE became the top promotional priority for our newly expanded Chilcott Labs sales force.

Sales of our dermatology products increased $35.5 million, or 56.7%, compared to the prior year quarter, primarily due to the increase in TACLONEX sales of $26.0 million. TACLONEX, which was launched in April 2006, achieved sequential growth in filled prescriptions of 12.7% in the first quarter compared to the quarter ended December 31, 2006. Sales of DORYX increased $1.4 million, or 5.6%, compared to the prior year quarter. DORYX prescriptions, which had been growing during the period from July 1, 2005 through June 30, 2006, softened in the second half of 2006 due to decreased promotional emphasis following the April 2006 launch of TACLONEX. In January 2007, the Company took steps to increase its Dermatology sales force's promotional efforts with DORYX. While filled prescriptions for DORYX declined 15.3% compared to the same quarter last year, DORYX net sales in the quarter increased as price increases more than offset the decline in filled prescriptions. Sales of DOVONEX increased $8.1 million, or 23.8%, compared with the prior year quarter as price increases more than offset a 16.6% decline in filled prescriptions.

Sales of our hormone therapy products increased $2.6 million, or 7.9%, compared with the prior year quarter. The launch of the low-dose version of FEMHRT in 2006 helped to slow the decline of filled prescriptions in our hormone therapy portfolio. FEMHRT filled prescriptions were down 5.0% in the quarter compared with the prior year, the impact of which was essentially offset by increased selling prices. Filled prescriptions for ESTRACE Cream were down 3.5% in the quarter compared with the prior year, which was more than offset by increased selling prices. However, a contraction of pipeline inventories of ESTRACE CREAM in the quarter relative to the prior year quarter contributed to a 5.3% decrease in net sales of the product. SARAFEM, our product used to treat symptoms of pre-menstrual dysphoric disorder (PMDD), had sales of $9.2 million in the quarter ended March 31, 2007 compared with $10.6 million in the prior year quarter. The decrease is due to a 25.9% decline in filled prescriptions offset in part by increased prices.

Cost of Sales (excluding amortization of intangible assets)

Cost of sales increased $18.8 million in the quarter ended March 31, 2007 compared with the prior year quarter primarily due to the 29.9% increase in product net sales. Cost of sales in the quarter ended March 31, 2006 included $1.5 million representing the increased values of DOVONEX inventory recorded through the allocation of acquisition purchase price. Adjusted for the DOVONEX inventory step-up in the prior year quarter, our gross profit margin on product net sales decreased from 81.8% in the prior year to 76.6% in the current quarter. The decrease in our gross profit margin on product net sales was due to a number of factors including the mix of products sold with net sales of DOVONEX and TACLONEX accounting for 32.9% of our product net sales in the current quarter compared with 22.2% in the prior year quarter. Our gross profit margin was further reduced by the impact of a $3.6 million reserve recorded during the quarter for inventories of certain DOVONEX products on hand as of March 31, 2007 which we do not expect to sell due to a shift in our marketing strategies relating to the DOVONEX/TACLONEX product family. The cost of sales for DOVONEX and TACLONEX (which includes royalties based on our net sales, as defined in the relevant supply agreements), expressed as a percentage of product net sales, are significantly higher than the costs for our other products.

Selling, General and Administrative ("SG&A") Expenses

SG&A expenses for the quarter ended March 31, 2007 were $77.9 million, an increase of $39.6 million, from $38.3 million in the prior year quarter. Advertising and promotion increased $21.7 million over the prior year quarter

Page 3
Warner Chilcott Reports Operating Results for the Quarter Ended March 31, 2007 and Raises 2007 Full Year Guidance;
LOESTRIN 24 FE and TACLONEX Fuel Strong Growth in First Quarter Revenue and Cash Net

primarily due to the timing of two flights of direct to consumer advertising for LOESTRIN 24 FE totaling $15.4 million and other promotional spending in support of our new products. Selling and distribution expenses increased $5.2 million over the prior year quarter primarily due to the expansion of our field sales forces by approximately 75 territories to support the initiation of promotional activities for FEMCON FE beginning in the second quarter of 2007. In support of this launch, during the quarter ended June 30, 2007, we will run a flight of direct to consumer advertising for FEMCOM FE resulting in an expense of approximately $10.0 million. General, administrative and other expenses increased $12.7 million primarily due to an increase in legal expenses of $11.4 million which included a $7.5 million reserve for the proposed settlements of certain legal actions related to OVCON 35.

Research and Development ("R&D") Activities

Our investment in product R&D totaled $7.4 million in the quarter ended March 31, 2007 compared with $9.6 million in the prior year quarter. R&D expense for the quarter ended March 31, 2006 included $3.0 million representing our cost to acquire an option to purchase certain rights with respect to a topical dermatology product currently in development by LEO. We expect our investment in R&D in 2007, exclusive of milestone payments we may make to third parties, to increase from the levels seen in 2006 as we anticipate having several clinical programs in process during the year.

Net Interest Expense

Net interest expense for the quarter ended March 31, 2007 was $30.9 million, a decrease of $14.2 million from $45.1 million in the prior year period. Included in the quarter ended March 31, 2007 was $1.3 million relating to the write-off of deferred loan costs associated with the prepayment of $60.0 million of our senior secured credit facility debt on March 30, 2007. The decrease in interest expense is primarily the result of reductions in outstanding debt of $738.2 million from March 31, 2006 to March 31, 2007, offset partially by higher interest rates in the current quarter compared with the same quarter in 2006.

Income taxes

Our effective tax rate for the quarter ended March 31, 2007 was 25.0%, which reflects our current estimate of the corporate effective tax rate for the full year 2007. The effective income tax rate for interim periods and the full year can be volatile due to changes in income mix forecasted among the various tax jurisdictions in which we operate.

Cash Net Income and Adjusted Cash Net Income

Cash net income for the quarter ended March 31, 2007 was $51.0 million. In arriving at cash net income, we add back the after-tax impact of the book amortization of intangible assets and the amortization or write off of deferred financing costs. These items are tax-effected at the estimated marginal rates attributable to them. In the first quarter of 2007, the marginal tax rates associated with the amortization of intangible assets was 8.6% and the rate for amortization and write off of deferred financing costs was 9.1%.

The current quarter included $7.5 million of expenses relating to the proposed settlements of certain legal actions related to OVCON 35. Excluding the after-tax impact of this expense, adjusted cash net income for the quarter was $58.4 million or $0.23 per share based on all 250.6 million Class A shares outstanding.

Liquidity, Balance Sheet and Cash Flows

As of March 31, 2007, our cash and cash equivalents totaled $68.5 million and total debt outstanding was $1,487.8 million with no borrowings outstanding under our revolving credit facility. We generated $58.0 million of cash from operating activities in the quarter ended March 31, 2007 compared with $21.8 million in the prior year quarter. Net loss during the quarter ended March 31, 2007 decreased by $22.8 million to $4.5 million as compared with the prior year quarter. The quarter ended March 31, 2006 included increases in inventories of $26.0 million primarily due to the new

Page 4
Warner Chilcott Reports Operating Results for the Quarter Ended March 31, 2007 and Raises 2007 Full Year Guidance;
LOESTRIN 24 FE and TACLONEX Fuel Strong Growth in First Quarter Revenue and Cash Net

DOVONEX and TACLONEX inventories which lowered the cash flows from operating activities. This increase in DOVONEX and TACLONEX inventories in 2006 does not have a continuing impact on our cash flows from operations. Capital expenditures in the current quarter totaled $3.8 million and included continued investments in our Fajardo, Puerto Rico manufacturing facility.

2007 Financial Guidance Update

Based on the first quarter results and the current outlook for the remainder of 2007, the Company is increasing its full year 2007 financial guidance. For 2007, the Company anticipates revenue to be in the range of $850 to $870 million based on our increased outlook for sales of LOESTRIN 24 FE, FEMCON FE and TACLONEX.

Total SG&A expenses are expected to be in the range of $243 to $254 million, an increase of $21 million from original guidance given in January 2007. This reflects an increase in promotional expenses in the second half of 2007, additional selling expense primarily related to the addition of ten sales territories and the $7.5 million of general and administrative expense incurred in the first quarter related to the proposed OVCON 35 litigation settlements.

Based on the revised guidance, GAAP net income is expected to be in the range of $12 to $17 million. Adjusted cash net income, which adds back the after tax impact of book amortization of intangible assets, the amortization and write off of deferred financing costs and the first quarter expense associated with the proposed OVCON 35 litigation settlements, is expected to be in the range of $235 to $240 million. Using 250.6 million Class A common shares, the Company expects adjusted cash net income per share to be in the range of $0.94 to $0.96 for the full year 2007.

For a detailed view of the Company's updated 2007 financial guidance as compared to the original guidance provided in January 2007, please refer to the summary at the end of the press release.

Investor Conference Call

The Company is hosting a conference call, open to all interested parties, on Friday, May 11, 2007 beginning at 8:00 AM EDT. The number to call within the United States and Canada is (800) 361-0912. Participants outside the United States and Canada should call (913) 981-5559. The conference ID number is 7640384. A replay of the conference call will be available from two hours after the call through midnight EDT June 2, 2007 and can be accessed by dialing (888) 203-1112 from within the United States and Canada or (719) 457- 0820 from outside the United States and Canada.

The Company

Warner Chilcott is a leading specialty pharmaceutical company focused on developing, manufacturing, marketing and selling branded prescription products in the women's healthcare and dermatology therapeutic categories in the United States. WCRX-F

Forward Looking Statements

This press release contains forward-looking statements, including statements concerning our operations, our economic performance and financial condition, and our business plans and growth strategy and product development efforts. These statements constitute forward-looking statements within the meaning of Section 27A of the Securities Act of 1933 and Section 21E of the Securities Exchange Act of 1934. The words "may," "might," "will," "should," "estimate," "project," "plan," "anticipate," "expect," intend," "outlook," "believe" and other similar expressions are intended to identify forward- looking statements. Readers are cautioned not to place undue reliance on these forward-looking statements, which speak only as of their dates. These forward-looking statements are based on estimates and assumptions by our management that, although we believe to be reasonable, are inherently uncertain and subject to a number of risks and uncertainties.

The following represent some, but not necessarily all, of the factors that could cause actual results to differ from

Page 5
Warner Chilcott Reports Operating Results for the Quarter Ended March 31, 2007 and Raises 2007 Full Year Guidance;
LOESTRIN 24 FE and TACLONEX Fuel Strong Growth in First Quarter Revenue and Cash Net

historical results or those anticipated or predicted by our forward-looking statements: our substantial indebtedness; competitive factors in the industry in which we operate; our ability to protect our intellectual property; a delay in qualifying our manufacturing facility to produce our products or production or regulatory problems with either third party manufacturers upon whom we may rely for some of our products or our own manufacturing facility; pricing pressures from reimbursement policies of private managed care organizations and other third party payors, government sponsored health systems, the continued consolidation of the distribution network through which we sell our products, including wholesale drug distributors and the growth of large retail drug store chains; the loss of key senior management or scientific staff; an increase in litigation, including product liability claims and patent litigation; government regulation affecting the development, manufacture, marketing and sale of pharmaceutical products, including our ability and the ability of companies with whom we do business to obtain necessary regulatory approvals; our business; our ability to manage the growth of our business by successfully identifying, developing, acquiring or licensing and marketing new products, obtain regulatory approval and customer acceptance of those products, and continued customer acceptance of our existing products; the other risks identified in our December 31, 2006 annual report on Form 10-K; and other risks detailed from time-to-time in our financial statements and other investor communications.

We caution you that the foregoing list of important factors is not exclusive. In addition, in light of these risks and uncertainties, the matters referred to in our forward-looking statements may not occur. We undertake no obligation to publicly update or revise any forward-looking statement as a result of new information, future events or otherwise, except as may be required by law.

```
Reconciliations to GAAP Net (Loss)
 Cash Net Income and Adjusted Cash Net Income
```

To supplement its condensed consolidated financial statements presented in accordance with accounting principles generally accepted in the United States of America ("GAAP"), the Company is providing a summary to show the computation of cash net income and adjusted cash net income to add back certain non-cash and one-time or nonrecurring charges. The Company believes that the presentation of cash net income and adjusted cash net income provide useful information to both management and investors concerning the approximate impact of the above items. The Company also believes that considering the effect of these items allows management and investors to better compare the Company's financial performance from period-to-period, and to better compare the Company's financial performance with that of its competitors. The presentation of this additional information is not meant to be considered in isolation of, or as a substitute for, results prepared in accordance with GAAP.

Adjusted EBITDA

To supplement its condensed consolidated financial statements presented in accordance with accounting principles generally accepted in the United States of America ("GAAP"), the Company is providing a summary to show the computation of adjusted earnings before interest, taxes, depreciation and amortization ("EBITDA") taking into account certain charges that were taken during the periods ended March 31, 2007 and 2006. The computation of adjusted EBITDA is based on the definition of EBITDA contained in the indenture governing the Company's 8 3/4% Senior Subordinated Notes due 2015.

```
                    WARNER CHILCOTT LIMITED
           CONDENSED CONSOLIDATED STATEMENTS OF OPERATIONS
        (In thousands of U.S. dollars, except per share amounts)
                           (Unaudited)

                                        Quarter Ended
                                   Mar-31-07      Mar-31-06
```

Warner Chilcott Reports Operating Results for the Quarter Ended March 31, 2007 and Raises 2007 Full Year Guidance;
LOESTRIN 24 FE and TACLONEX Fuel Strong Growth in First Quarter Revenue and Cash Net

| | | |
|---|---:|---:|
| REVENUE: | | |
| Product net sales | $216,159 | $166,461 |
| Other revenue | 2,262 | - |
| Total revenue | 218,421 | 166,461 |
| COSTS & EXPENSES: | | |
| Cost of sales (excludes amortization) | 50,597 | 31,807 |
| Selling, general and administrative | 77,898 | 38,286 |
| Research and development | 7,432 | 9,571 |
| Amortization of intangible assets | 57,553 | 58,826 |
| Interest income | (1,331) | (404) |
| Interest expense | 32,275 | 45,496 |
| Accretion on preferred stock of subsidiary | - | 8,701 |
| (LOSS) BEFORE TAXES | (6,003) | (25,822) |
| (Benefit) / provision for income taxes | (1,501) | 1,434 |
| NET (LOSS) | (4,502) | (27,256) |
| Preferential distribution to Class | | |
| L shareholders | - | 21,837 |
| Net (loss) attributable to Class | | |
| A shareholders | $(4,502) | $(49,093) |
| Earnings (Loss) per share: | | |
| Class A - Basic & Diluted | $(0.02) | $(0.55) |
| Class L - Basic | (a) | $2.05 |
| Class L - Diluted | (a) | $2.05 |
| RECONCILIATION TO CASH NET INCOME: | | |
| Net (loss) | $(4,502) | $(27,256) |
| + Amortization of intangible | | |
| assets, net of tax | 52,607 | 53,768 |
| + Amortization of deferred loan costs, | | |
| net of tax | 2,904 | 2,293 |
| Cash net income | $51,009 | $28,805 |
| Non-recurring, one-time charges included above: | | |
| + Accretion on preferred stock of | | |
| subsidiary, net of tax | - | 8,701 |
| + Expenses related to litigation | | |
| settlements, net of tax | 7,350 | - |
| ADJUSTED CASH NET INCOME | $58,359 | $37,506 |

(a) = All outstanding Class L common stock of the Company (the "Class L
      common shares") was converted into Class A common stock of the
      Company (the "Class A common shares") upon the Company's initial

Warner Chilcott Reports Operating Results for the Quarter Ended March 31, 2007 and Raises 2007 Full Year Guidance;
LOESTRIN 24 FE and TACLONEX Fuel Strong Growth in First Quarter Revenue and Cash Net

public offering ("IPO") on September 20, 2006.

### WARNER CHILCOTT LIMITED
### CONDENSED CONSOLIDATED BALANCE SHEETS
#### (In thousands of U.S. dollars)
#### (Unaudited)

|  | As of March 31, 2007 | As of December 31, 2006 |
|---|---|---|
| ASSETS | | |
| Current assets: | | |
| Cash & cash equivalents | $68,502 | $84,464 |
| Accounts receivable, net | 74,318 | 74,287 |
| Inventories | 68,929 | 66,376 |
| Prepaid expenses & other current assets | 88,571 | 70,678 |
| Total current assets | 300,320 | 295,805 |
| Other assets: | | |
| Property, plant and equipment, net | 49,204 | 46,035 |
| Intangible assets, net | 1,483,405 | 1,533,757 |
| Goodwill | 1,244,194 | 1,241,452 |
| Other non-current assets | 42,470 | 45,496 |
| TOTAL ASSETS | $3,119,593 | $3,162,545 |
| LIABILITIES | | |
| Current liabilities: | | |
| Accounts payable | $27,715 | $23,094 |
| Accrued expenses & other current liabilities | 140,318 | 136,101 |
| Current portion of long-term debt | 11,182 | 11,790 |
| Total current liabilities | 179,215 | 170,985 |
| Other liabilities: | | |
| Long-term debt, excluding current portion | 1,476,620 | 1,538,960 |
| Other non-current liabilities | 140,630 | 124,368 |
| Total liabilities | 1,796,465 | 1,834,313 |
| SHAREHOLDERS' EQUITY | 1,323,128 | 1,328,232 |
| TOTAL LIABILITIES & SHAREHOLDERS' EQUITY | $3,119,593 | $3,162,545 |

### WARNER CHILCOTT LIMITED
### CONDENSED CONSOLIDATED STATEMENTS OF CASH FLOW
#### (In thousands of U.S. dollars)
#### (Unaudited)

Warner Chilcott Reports Operating Results for the Quarter Ended March 31, 2007 and Raises 2007 Full Year Guidance;
LOESTRIN 24 FE and TACLONEX Fuel Strong Growth in First Quarter Revenue and Cash Net

|  | Quarter Ended | |
|  | Mar-31-07 | Mar-31-06 |
|---|---|---|
| CASH FLOWS FROM OPERATING ACTIVITIES: | | |
| Net (loss) | $(4,502) | $(27,256) |
| Adjustments to reconcile net (loss) to net | | |
| cash provided by operating activities: | | |
| Depreciation | 2,354 | 1,595 |
| Amortization of intangible assets | 57,553 | 58,826 |
| Amortization of debt finance costs | 3,193 | 2,757 |
| Stock compensation expense | 1,685 | 762 |
| Accretion of preferred stock in subsidiary | 0 | 8,701 |
| Changes in assets and liabilities: | | |
| (Increase) in accounts receivable, prepaid | | |
| and other assets | (9,791) | (8,755) |
| (Increase) in inventories | (2,553) | (25,962) |
| Increase in accounts payable, accrued | | |
| & other liabilities | 9,705 | 3,441 |
| Increase in income taxes and other, net | 407 | 7,665 |
| Net cash provided by operating activities | $58,051 | $21,774 |
| CASH FLOWS FROM INVESTING ACTIVITIES: | | |
| Purchase of intangible assets | (7,200) | (245,736) |
| Capital expenditures | (3,809) | (3,156) |
| Net cash (used in) investing activities | $(11,009) | $ (248,892) |
| CASH FLOWS FROM FINANCING ACTIVITIES: | | |
| Borrowings under bank term credit facility | 0 | 240,000 |
| (Repayments) under senior secured credit | | |
| term loan facility | (62,948) | (3,500) |
| Borrowings under revolving credit facilities | 0 | 20,000 |
| (Repayment) of revolving credit facilities | 0 | (20,000) |
| Other | (56) | (75) |
| Net cash (used in) / provided by financing | | |
| activities | (63,004) | 236,425 |
| Net (decrease) / increase in cash | | |
| and cash equivalents | $(15,962) | $9,307 |
| Cash and cash equivalents, beginning | | |
| of period | 84,464 | 11,502 |
| Cash and cash equivalents, end of period | $68,502 | $20,809 |

WARNER CHILCOTT LIMITED

Warner Chilcott Reports Operating Results for the Quarter Ended March 31, 2007 and Raises 2007 Full Year Guidance;
LOESTRIN 24 FE and TACLONEX Fuel Strong Growth in First Quarter Revenue and Cash Net

Reconciliation of Net (loss) to Adjusted EBITDA
(In thousands of U.S. dollars)
(Unaudited)

|  | Quarter Ended | |
|---|---|---|
|  | Mar-31-07 | Mar-31-06 |
| RECONCILIATION TO ADJUSTED EBITDA: | | |
| Net (loss) - GAAP | $(4,502) | $(27,256) |
| + Interest expense, net | 30,944 | 45,092 |
| + (Benefit)/provision for income taxes | (1,501) | 1,434 |
| + Stepped up basis of inventory in cost of sales | - | 1,464 |
| + Non-operating, sponsors' management fees in SG&A | - | 1,250 |
| + Non-cash share-based compensation expense | 1,685 | 762 |
| + Depreciation | 2,354 | 1,595 |
| + Amortization of intangible assets | 57,553 | 58,826 |
| + LEO R&D expense | - | 3,000 |
| + Accretion on preferred stock in subsidiary | - | 8,701 |
| + Litigation settlements | 7,500 | |
| Adjusted EBITDA of WCL, as defined | $94,033 | $94,868 |
| + Expenses of WCL and other | 1,231 | - |
| Adjusted EBITDA of Warner Chilcott Holdings Company III, Ltd., as defined | $95,264 | $94,868 |

Note: Warner Chilcott Holdings Company III, Limited and certain of its
subsidiaries are parties to our credit agreement and the indenture
governing our Senior Subordinated Notes due 2015. Warner Chilcott
Limited is not a party to these agreements. Certain expenses
included in Warner Chilcott Limited's consolidated operating results
are not deducted in arriving at Adjusted EBITDA for Warner Chilcott
Holdings Company III, Ltd and its subsidiaries.

WARNER CHILCOTT LIMITED
REVENUE BY PRODUCT
(In millions of U.S. dollars)
(Unaudited)

|  | Quarter Ended | | Increase (decrease) | |
|---|---|---|---|---|
|  | Mar-31-07 | Mar-31-06 | Dollars | Percent |
| Oral Contraception ("OC") | | | | |
| LOESTRIN 24 FE | $34.4 | $1.4 | $33.0 | n.m. |

Warner Chilcott Reports Operating Results for the Quarter Ended March 31, 2007 and Raises 2007 Full Year Guidance;
LOESTRIN 24 FE and TACLONEX Fuel Strong Growth in First Quarter Revenue and Cash Net

```
  FEMCON FE                          5.0          -          5.0       100.0%
  ESTROSTEP FE                      22.0        25.8         (3.8)      -14.7%
  OVCON 35/50                        4.6        24.0        (19.4)      -80.7%
     Total OC                       66.0        51.2         14.8       29.2%
Hormone therapy ("HT")
  ESTRACE Cream                    $15.7       $16.6        $(0.9)       -5.3%
  FEMHRT                            13.2        13.2          -          0.4%
  FEMRING                            3.5         2.1          1.4       70.4%
  ESTRACE
  Tablets                           2.6         1.5          1.1       68.4%
  FEMTRACE                          1.4         0.4          1.0      249.9%
     Total HT                       36.4        33.8          2.6        7.9%
Dermatology
  DOVONEX                          $41.9       $33.8         $8.1       23.8%
  TACLONEX                          29.2         3.2         26.0       n.m.
  DORYX                             26.7        25.3          1.4        5.6%
     Total Dermatology             97.8        62.3         35.5       56.7%
PMDD
  SARAFEM                           $9.2       $10.6        $(1.4)     -13.2%
Other product sales
  Other                             1.0         2.7         (1.7)      -62.6%
  Contract manufacturing           5.7         5.9         (0.2)       -2.2%
Total product net sales          216.1       166.5         49.6       29.9%
Other revenue
  Other non-product revenue        2.3          -           2.3       100.0%
Total revenue                    $218.4      $166.5        $51.9       31.2%
```

WARNER CHILCOTT LIMITED

SUMMARY OF SG&A EXPENSES

(In millions of U.S. dollars)

(Unaudited)

| | Quarter Ended | | Increase (decrease) | |
| --- | --- | --- | --- | --- |
| | Mar-31-07 | Mar-31-06 | Dollars | Percent |
| Advertising & promotion | $31.3 | $9.6 | $ 21.7 | 227.3% |
| Selling & distribution | 21.7 | 16.5 | 5.2 | 31.4% |
| General, administrative & other | 24.9 | 12.2 | 12.7 | 104.4% |
| Total SG&A | $77.9 | $38.3 | $39.6 | 103.5% |

Warner Chilcott Reports Operating Results for the Quarter Ended March 31, 2007 and Raises 2007 Full Year Guidance;
LOESTRIN 24 FE and TACLONEX Fuel Strong Growth in First Quarter Revenue and Cash Net

Warner Chilcott Limited
2007 Full Year Financial Guidance
(U.S. dollars in millions, except per share)

| | Original Guidance January 2007 | Revised Guidance May 2007 |
|---|---|---|
| Total Revenue | $820 to $840 | $850 to $870 |
| Gross margin as a % of revenue | 79% to 80% | 79% to 80% |
| SG&A Expenses: | | |
| Selling | $82 to $85 | $87 to $90 |
| A&P | $70 to $73 | $80 to $83 |
| G&A | $70 to $73 | $78 to $81 |
| Total SG&A Expense | $222 to $231 | $243 to $254 |
| Total R&D(1) | $40 to $45 | $40 to $45 |
| Total income tax provision(2) | 8% to 9% of EBTA | 8% to 9% of EBTA |
| GAAP Net Income | $8.0 to $13.0 | $12.0 to $17.0 |
| Cash Net Income ("CNI"), adjusted(3) | $225 to $230 | $235 to $240 |
| CNI per share, adjusted(4) | $0.90 to $0.92 | $0.94 to $0.96 |

(1) Total R&D consists of internal R&D anticipated to be in the range of
    $30 to $35 million and a $10 million milestone payment to LEO Pharma
    is the midpart of 2007.

(2) A proxy for the total 2007 tax provision is estimated to be in the
    range of 8% to 9% of earnings before taxes and book amortization.

(3) A reconciliation of GAAP net income to adjusted cash net income adds
    back the expected after tax impact of amortization of intangibles
    ($204.8M), the expected after tax impact of deferred financing fees
    ($10.8M) and the 1Q07 expense associated with the proposed settlement
    of legal actions related to OVCON 35 ($7.4M).

(4) Cash net income per share is based on 250.6 million fully diluted
    Class A shares.

CONTACT: Rochelle Fuhrmann, Investor Relations, of Warner Chilcott
Limited, +1-973-442-3281, rfuhrmann@wcrx.com

Web site: http://www.warnerchilcott.com/

SOURCE Warner Chilcott Limited

URL: http://www.prnewswire.com

LOAD-DATE: May 12, 2007